1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

| | |
|---|---|
| Leobardo MORENO GALVEZ, et al.<br><br>              Plaintiffs,<br><br>      v.<br><br>Lee Francis CISSNA, Director, U.S. Citizenship and Immigration Services, et al.<br><br>              Defendants. | Case No. 2:19-cv-321<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Noted on Motion Calendar:<br>March 29, 2019<br><br>ORAL ARGUMENT REQUESTED |

14

15

16

17

18

19

20

21

22

23

MOT. FOR CLASS CERT.
Case No. 2:19-cv-321

1

2

## **TABLE OF CONTENTS**

3

I.   **INTRODUCTION**................................................................................................. 1

4

II.  **BACKGROUND** ................................................................................................. 3

A.  Plaintiff's Legal Claims ................................................................................ 3

5

1.   Special Immigrant Juvenile Status................................................. 3

6

2.   Washington State Law Framework............................................... 5

7

3.   USCIS Policy Challenged by Plaintiffs ....................................... 6

B.  Named Plaintiffs' Factual Backgrounds ................................................... 7

8

1.   Plaintiff Moreno Galvez ................................................................. 7

9

2.   Plaintiff Vicente Ramos ................................................................. 8

10

3.   Plaintiff Muñoz Olivera ................................................................. 9

III. **ARGUMENT** .................................................................................................... 10

11

A.  The Proposed Class Meets All Requirements of Federal Rule of Civil Procedure 23(a). 12

12

1.   The proposed class members are so numerous that joinder is impracticable. ...... 12

13

2.   The class presents common questions of law and fact. ........................ 16

14

3.   Plaintiffs' claims are typical of the claims of the members of the proposed class.................................................................................. 18

15

4.   Plaintiffs will adequately protect the interests of the proposed class, and counsel are qualified to litigate this action........................................... 19

16

B.  The Proposed Class Satisfies Federal Rule of Civil Procedure 23(b)(2)......................... 21

17

IV. **CONCLUSION** ................................................................................................ 22

18

19

20

21

22

23

MOT. FOR CLASS CERT. - i
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
*A.B.T. v. U.S. Citizenship and Immigration Services*, 2013 WL 5913323
   (W.D. Wash. Nov. 4, 2013) ............................................................ 12

4
*Ali v. Ashcroft*, 213 F.R.D. 390 (W.D. Wash. 2003) ............................................. 12, 14

5
*Arkansas Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763 (8th Cir. 1971) ........................................... 13

6
*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................... 17

*Arnott v. U.S. Citizenship and Immigration Servs.*, 290 F.R.D. 579 (C.D. Cal. 2012) ............... 16

7
*Dunakin v. Quigley*, 99 F. Supp. 3d 1297 (W.D. Wash. 2015) ............................................. 15

8
*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................................... 3

9
*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ........................ 17

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980)........................................ 13

10
*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)............................................ 18

11
*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ................................ 13

12
*Hawker v. Consovoy*, 198 F.R.D. 619 (D.N.J. 2001)......................................................... 14

13
*Hum v. Dericks*, 162 F.R.D. 628 (D. Haw. 1995)......................................................... 13

*J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019) .......... 11, 16, 17

14
*Khoury v. Asher*, 3 F. Supp. 3d 877 (W.D. Wash. 2014).................................................. 12

15
*LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985) ........................................................ 19

16
*Lynch v. Rank*, 604 F. Supp. 30 (N.D. Cal. 1984) .................................................. 15, 20

*Marcus v. Heckler*, 620 F. Supp. 1218 (N.D. Ill. 1985) ........................................... 20

17
*McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan and Trust*,
   268 F.R.D. 670 (W.D. Wash. 2010) ............................................................ 13

18

19
*Mendez Rojas v. Johnson*, No. C16-1024RSM, 2017 WL 1397749
   (W.D. Wash. Jan. 10, 2017)............................................................. 11

20
*Nw. Immigrant Rights Project v. U.S. Citizenship and Immigration Servs.*,
   325 F.R.D. 671, 693 (W.D. Wash. 2016) ....................................................... 17

21
*Orantes-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982).............................................. 17

22
*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ..................................................... 18, 21

*Perez-Funez v. INS*, 611 F. Supp. 990 (C.D. Cal. 1984) ........................................... 13

23
*Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008)................................................ 5, 16

MOT. FOR CLASS CERT. - ii
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

*Rivera v. Holder*, 307 F.R.D. 539 (W.D. Wash. 2015)....................................................... 11, 13, 14

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ............................................................ 16, 21

*Rosario v. U.S. Citizenship and Immigration Servs.*, No. C15-0813JLR,
    2017 WL 3034447 (W.D. Wash. July 18, 2017) ............................................................... 11

*Santillan v. Ashcroft*, No. C04–2686, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) .................. 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ....................... 11

*Sherman v. Griepentrog*, 775 F. Supp. 1383 (D. Nev. 1991) ..................................................... 15

*Smith v. Heckler*, 595 F. Supp. 1173 (E.D. Cal. 1984) ............................................................. 14

*Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324 (W.D. Wash. 1998) ............................... 19

*Stewart v. Assocs. Consumer Discount Co.*, 183 F.R.D. 189 (E.D. Pa. 1998) ............................ 16

*Sueoka v. United States*, 101 Fed. App'x 649 (9th Cir. 2004)...................................................... 16

*United States* ex rel. *Morgan v. Sielaff*, 546 F.2d 218 (7th Cir. 1976) ......................................... 15

*Wagafe v. Trump*, No. C17-0094-RAJ, 2017 WL 2671254 (W.D. Wash. June 21, 2017) .......... 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................... 3, 16, 18

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998)............................................................. 12, 17, 20

*Walters v. Reno*, No. C94–1204C, 1996 WL 897662 (W.D. Wash. 1996) ................................. 12

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ........................................ 21

**Federal Statutes**

8 U.S.C. § 1101(a)(20)............................................................................................................. 3

8 U.S.C. § 1101(a)(27)(J) ..................................................................................................... 1, 4

8 U.S.C. § 1101(b)(1) ...................................................................................................... 1, 3, 4, 6

8 U.S.C. § 1153(b)(4) ............................................................................................................. 3

8 U.S.C. § 1232(d)(2) ............................................................................................................. 3

8 U.S.C. § 1232(d)(4) ............................................................................................................. 3

8 U.S.C. § 1232(d)(6) ............................................................................................................. 4

8 U.S.C. § 1255(h) ............................................................................................................. 3, 4

8 U.S.C. § 1427...................................................................................................................... 3

**Session Laws**

Trafficking Victims Protections Reauthorization Act, Pub. L. 110-457, 122 Stat. 5044 (2008) ... 4

MOT. FOR CLASS CERT. - iii
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**Regulations**

8 C.F.R. § 204.11(c)(1) ........................................................................................ 4

8 C.F.R. § 274a.12(c)(9) ...................................................................................... 3

**State Statutes**

RCW § 13.34.267 ................................................................................................. 6

RCW § 13.40.300 ................................................................................................. 6

RCW § 13.90.010 ................................................................................................. 6

RCW § 13.90.901 ................................................................................................. 6

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................... 2, 21

Fed. R. Civ. P. 23(a)(1) .............................................................................. 13, 14

Fed. R. Civ. P. 23(a)(2) ........................................................................ 16, 17, 18

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 18

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 19

Fed. R. Civ. P. 23(b)(2) ............................................................................ 2, 12, 21

Fed. R. Civ. P. 23(c)(1) ....................................................................................... 16

**Treatises**

Charles Alan Wright & Arthur R. Miller, 7AA *Federal Practice and Procedure* § 1775 (3d ed. 2008) ................................................................................................ 12, 17

William B. Rubenstein, 1 *Newberg on Class Actions* (5th ed. 2018) .............. 13, 15, 20

**Other Authorities**

USCIS Policy Manual, vol. 6, part J, ch. 2 (last updated Feb. 12, 2019), https://bit.ly/2NAGVCT ............................................................................. 4, 5, 7

Wash. Leadership Inst., Washington State Court Special Immigrant Juvenile Status (SIJS) Bench Book and Resource Guide (Oct. 2016), https://bit.ly/2T5sUDh. ................. 6

MOT. FOR CLASS CERT. - iv
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

# I.  INTRODUCTION

Plaintiffs Leobardo Moreno Galvez, Jose Luis Vicente Ramos, and Angel de Jesus Muñoz Olivera and the class they seek to represent are all eligible for Special Immigrant Juvenile Status (SIJS), a form of humanitarian relief that provides vulnerable youth with a path to long-term immigration status. SIJS is available to any "child" as defined by the INA—"an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1). In each Plaintiff and proposed class member's case, a Washington state court has exercised jurisdiction to determine their custody while they were under 21, and specifically entered an order finding that (1) reunification with one or both of their parents is not viable due to abuse, neglect, abandonment or similar basis under state law, and (2) it is not in the youth's best interest to be returned to their country of origin (SIJS findings). *See* 8 U.S.C. § 1101(a)(27)(J)(i)-(ii). Accordingly, Plaintiffs have submitted SIJS petitions that include the predicate SIJS order. However, Defendants have unlawfully denied, or will deny, Plaintiffs' SIJS petitions on the basis of an ultra vires policy that rejects the Washington state court findings and categorically denies SIJS to 18- to 20-year-old youth, in violation of the Immigration and Nationality Act (INA) and Administrative Procedure Act (APA). Scores of youth in Washington State are subject to the same unlawful policy, notwithstanding that a state court exercising jurisdiction over their custody has found they have been abused, neglected, or abandoned, and that it is not in their best interest to be removed to their country of birth.

Around 2017, Defendant United States Citizenship and Immigration Services (USCIS) began to delay the adjudication of SIJS petitions filed by Plaintiffs and proposed class members, violating a clear statutory requirement that all SIJS petitions be adjudicated within 180 days after the date the petition is filed. Then in February 2018, USCIS began imposing a requirement that

MOT. FOR CLASS CERT. - 1
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

predicate SIJS orders must be issued by a state court that had the legal authority to return them to a parent. This novel justification finds no support in the SIJS statute and unlawfully targets all youth who have received a SIJS order from a Washington state court after turning eighteen but before reaching of twenty-one. Relying on its recent policy, and after a lengthy and unreasonable delay, USCIS has denied or will deny all SIJS petitions filed by Plaintiffs and proposed class members.

The questions presented in this case—whether USCIS's untimely adjudication and categorical denial of SIJS petitions filed by Plaintiffs and proposed class members violate the INA and APA—can and should be resolved on a class-wide basis. The proposed class satisfies the requirements under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs thus request that the Court certify the following class and appoint them as class representatives:

> All individuals who have been issued predicate SIJS orders by Washington state courts after turning eighteen years old but prior to turning twenty-one years old, and have submitted or will submit SIJS petitions to USCIS prior to turning twenty-one years old.

On behalf of themselves and all proposed class members, Plaintiffs seek an order from this Court which (1) declares Defendants' ultra vires policy of rejecting SIJS findings issued by Washington state courts for youth ages 18 to 20 to be in violation of the INA and APA, (2) compels the government to rescind the improper SIJS denials already issued and reopen those SIJS petitions, (3) enjoins any future denials of SIJS petitions on the basis that Washington state courts lacked the authority to reunify children with their parents, and (4) requires USCIS to adjudicate Plaintiffs' and proposed class members' SIJS petitions within 180 days after the date of filing, as required by statute.

MOT. FOR CLASS CERT. - 2
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

## II.  BACKGROUND

**A.  Plaintiff's Legal Claims**

Adjudicating a motion for class certification does not call for "an in-depth examination of the underlying merits," but a court may nevertheless analyze the merits to the extent necessary to determine the propriety of class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351-52 (2011). Plaintiffs thus provide a brief summary of their claims.

1.  Special Immigrant Juvenile Status

SIJS is a form of humanitarian relief created by Congress to allow abused, abandoned, and neglected children to lawfully remain in the United States. SIJS provides vulnerable children and youth with protection from deportation and provides them a pathway to become lawful permanent residents (LPRs) and subsequently, United States citizenship. *See* 8 U.S.C. §§ 1255(h), 1153(b)(4), 1427. LPRs are entitled to "resid[e] permanently in the United States . . . in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20). A grant of SIJS also confers a path to obtaining work authorization when applying for lawful permanent residence, 8 C.F.R. § 274a.12(c)(9), as well as eligibility for other benefits, including access to state and federally funded benefits. *See, e.g.*, 8 U.S.C. § 1232(d)(4). USCIS is required to adjudicate all SIJS petitions "not later than 180 days after the date on which the application is filed." 8 U.S.C. § 1232(d)(2).

The INA defines a child for purposes of SIJS to be "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1). Accordingly, the Immigration and Naturalization Service (the predecessor agency to USCIS) recognized that all unmarried children and youth who are under age 21 meet the age requirement for SIJS. 8 C.F.R. § 204.11(c)(1); *see also*

MOT. FOR CLASS CERT. - 3
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  USCIS Policy Manual, vol. 6, part J, ch. 2(C) (last updated Feb. 12, 2019),

2  https://bit.ly/2NAGVCT ("[A] 'child' is an unmarried person under 21 years of age for purposes

3  of SIJ classification."). Moreover, to ensure that USCIS's delays in adjudicating SIJS petitions

4  would not deprive petitioners of the opportunity to obtain this critical relief, Congress enacted an

5  age-out protection to ensure that no SIJS petition would be denied on the basis of age so long as

6  the petitioner was under 21 on the date the petition was filed, even if the petitioner turns 21 prior

7  to the adjudication of their petition. Trafficking Victims Protections Reauthorization Act of 2008

8  (TVPRA), Pub. L. 110-457 § 235(d)(6), 122 Stat. 5044, 5080 (2008).

9        To obtain SIJS, a petitioner must be (1) under 21 years of age at the time the petition is

10  filed; (2) unmarried; (3) declared dependent on a state or juvenile court, or placed in the custody

11  of a state agency or individual appointed by such a court (such as having their custodial

12  placement approved by a juvenile probation department or being appointed a guardian); and (4)

13  the subject of specific findings (a) that reunification with one or more parents is not viable due to

14  abuse, abandonment, or neglect (or a similar basis under state law), and (b) that it is not in the

15  child's best interest to return to his or her home country (SIJS findings). *See* 8 U.S.C. §§

16  1101(b)(1), 1101(a)(27)(J), 1232(d)(6). Every SIJS petition to USCIS must include the predicate

17  state court order containing these findings (SIJS order). Once USCIS approves a SIJS petition,

18  the child then becomes eligible to apply to adjust their status to that of an LPR without being

19  subject to many of the grounds of inadmissibility that may apply to other noncitizens. *See* 8

20  U.S.C. § 1255(h).

21        In enacting the SIJS statute, Congress exclusively reserved the role of making SIJS

22  findings to state courts. *See* 8 U.S.C. § 1101(a)(27)(J) (requiring that state juvenile courts make

23  certain child welfare determinations); *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 265 (C.D. Cal.

MOT. FOR CLASS CERT. - 4
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

2008) ("The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests."). The SIJS statute provides no authority for USCIS to second-guess the state court's determinations. Accordingly, the USCIS Policy Manual affirms "[t]here is nothing in USCIS guidance that should be construed as instructing juvenile courts on *how to apply their own state law*," USCIS Policy Manual, vol. 6, part J, ch. 2(D)(4), and instructs adjudicating officers to "rel[y] on the expertise of the juvenile courts in making child welfare decisions and . . . not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law," *id.* Ch. 2(D)(5); *see also id.* ("USCIS generally consents to the grant of [SIJS] when the order includes or is supplemented by a reasonable factual basis for all of the required findings.").

2.   Washington State Law Framework

Washington state law explicitly authorizes state courts to make determinations about the care and custody of children under age 21, including youth who are 18 years or older. SIJS orders are generally issued in a variety of Washington state court proceedings, including juvenile offender proceedings, dependency and extended foster care proceedings, non-parental custody proceedings, divorce and other family law proceedings, and Child in Need of Services/At-Risk Youth proceedings. Wash. Leadership Inst., Washington State Court Special Immigrant Juvenile Status (SIJS) Bench Book and Resource Guide 15-16 (Oct. 2016), https://bit.ly/2T5sUDh.

State laws expressly authorize Washington courts to make custody determinations and SIJS findings for youth ages 18 to 20 in three different types of proceedings. First, in juvenile offender proceedings, a state court may extend its jurisdiction over the adjudication of a

MOT. FOR CLASS CERT. - 5
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

juvenile offense and thus determine the custody of a juvenile past their eighteenth birthday.

RCW § 13.40.300(3); *see also* Dkt. 1 ¶¶ 33-35. Second, the Vulnerable Youth Guardianship

(VYG) statute, enacted by the state legislature in 2017, "grants the superior courts jurisdiction

to make judicial determinations regarding the custody and care of . . . an unmarried person

under twenty-one years of age." RCW § 13.90.901(1)(a) (citing 8 U.S.C. § 1101(b) for

definition of "child"); *see also id.* § 13.90.010(6) (defining "[v]ulnerable youth" as "an

individual who has turned eighteen years old, but who is not yet twenty-one years old"); Dkt.1

¶¶ 36-39. Third, under the Extended Foster Care (EFC) program, state courts maintain

jurisdiction over continued dependency proceedings for youth who were declared legally

dependent on the state before turning 18. RCW § 13.34.267(1); Dkt. 1 ¶¶ 40-44.

3. <u>USCIS Policy Challenged by Plaintiffs</u>

In 2018, Defendants began imposing a new, ultra vires requirement for SIJS petitions

filed by individuals who, like Plaintiffs, obtained SIJS findings after turning 18 but before

turning 21. In February 2018, the Office of the Chief Counsel for USCIS issued new guidance

stating that "in order for a court order to be valid for the purpose of establishing SIJ eligibility,

the court must have competent jurisdiction to determine both whether a parent could regain

custody and to order reunification, if warranted." *See* Maltese Decl. Ex. B at 1. This position

was publicly confirmed in April 2018 by USCIS spokesperson Jonathan Withington, who

confirmed the agency's position that most state courts do not have power to enter SIJS findings

for youth age 18 and older:

> For purposes of establishing eligibility for SIJ, the statute requires that a
> state court have the authority to return a child to the custody of their parent
> in order for that court to find that reunification is not viable. Since most
> courts cannot place a child back in the custody of their parent once the child
> reaches the age of majority (as determined by state and in most instances

MOT. FOR CLASS CERT. - 6
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

that is age 18), those state courts do not have power and authority to make
the reunification finding for purposes of SIJ eligibility.

*See Id.* Ex. A at 9. USICS has since incorporated the policy into its Consolidated Handbook of

Adjudications Procedures (CHAP), which is distributed to USCIS employees. *Id.* Ex. C at 2-3.

However, the agency has not altered the publicly available USCIS Policy Manual. *See* USCIS

Policy Manual, vol. 6, pt. J, ch. 2.

As demonstrated below, USCIS applies its novel policy to Plaintiffs and proposed class

members—youth who obtained SIJS findings in Washington State after turning 18. Pursuant to

its new policy, USCIS denied, or threatened to deny, Plaintiffs' and proposed class members'

SIJS petitions on the basis that the predicate SIJS orders are invalid because the state courts did

not have authority to return the youth to a parent. *See, e.g.*, Maltese Decl. Exs. E-G, I-J; Stone

Decl. Ex. A. USCIS has also unlawfully delayed the adjudication of all SIJS petitions filed by

class members. *See, e.g.*, Casey Decl. ¶ 11; Wennerstrom Decl. ¶ 11; Stone Decl. ¶ 10. This

case is ideally suited for class certification as it challenges the government's uniform policy

and practice of categorically denying SIJS petitions filed by all class members on the basis of

its ultra vires policy, as well as the government's routine failure to timely adjudicate SIJS

petitions as required by the INA.

**B.  Named Plaintiffs' Factual Backgrounds**

1.  <u>Plaintiff Moreno Galvez</u>

Plaintiff Leobardo Moreno Galvez is a 20-year-old citizen of Mexico. Moreno Galvez

Decl. ¶ 1. Growing up, Leobardo suffered severe physical abuse by his father. *Id.* ¶ 5. His parents

could not provide for his basic needs, such as food and adequate shelter. He was forced to drop

out of school when he was 8 years old and began working on his own as a 12-year-old. *Id.* ¶¶ 4,

6-9. When he turned 14, he came to the United States on his own and has since lived with

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   relatives and friends. *Id.* ¶¶ 10-11.

2   In 2016, Leobardo was placed in juvenile offender proceedings after being arrested for

3   Minor in Possession as a 17-year-old. *Id.* ¶ 12. The Skagit County Juvenile Court, which was

4   adjudicating the offense, extended its jurisdiction past Leobardo's eighteenth birthday. *Id.* On

5   October 20, 2016, when Leobardo was 18 years old, the Skagit County Juvenile Court placed

6   him in the custody of a state facility and entered SIJS findings. *Id.*; Maltese Decl. Ex. D at 1-2.

7   On December 2, 2016, Leobardo submitted his Form I-360, Petition for Special

8   Immigrant Juvenile Status to USCIS. Maltese Decl. Ex. G at 2. On August 23, 2018, USCIS

9   issued a Notice of Intent to Deny (NOID) Leobardo's SIJS petition, noting that "the evidence

10  you submitted does not establish that the state court had jurisdiction under state law to make a

11  legal conclusion about returning you to your parent(s)' custody." *Id.* Ex. E at 1-2. On October

12  31, 2018, USCIS issued a second NOID on the same basis. *Id.* Ex. F at 1-2. Leobardo submitted

13  timely responses to these notices. Moreno Galvez Decl. ¶ 13. On December 20, 2018, USCIS

14  denied his I-360 petition, again stating that "the evidence you submitted does not establish that

15  the state court had jurisdiction under state law to make a legal conclusion about returning you to

16  your parent(s)' custody." Maltese Decl. Ex. G at 2. This denial notice erroneously stated that "a

17  court has placed you in a guardianship." *Id.* Additionally, the denial notice stated that Leobardo

18  "[is] not lawfully present in the United States" and that if he "do[es] not depart within 33 days of

19  this letter, USCIS may issue [him] a Notice to Appear and commence removal proceedings

20  against [him]." *Id.* at 3.

21  2.   <u>Plaintiff Vicente Ramos</u>

22  Plaintiff Jose Luis Vicente Ramos is a 20-year-old citizen of Guatemala. Vicente Ramos

23  Decl. ¶ 1. While growing up in Guatemala, Jose suffered severe parental abuse. His mother

MOT. FOR CLASS CERT. - 8
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

threw rocks at him, punched him in the head with closed fists, and beat him with sticks and the television antennae. *Id.* ¶ 2. His father was an abusive alcoholic who punched, slapped, and beat him using belts and cords from electric appliances. *Id.* ¶ 3. On one occasion, his father kicked him to the ground and began beating him with the butt of a rifle. *Id.* Jose fled from his home when he was 17 years old and entered the United States as an unaccompanied child on July 3, 2016. *Id.* ¶¶ 6, 8.

Jose was initially placed in a shelter for unaccompanied minors but later released to live with his cousin in Vancouver, Washington. *Id.* ¶ 9. In February 2018, U.S. Immigration and Customs Enforcement (ICE) detained Jose at the Northwest Detention Center in Tacoma, Washington. *Id.* ¶ 11. On June 1, 2018, the Pierce County Superior Court appointed his cousin as his guardian in VYG proceedings and entered SIJS findings. Maltese Decl. Ex. H at 1-2.

On June 11, 2018, Jose submitted his Form I-360, Petition for Special Immigrant Juvenile Status to USCIS. Vicente Ramos Decl. ¶ 10. On November 2, 2018, USCIS issued a NOID on the basis that "the evidence you submitted does not establish that the state court had jurisdiction under state law to make a legal conclusion about returning you to your parent(s)' custody." Maltese Decl. Ex. I at 2. On February 5, 2019, USCIS denied Jose's SIJS petition on the same basis. *Id.* Ex. J at 1-2. As noted by the denial notice, Jose is "currently in removal proceedings with the Immigration Court." *Id.* at 3. He remains detained at the Northwest Detention Center in Tacoma, Washington. Vicente Ramos Decl. ¶ 11.

3.  Plaintiff Muñoz Olivera

Plaintiff Angel de Jesus Muñoz Olivera is a 19-year-old citizen of Mexico. Muñoz Olivera Decl. ¶¶ 1-2. When Angel was around 10 years old, his father abandoned him. Before Angel's father left the home, he used drugs and violently abused Angel's mother, often in front

of Angel. *Id.* ¶ 2. Angel's mother, in turn, would hit Angel with a belt, clothes hangers, and her cell phone. *Id.* ¶ 3. In August 2017, Angel's mother disappeared and was later discovered dead. *Id.* ¶ 4. Shortly after their mother's death, Angel and his younger brother fled to the United States, fearing for their lives. They intended to seek help from a relative living in Kennewick, Washington. *Id.* ¶ 5.

Upon entering the United States on August 30, 2017, Angel was separated from his brother at the border and detained for over three months. *Id.* ¶ 6. On November 3, 2017, the Pierce County Juvenile Court appointed Angel's relative as his guardian in VYG proceedings and made SIJS findings. Maltese Decl. Ex. K at 1-2. Angel then submitted his Form I-360, Petition for Special Immigrant Juvenile Status to USCIS on November 15, 2017. Muñoz Olivera Decl. ¶ 10. To date, USCIS has not adjudicated his application.

## III. ARGUMENT

Plaintiffs seek certification of the following class:

> All individuals who have been issued predicate SIJS orders by Washington state courts after turning eighteen years old but prior to turning twenty-one years old, and have submitted or will submit SIJS petitions to USCIS prior to turning twenty-one years old.

Under Federal Rule of Civil Procedure 23, Plaintiffs are entitled to class certification where two conditions are met: "The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (internal citation omitted). Plaintiffs' proposed class satisfies Rule 23(a) and (b)(2).

MOT. FOR CLASS CERT. - 10
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    Courts in the Ninth Circuit, including this Court, have routinely certified class actions

2    challenging immigration policies and practices that have broad, categorical effect. *See, e.g., J.L.*

3    *v. Cissna*, No. 18-cv-04914-NC, 2019 WL 415579, at *12 (N.D. Cal. Feb. 1, 2019) (certifying

4    class of "[c]hildren who have received or will receive guardianship orders pursuant to California

5    Probate Code § 1510.1(a) and who have received or will receive denials of their SIJ status

6    petitions on the grounds that the state court that issued the SIJ Findings lacked jurisdiction

7    because the court did not have the authority to reunify the children with their parents"); *Rosario*

8    *v. U.S. Citizenship and Immigration Servs.*, No. C15-0813JLR, 2017 WL 3034447, at *12 (W.D.

9    Wash. July 18, 2017) (granting nationwide certification to class of initial asylum applicants

10   challenging the government's adjudication of employment authorization applications); *Wagafe v.*

11   *Trump*, No. C17-0094-RAJ, 2017 WL 2671254, at *16 (W.D. Wash. June 21, 2017) (certifying

12   two nationwide classes of immigrants challenging legality of a government program applied to

13   certain immigration benefits applications); *Mendez Rojas v. Johnson*, No. C16-1024RSM, 2017

14   WL 1397749, at *7 (W.D. Wash. Jan. 10, 2017) (certifying two nationwide classes of asylum

15   seekers challenging defective asylum application procedures); *Rivera v. Holder*, 307 F.R.D. 539,

16   551 (W.D. Wash. 2015) (certifying class of detained immigrants in the Western District of

17   Washington challenging custody proceedings that categorically deny requests for conditional

18   parole); *Khoury v. Asher*, 3 F. Supp. 3d 877, 890 (W.D. Wash. 2014) (certifying class of detained

19   immigrants in the Western District of Washington challenging failure to provide custody

20   hearings); *A.B.T. v. U.S. Citizenship and Immigration Services*, No. C11-2108 RAJ, 2013 WL

21   5913323, at *2 (W.D. Wash. Nov. 4, 2013) (certifying nationwide class and approving a

22   settlement amending government practices that precluded asylum applicants from receiving

23   employment authorization); *Santillan v. Ashcroft*, No. C04–2686, 2004 WL 2297990, at *12

MOT. FOR CLASS CERT. - 11
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

(N.D. Cal. Oct. 12, 2004) (certifying nationwide class of LPRs challenging delays in receiving documentation of their status); *Ali v. Ashcroft*, 213 F.R.D. 390, 410-11 (W.D. Wash. 2003) (certifying nationwide class of Somalis challenging legality of removal to Somalia in the absence of a functioning government), *aff'd*, 346 F.3d 873, 886 (9th Cir. 2003), *vacated on other grounds sub nom. Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005); *Walters v. Reno*, No. C94–1204C, 1996 WL 897662, at *8 (W.D. Wash. 1996), *aff'd*, 145 F.3d 1032, 1045-47 (9th Cir. 1998) (certifying nationwide class of individuals challenging adequacy of notice in document fraud cases).

These cases demonstrate the propriety of Rule 23(b)(2) certification in actions challenging immigration policies. Indeed, the rule was intended to "facilitate the bringing of class actions in the civil-rights area," particularly those seeking declaratory or injunctive relief. Charles Alan Wright & Arthur R. Miller, 7AA *Federal Practice and Procedure* § 1775 (3d ed. 2008). Claims brought under Rule 23(b)(2) often involve issues affecting noncitizens who would not have the ability to present their claims absent class treatment. Additionally, the core issues in these type of cases generally present pure questions of law, rather than disparate questions of fact, and thus are well suited for resolution on a class wide basis.

**A. The Proposed Class Meets All Requirements of Federal Rule of Civil Procedure 23(a).**

    1.  <u>The proposed class members are so numerous that joinder is impracticable.</u>

Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." "[I]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (internal citation omitted). Determining numerosity "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). No fixed number of class

1   members is required. *Perez-Funez v. INS*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *Hum v.*

2   *Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) ("There is no magic number for determining when

3   too many parties make joinder impracticable. Courts have certified classes with as few as

4   thirteen members, and have denied certification of classes with over three hundred members.").

5   "Numerousness—the presence of many class members—provides an obvious situation in which

6   joinder may be impracticable, but it is not the only such situation . . ." William B. Rubenstein, 1

7   *Newberg on Class Actions* § 3:11 (5th ed. 2018) (internal footnote omitted). "Thus, Rule 23(a)(1)

8   is an impracticability of joinder rule, not a strict numerosity rule. It is based on considerations of

9   due process, judicial economy, and the ability of claimants to institute suits." *Id.* (internal

10  footnotes omitted). Courts have found impracticability of joinder when relatively few class

11  members are involved. *See, e.g.*, *McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership*

12  *Plan and Trust*, 268 F.R.D. 670, 674-76 (W.D. Wash. 2010) (certifying class with 27 known

13  members); *Rivera*, 307 F.R.D. at 550 (certifying class consisting of 40 known class members and

14  unknown future members); *Arkansas Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765-66 (8th Cir.

15  1971) (finding 17 class members sufficient); *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588,

16  605-06 (N.D. Cal. 2014) (noting that courts routinely find numerosity "when the class comprises

17  40 or more members").

18          Plaintiffs estimate there are nearly 100, if not more, class members. Indeed, counsel for

19  Plaintiffs currently represent 36 such clients. Casey Decl. ¶ 7. In addition, declarations from two

20  private practitioners and one other nonprofit organization identify at least 17 other proposed

21  class members. Stone Decl. ¶ 7 (identifying 8 potential class members); Wennerstrom Decl. ¶ 7

22  (identifying 9 potential class members). Thus, Plaintiffs have identified sufficient number of

23

MOT. FOR CLASS CERT. - 13
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

proposed class members to demonstrate the class is so numerous joinder is impracticable. Fed. R. Civ. P. 23(a)(1).

Joinder is also inherently impracticable because of the existence of unnamed, unknown future class members who will be subjected to Defendants' unlawful and ultra vires requirement for SIJS eligibility. *See Ali*, 213 F.R.D. at 408-09 ("[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size.") (citations and internal quotation marks omitted); *Rivera*, 307 F.R.D. at 550 (finding joinder impractical due, in part, to "the inclusion of future class members"); *Smith v. Heckler*, 595 F. Supp. 1173, 1186 (E.D. Cal. 1984) ("Joinder in the class of persons who may be injured in the future has been held impracticable, without regard to the number of persons already injured."); *Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001) ("The joinder of potential future class members who share a common characteristic, but whose identity cannot be determined yet is considered impracticable."). Joinder is impracticable for the proposed class, which includes youth who "have submitted *or will submit* SIJS petitions to USCIS prior to turning twenty-one years old." *Supra* p. 10.

In addition to class size and future class members, there are several other factors that demonstrate impracticability of joinder in the present case, such as judicial economy, geographic dispersion of class members, financial resources of class members, and the ability of class members to bring individual suits. *See* Rubenstein, *supra*, § 3:12; *see also, e.g.*, *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) (finding joinder impracticable where proposed class members were, inter alia, "spread across the state" and "low-income Medicaid recipients"); *Lynch v. Rank*, 604 F. Supp. 30, 38 (N.D. Cal. 1984) (certifying class of poor and

1  disabled plaintiffs represented by public interest law groups), *aff'd*, 747 F.2d 528 (9th Cir. 1984),

2  *amended on reh'g on other grounds*, 763 F.2d 1098 (9th Cir. 1985); *Sherman v. Griepentrog*,

3  775 F. Supp. 1383, 1389 (D. Nev. 1991) (holding that poor and elderly or disabled plaintiffs

4  dispersed over a wide geographic area could not bring multiple lawsuits without great hardship);

5  *United States* ex rel. *Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976) ("Only a representative

6  proceeding avoids a multiplicity of lawsuits and guarantees a hearing for individuals . . . who by

7  reason of ignorance, poverty, illness or lack of counsel may not have been in a position to seek

8  one on their own behalf.") (internal citation omitted). The proposed class members are, by

9  definition, abandoned, abused, or neglected children whom state courts have committed to a state

10  agency, appointed a guardian, or found dependent on the state. As undocumented immigrants,

11  many lack work authorization and thus, a stable source of income. *See, e.g.*, Casey Decl. ¶ 15;

12  Lovell Decl. ¶ 9. Class members are also dispersed throughout Washington State and include

13  homeless youth. *See, e.g.*, Casey Decl. ¶ 7; Wennerstrom Decl. ¶ 8; Lovell Decl. ¶ 4.

14        "Because Plaintiffs seek injunctive and declaratory relief, the numerosity requirement is

15  relaxed and plaintiffs may rely on . . . reasonable inference[s] arising from plaintiffs' other

16  evidence that the number of unknown and future members of [the] proposed subclass . . . is

17  sufficient to make joinder impracticable." *Arnott v. U.S. Citizenship and Immigration Servs.*, 290

18  F.R.D. 579, 586 (C.D. Cal. 2012) (quoting *Sueoka v. United States*, 101 Fed. App'x 649, 653

19  (9th Cir. 2004)). Even if numerosity were a close question here, the court should certify the class.

20  *Stewart v. Assocs. Consumer Discount Co.*, 183 F.R.D. 189, 194 (E.D. Pa. 1998) ("[W]here the

21  numerosity question is a close one, the trial court should find that numerosity exists, since the

22  court has the option to decertify the class later pursuant to Rule 23(c)(1).").

23

2.   The class presents common questions of law and fact.

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." One issue of law or fact common among class members, standing alone, is enough to satisfy this criterion. *See, e.g.*, *Perez-Olano*, 248 F.R.D. at 257 ("Courts have found that a single common issue of law or fact is sufficient to satisfy the commonality requirement."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("[T]he commonality requirement asks us to look only for some shared legal issue or a common core of facts."). Commonality exists if class members' claims all "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Therefore, the critical issue for class certification "is not the raising of common 'questions' . . . but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal citation and quotation marks omitted).

That different class members may have different circumstances or other individual issues does not defeat the commonality among them. *See, e.g.*, *J.L.*, 2019 WL 415579, at *9 (finding commonality where a "single common question—whether Defendants' new [SIJS] requirement is lawful—is 'central to the validity'" of class members' claims (citation omitted)); *Nw. Immigrant Rights Project v. U.S. Citizenship and Immigration Servs.*, 325 F.R.D. 671, 693 (W.D. Wash. 2016) ("[A]ll questions of fact and law need not be common to satisfy the rule." (citation and internal quotation marks omitted)); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) ("Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.") (internal quotation marks omitted)); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D.

1  Cal. 1982) (granting certification in challenge to common government practices in asylum cases,

2  even though the outcome of individual asylum cases would depend on individual class members'

3  varying entitlement to relief); *Walters*, 145 F.3d at 1046 (finding commonality based on

4  plaintiffs' common challenge to INS procedures, and noting that "[d]ifferences among the class

5  members with respect to the merits of their actual document fraud cases . . . are simply

6  insufficient to defeat the propriety of class certification."). Because Plaintiffs and proposed class

7  members challenge USCIS's policy and practice, "[t]he fact that the adjudication of each

8  individual SIJ petition may require individualized factual and legal inquiries is simply irrelevant"

9  to the issue of commonality. *J.L.*, 2019 WL 415579, at *9.

10      The commonality standard is even more liberal in a civil rights suit such as this one,

11  which "challenges a system-wide practice or policy that affects all of the putative class

12  members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds

13  by Johnson v. California*, 543 U.S. 499 (2005). "[C]lass suits for injunctive or declaratory relief"

14  like this case, "by their very nature often present common questions satisfying Rule 23(a)(2)."

15  Wright & Miller, *supra*, § 1763.

16      Here, Plaintiffs and proposed class members challenge a system-wide policy and

17  practice. By definition, they have all obtained a SIJS order from a Washington state court after

18  turning 18 but before turning 21. They have all submitted or will submit a SIJS petition to

19  USCIS on the basis of the predicate SIJS order they obtained from a Washington state court.

20  USCIS has denied, or will deny, all class members' SIJS petitions based on its ultra vires

21  requirement that state courts must have the authority to return the youth to the custody of their

22  parent. Thus Plaintiffs and proposed class members all share the legal claim that this new USCIS

23  policy violates the INA and APA. Furthermore, Plaintiffs and proposed class members all

suffered or continue to suffer from USCIS's delay in adjudicating their SIJS petitions beyond the 180-day statutory deadline. The commonality requirement of Rule 23(a)(2) is therefore satisfied. All class members' injuries are capable of class-wide resolution through declaratory relief declaring Defendants' policy unlawful under the INA and APA, and injunctive relief enjoining Defendants from applying the policy in adjudicating SIJS petitions and from delaying the adjudication of their SIJS petitions past the 180-day statutory deadline. Accordingly, the relief sought by Plaintiffs will resolve the litigation as to all class members in "one stroke." *Wal-Mart*, 564 U.S. at 350.

3.   Plaintiffs' claims are typical of the claims of the members of the proposed class.

Rule 23(a)(3) specifies that the claims of the representatives must be "typical of the claims . . . of the class." Meeting this requirement usually follows from the presence of common questions of law. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). To establish typicality, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 156 (citation and internal quotation marks omitted); *see also Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (finding typicality requirement met where class representatives "allege the same or similar injury as the rest of the putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them; and they allege that the injury follows from the course of conduct at the center of the class claims" (internal quotation marks and alterations omitted)). As with commonality, factual differences among class members do not defeat typicality provided there are legal questions common to all class members. *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) ("The minor differences in the manner in which the representative's Fourth Amendment rights were violated does not

MOT. FOR CLASS CERT. - 18
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

render their claims atypical of those of the class." (internal footnote omitted)); *Smith v. Univ. of Wash. Law Sch.,* 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims.").

In this case, the claims of the named Plaintiffs are typical of the claims of the proposed class. Plaintiffs suffer from the same injury in fact as proposed class members: the delays and denial of their SIJS petitions despite having received the requisite SIJS findings in a Washington state court properly exercising jurisdiction under state law. Plaintiffs, like proposed class members, will be denied SIJS on the basis of the same unlawful USCIS policy requiring Washington state courts to have the authority to force reunification of children over 18 with a parent. In sum, the harms suffered by Plaintiffs are typical of the harms suffered by the proposed class, and Plaintiffs' injuries and the injuries of proposed class members result from the identical course of conduct by Defendants. Plaintiffs therefore satisfy the typicality requirement.

   4.   <u>Plaintiffs will adequately protect the interests of the proposed class, and counsel are qualified to litigate this action</u>.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Walters*, 145 F.3d at 1046 (citations omitted).

   a.   *Named Plaintiffs*

Plaintiffs are motivated to pursue this action on behalf of others like them who, based on the government's unlawful policy, have been or will be wrongfully denied SIJS and the many

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

benefits which flow from SIJS, and who face substantial, potentially life-threatening risks as a result of the government's conduct. *See* Moreno Galvez Decl. ¶¶ 16-23; Vicente Ramos Decl. ¶¶ 17-23; Muñoz Olivera Decl. ¶¶ 16-23. Plaintiffs will fairly and adequately protect the interests of the proposed class because they share the same interests and seek the same justice for all putative class members: declaratory and injunctive relief that stop Defendants from unlawfully delaying the adjudication of SIJS petitions for over 180 days, and from denying SIJS petitions on the basis that Washington state courts do not have the authority to return a youth over age 18 to the custody of a parent. Plaintiffs do not seek money damages for themselves. In other words, there is no potential conflict between the interests of any of the Plaintiffs and members of the proposed class. Accordingly, Plaintiffs are adequate representatives of the proposed class.

### b.  Counsel

The adequacy of Plaintiffs' counsel is also satisfied here. Counsel are deemed qualified when they have experience in previous class actions and cases involving the same area of law. *See, e.g.*, *Lynch*, 604 F. Supp. at 37; *Marcus v. Heckler*, 620 F. Supp. 1218, 1223-24 (N.D. Ill. 1985); Rubenstein, *supra*, § 3:72 ("The fact that proposed counsel has been found adequate in other class actions is persuasive evidence that the attorney will be adequate in the present action."). Plaintiffs are represented by attorneys from the Northwest Immigrant Rights Project, who have extensive experience in class action lawsuits and other complex cases in federal court involving immigration law, including challenges to USCIS policies in adjudicating immigration benefits. *See* Adams Decl. ¶¶ 3-4, 7. Counsel is able to demonstrate that they are counsel of record in numerous cases focusing on immigration law, in which they vigorously represented both the class representatives and absent class members in obtaining relief.

MOT. FOR CLASS CERT. - 20
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**B.  The Proposed Class Satisfies Federal Rule of Civil Procedure 23(b)(2).**

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs also must meet one of the requirements of Rule 23(b) for a class action to be certified. Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Thus Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688; *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."). "The rule does not require [the court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez,* 591 F.3d at 1125; *see also id.* at 1126 (certifying class of detained noncitizens under Rule 23(b)(2) because "all class members seek the exact same relief as a matter of statutory . . . right.").

This action meets the requirements of Rule 23(b)(2). USCIS has subjected all class members to unlawful denials and delays with respect to their SIJS petitions. Plaintiffs and proposed class members seek declaratory and injunctive relief enjoining USCIS from applying its unlawful policy that requires Washington state courts to have the authority to return a youth age 18 or older to their parent. Additionally, Plaintiffs and proposed class members seek relief from Defendants' practice of delaying the adjudication of SIJS petitions beyond 180 days, in violation of the statutory deadline imposed by INA. Therefore, the declaratory and injunctive relief sought by Plaintiffs will apply to the proposed class as a whole.

MOT. FOR CLASS CERT. - 21
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

# IV. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed class, appoint Plaintiffs as class representatives, and appoint the Northwest Immigrant Rights as class counsel.

DATED this 5th day of March, 2019.

s/ Matt Adams
Matt Adams, WSBA No. 28287

s/ Leila Kang
Leila Kang, WSBA No. 48048

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974

s/ Tim Warden-Hertz
Tim H. Warden-Hertz, WSBA No. 53042

s/ Meghan Casey
Meghan Casey, WSBA No. 45275

s/ Olivia Gibbons
Olivia Gibbons, WSBA No. 52760

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone: (206) 957-8611
Email: matt@nwirp.org
        leila@nwirp.org
        aaron@nwirp.org
        tim@nwirp.org
        meghan@nwirp.org
        olivia@nwirp.org

MOT. FOR CLASS CERT. - 22
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611