1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

| | |
|---|---|
| Leobardo MORENO GALVEZ, et al. | Case No. 2:19-cv-321 |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Lee Francis CISSNA, Director, U.S. Citizenship and Immigration Services, et al. | Noted on Motion Calendar: March 29, 2019 |
| Defendants. | ORAL ARGUMENT REQUESTED |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

MOT. FOR PRELIM. INJ.
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

   A.  The SIJS Statute and Deference to State Courts ................................................ 2

   B.  Washington State Law Framework .................................................................... 4

   C.  Factual and Procedural Background of Plaintiffs' SIJS Petitions ...................... 6

      1.   Plaintiff Moreno Galvez ............................................................................ 6

      2.   Plaintiff Vicente Ramos ............................................................................ 7

      3.   Plaintiff Muñoz Olivera ............................................................................ 8

   D.  USCIS Policy on SIJS Orders Issued to 18- to 20-Year-Old Youth ................. 9

III. ARGUMENT ..................................................................................................... 10

   A.  Plaintiffs Are Likely to Succeed on the Merits ............................................... 10

      1.   USCIS's new requirement contravenes the INA and APA. ..................... 11

      2.   USCIS's new requirement is arbitrary and capricious and thus violates the APA. ..... 15

      3.   USCIS adopted the new requirement without notice and comment rulemaking, and without adequate notice ............................................... 17

   B.  Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief. .............. 19

   C.  The Balance of Hardships and Public Interest Also Weigh Heavily in Plaintiffs' Favor. 23

IV.  CONCLUSION .................................................................................................. 24

MOT. FOR PRELIM. INJ. - i
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .................................. 10

*Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046 (9th Cir. 2009) ................................. 10

*Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) .................................... 16

*Anderson v. Butz*, 550 F.2d 459 (9th Cir. 1977) ................................................. 18

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992) ................................................ 15

*Ariz. Dream Act Coal. v. Brewer (Ariz. II)*, 855 F.3d 957 (9th Cir. 2017) .......................... 21, 24

*Ariz. Dream Act. Coal. v. Brewer (Ariz. I)*, 757 F.3d 1053 (9th Cir. 2014) .......................... 19, 21

*Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018) ................................... 23

*Beltran v. Meyers*, 677 F.2d 1317 (9th Cir. 1982) ............................................... 21

*Chalk v. U.S. Dist. Ct.*, 840 F.2d 701 (9th Cir. 1988) .......................................... 23

*Doe v. Trump*, 288 F. Supp. 3d 1045 (W.D. Wash. 2017) .......................................... 23

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................... 20

*Encino Motorcars, LLC v. Navarro, LLC*, 136 S. Ct. 2117 (2016) ................................ 15, 16

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ...................................... 16

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ............................................... 10

*Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082 (9th Cir. 2003) ....................................... 17

*I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26 (1996) ................................................ 16

*Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048 PSG (SHKx),
   2018 WL 1061408 (C.D. Cal. Feb. 26, 2018) .................................................. 23

*J.L. v. Cissna*, 341 F. Supp. 3d 1048 (N.D. Cal. 2018) ................................... 12, 14, 19

*Kirwa v. U.S. Dept. of Def.*, 285 F. Supp. 3d 21 (D.D.C. 2017) .................................. 19

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ........................................... 22

*Medina v. DHS*, 313 F. Supp. 3d 1237 (W.D. Wash. 2018) ......................................... 21

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ............................................. 20

*Morton v. Ruiz*, 415 U.S. 199 (1974) ...................................................... 18, 19

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .................... 15

*Nken v. Holder*, 556 U.S. 418 (2009) ....................................................... 23, 24

*Nw. Enviro. Advocates v. U.S. E.P.A.*, 537 F.3d 1006 (9th Cir. 2008) ............................. 11

*Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153 (3d Cir. 2018) ..................................... 22

*Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199 (2015) ............................... 11, 16, 17

*Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008) ............................... 15, 19

*Regents of Univ. of California v. DHS*, 279 F. Supp. 3d 1011 (N.D. Cal. 2018) ....................... 23

*Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018) ....................................... 20

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ....................................... 24

*SEC v. Chenery Corp.,* 332 U.S. 194 (1947) ....................................... 16

*Sec'y of Agric. v. United States*, 347 U.S. 645 (1954) ....................................... 16

*Stone v. INS*, 514 U.S. 386 (1995) ....................................... 14

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) ....................................... 24

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ....................... 10, 19

*Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71 (2d Cir. 2006) ....................... 16

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ....................................... 20, 24

**Federal Statutes**

42 U.S.C. § 18001(d)(1) ....................................... 21

5 U.S.C. § 552(a)(1) ....................................... 18

5 U.S.C. § 552(a)(1)(D) ....................................... 18

5 U.S.C. § 553 ....................................... 17, 18

5 U.S.C. § 706(2)(A) ....................................... 10, 11, 17

5 U.S.C. § 706(2)(C) ....................................... 10, 11

5 U.S.C. § 706(2)(D) ....................................... 10, 17, 19

8 U.S.C. § 1101(a)(27)(J) ....................................... passim

8 U.S.C. § 1101(b)(1) ....................................... 1, 3, 4, 11

8 U.S.C. § 1232(d) ....................................... 4, 9, 20

8 U.S.C. § 1427(a) ....................................... 19

**Session Laws**

Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 ....................................... 2

Immigration and Technical Corrections Act of 1994, Pub. L. No. 103-416,
    108 Stat. 4305 ....................................... 3

MOT. FOR PRELIM. INJ. - iii
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Trafficking Victims Protections Reauthorization Act, Pub. L. No. 110-457,
    122 Stat. 5044 (2008) ........................................................................... 3, 4, 11

**Federal Regulations**

8 C.F.R. § 204.11 ................................................................................. 3, 12, 14

**State Statutes**

RCW § 13.34.267 ................................................................................. 6, 12, 13

RCW § 13.40.300 ................................................................................. 5, 12, 13

RCW § 13.90.010 ..................................................................................... 5, 12

RCW § 13.90.020 ..................................................................................... 5, 13

RCW § 13.90.050 ......................................................................................... 13

RCW § 13.90.060 ........................................................................................... 5

RCW § 13.90.901 ..................................................................................... 5, 13

RCW § 74.13.031 ..................................................................................... 6, 13

**State Regulations**

Wash. Admin. Code § 182-503-0535(2)(e) ................................................... 21

**Other Authorities**

Amy Taxin & Deepti Hajela, *Young Immigrants Seeking Refuge From Abuse
    Face Denials*, U.S. News (Jan. 2, 2019), https://bit.ly/2T8NAdJ ............ 10

*Matter of E-G-C-V,* 2016 WL 8316261 (AAO Dec. 20, 2016) .................... 13

USCIS Ombudsman, Ensuring Process Efficiency and Legal Sufficiency in
    Special Immigrant Juvenile Adjudications (Dec. 11, 2015), https://bit.ly/2Tq2Kud ............... 14

USCIS Policy Manual, vol. 6, pt. J (last updated Feb. 12, 2019),
    https://bit.ly/2NAGVCT ...................................................................... passim

USCIS Policy Mem. PM-602-0050.1 (June 28, 2018), https://bit.ly/2u8zXfS ........................... 22

Wash. Leadership Inst., Washington State Court Special Immigrant Juvenile Status (SIJS)
    Bench Book and Resource Guide 15-16 (2016), https://bit.ly/2T5sUDh .................................. 4

MOT. FOR PRELIM. INJ. - iv
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

# I.  INTRODUCTION

Plaintiffs Leobardo Moreno Galvez, Jose Luis Vicente Ramos, and Angel de Jesus Muñoz Olivera are vulnerable immigrant youth who have applied for Special Immigrant Juvenile Status (SIJS). SIJS is a form of humanitarian relief that provides abandoned, abused, and neglected immigrant youth with a path to long-term legal status in the United States following certain state court proceedings. 8 U.S.C. § 1101(a)(27)(J) (SIJS statute). Congress has defined a "child" for purposes of SIJS to be any "unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1). The SIJS statute requires Defendant U.S. Citizenship and Immigration Services (USCIS) to defer to the findings of a state court that properly exercises jurisdiction to determine the custody of a youth and finds that (1) reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law, and (2) it is not in the youth's best interest to be returned to their country of origin (SIJS findings). 8 U.S.C. § 1101(a)(27)(J)(i)-(ii).

Federal law leaves little doubt that Plaintiffs are eligible for SIJS, as each meets the statutory requirements listed above. In each case, a Washington state court (1) placed the youth in the custody of a state agency or appointed a guardian, and (2) issued the requisite SIJS findings. However, in 2018, USCIS inexplicably and unlawfully began imposing a new requirement for SIJS eligibility: that the state court issuing SIJS findings must have the authority to return a child to the custody of his or her parent(s). This ultra vires requirement categorically precludes youth ages 18 to 20 from obtaining the humanitarian relief they merit, and violates the Immigration and Nationality Act (INA) and Administrative Procedure Act (APA).

Absent action by this Court, Plaintiffs and proposed class members will continue to suffer irreparable harm, including loss of the opportunity to obtain SIJS and adjust to lawful permanent

MOT. FOR PRELIM. INJ. - 1
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

resident (LPR) status. Losing the opportunity to obtain that status will result in Plaintiffs' loss of shelter, guardians, or foster parents who can best protect their welfare and help them recover from the abuse, abandonment, or neglect they have experienced. In addition, Defendants' actions have resulted in the ongoing civil detention of Plaintiff Jose Luis Vicente Ramos and other class members, needlessly and cruelly incarcerating them despite their youth. Plaintiffs also face irreparable harm from the loss of educational and professional opportunities and imminent removal from the United States.

Accordingly, Plaintiffs now request this Court preliminarily enjoin Defendants' new ultra vires requirement and ensure that USCIS adjudicates their applications in accordance with the INA's plain language. Specifically, Plaintiffs ask this Court to preliminarily enjoin Defendants from applying their unlawful policy, and to order Defendants to reopen and re-adjudicate the SIJS petitions USCIS has denied under this policy. Moreover, to limit the harm caused by this policy, Plaintiffs ask this Court to ensure Defendants adjudicate their SIJS petitions within the time period prescribed by the INA.

## II. BACKGROUND

### A. The SIJS Statute and Deference to State Courts

In 1990, Congress created SIJS to provide abused, abandoned, or neglected immigrant children in foster care a pathway to lawful permanent resident (LPR) status. Immigration Act of 1990, Pub. L. No. 101-649 § 153, 104 Stat. 4978, 5005-06 (defining "special immigrant" in part as a child who "has been declared dependent on a juvenile court . . . *and* has been deemed eligible by that court for *long-term foster care*" (emphases added)). Since its creation in 1990, Congress has expanded the scope of SIJS eligibility beyond children and youth in foster care. In 1994, Congress extended SIJS relief to any juvenile "legally committed to, or placed under the custody of, a[] [state] agency or department." Immigration and Technical Corrections Act of

MOT. FOR PRELIM. INJ. - 2
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1994, Pub. L. No. 103-416 § 219, 108 Stat. 4305, 4316. By doing so, Congress expanded the

type of proceedings in which state courts could enter SIJS findings. In 2008, Congress removed

placement in foster care from the definition of a special immigrant juvenile and ensured that SIJS

is available to all children who have "been declared dependent on a juvenile court . . . or whom

such a court has legally committed to, or placed under the custody of, an agency or department

of a State, or an individual or entity appointed by a State or juvenile court." 8 U.S.C. §

1101(a)(27)(J)(i); *see also* Trafficking Victims Protections Reauthorization Act, Pub. L. No.

110-457 § 235(d)(1)(A), 122 Stat. 5044, 5079 (2008) (TVPRA).

     The INA defines a child for purposes of SIJS to be "an unmarried person under twenty-

one years of age." 8 U.S.C. § 1101(b)(1). Accordingly, the Immigration and Naturalization

Service (the predecessor agency to USCIS), and later, USCIS, have long recognized that all

unmarried children and youth under the age of 21 meet the age requirement for SIJS. 8 C.F.R. §

204.11(c)(1); *see also* USCIS Policy Manual, vol. 6, pt. J, ch. 2(C) (last updated Feb. 12, 2019),

https://bit.ly/2NAGVCT ("[A] 'child' is an unmarried person under 21 years of age for purposes

of SIJ classification."). The 2008 TVPRA amendments also provided protections consistent with

this definition, ensuring USCIS could not deny a SIJS petition on the basis of age so long as the

petitioner was under 21 at the time of filing, regardless of the applicant's age when USCIS

adjudicated the petition. TVPRA § 235(d)(6), 122 Stat. at 5080.

     Thus, under the current SIJS statute, petitioners must be (1) under 21 years of age at the

time the petition is filed; (2) unmarried; (3) declared dependent on a state or juvenile court, or

placed in the custody of a state agency or individual appointed by such a court; and (4) the

subject of specific findings that (a) reunification with one or more parents is not viable due to

abuse, abandonment, neglect, or a similar basis under state law, and that (b) it is not in the child's

MOT. FOR PRELIM. INJ. - 3
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   best interest to return to his or her home country (SIJS findings). *See* 8 U.S.C. §§ 1101(b)(1),

2   1101(a)(27)(J), 1232(d)(6). Every SIJS petition submitted to USCIS must include a predicate

3   state court order containing these findings (SIJS order).

4   The SIJS statute confers all fact-finding authority on the state court. *See* 8 U.S.C. §

5   1101(a)(27)(J)(i)-(ii) (requiring state juvenile courts to make predicate SIJS findings). The SIJS

6   statute provides no authority for USCIS to second guess the state court's determinations. While

7   the Department of Homeland Security (DHS) must provide consent for the SIJ classification, *see*

8   *id* § 1101(a)(27)(J)(iii), USCIS provides such consent once it determines there exists "a

9   reasonable factual basis for all of the required findings," *see* USCIS Policy Manual, vol. 6, pt J,

10  ch. 2(D)(4) (instructing adjudicators to "rel[y] on the expertise of the juvenile court in making

11  child welfare decisions and . . . not reweigh the evidence to determine if the child was subjected

12  to abuse, neglect, abandonment, or a similar basis under state law"). Furthermore, following the

13  2008 TVPRA amendments, USCIS must adjudicate all SIJS petitions within 180 days after the

14  date of filing. TVPRA § 235(d)(2), 122 Stat. at 5080 (codified at 8 U.S.C. § 1232(d)(2)).

15  **B.  Washington State Law Framework**

16  Washington state law explicitly empowers juvenile courts to make determinations about

17  the care and custody of children, including youth who are 18 years or older. SIJS orders are

18  issued in a variety of Washington state court proceedings, including juvenile offender

19  proceedings, dependency and extended foster care proceedings, non-parental custody

20  proceedings, divorce and other family law proceedings, and Child in Need of Services/At-Risk

21  Youth proceedings. Wash. Leadership Inst., Washington State Court Special Immigrant Juvenile

22  Status (SIJS) Bench Book and Resource Guide 15-16 (2016), https://bit.ly/2T5sUDh.

23  State laws expressly extends jurisdiction for Washington courts to make custody

24  determinations for youth ages 18 to 20 in three different types of proceedings, thus empowering

MOT. FOR PRELIM. INJ. - 4
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

them to enter SIJS findings for such youth. First, in juvenile offender proceedings, a state court may extend its jurisdiction over the adjudication of a juvenile offense and thus determine the custody of a juvenile after the juvenile turns 18 "if prior to the juvenile's eighteenth birthday . . . [p]roceedings are pending seeking the adjudication of a juvenile offense and the court by written order setting forth its reasons extends jurisdiction of [the] juvenile court over the juvenile beyond his or her eighteenth birthday." Revised Code of Washington (RCW) § 13.40.300(3)(a). Pursuant to RCW § 13.40.300, a juvenile court in Washington State may sentence a juvenile offender to be committed to a correctional facility up until the juvenile's twenty-first birthday, and thus retains authority to issue SIJS findings. *Id.* § 13.40.300(1).

Second, the Vulnerable Youth Guardianship (VYG) statute, enacted by the state legislature in 2017, "grants the superior courts jurisdiction to make judicial determinations regarding the custody and care of . . . an unmarried person under twenty-one years of age." *Id.* § 13.90.901(1)(a); *see also id.* § 13.90.010(6) (defining "[v]ulnerable youth" as "an individual who has turned eighteen years old, but who is not yet twenty-one years old"). In enacting the VYG statute, the state legislature sought "to provide an avenue for . . . vulnerable [immigrant] youth to petition the superior courts to appoint a guardian of the person, even if the youth is over eighteen years old." *Id.* § 13.90.901(1)(e). Under the VYG statute, "parents, licensed foster parents, relatives, and suitable persons" can be designated as a guardian for a vulnerable youth. *Id.* § 13.90.020(2). The court determines placement with a suitable and responsible guardian pursuant to specific state law requirements *Id.* § 13.90.020(3)(c)-(e). Until the youth turns 21, when the VYG automatically terminates, RCW § 13.90.060(1), a state court has the authority to determine the youth's custodial placement and issue SIJS findings. *Id.* § 13.90.060.

MOT. FOR PRELIM. INJ. - 5
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Third, under the Extended Foster Care (EFC) program, Washington state courts maintain jurisdiction over continued dependency proceedings for youth who were declared legally dependent on the state before turning 18. *Id.* § 13.34.267(1). To participate in EFC, a youth must first be determined legally "dependent" before turning 18. *Id.* § 74.13.031(11)(b). Where a youth elects to participate in EFC upon turning 18, the dependency proceedings may continue until the youth turns 21. *Id.* During this time, the state court maintains jurisdiction over the youth's extended foster care services and thus may issue SIJS findings. *Id.* § 13.34.267.

**C.  Factual and Procedural Background of Plaintiffs' SIJS Petitions**

1.  <u>Plaintiff Moreno Galvez</u>

Plaintiff Leobardo Moreno Galvez is a 20-year-old citizen of Mexico. Moreno Galvez Decl. ¶ 1. Growing up, Leobardo suffered severe physical abuse by his father. *Id.* ¶ 5. His parents could not provide for his basic needs, such as food and adequate shelter. He was forced to drop out of school when he was 8 years old and began working at 12 years old. *Id.* ¶¶ 4, 6-9. When he turned 14, he came to the United States on his own and has since lived with relatives and friends. *Id.* ¶¶ 10-11.

In 2016, Leobardo was placed in juvenile offender proceedings after being arrested for Minor in Possession as a 17-year-old. *Id.* ¶ 12. The Skagit County Superior Court adjudicating the offense extended its jurisdiction past Leobardo's eighteenth birthday. *Id.* On October 20, 2016, when Leobardo was 18 years old, the Skagit County Superior Court placed him in the custody of a state agency or department and entered SIJS findings. Maltese Decl. Ex. D at 1-2.

On December 2, 2016, Leobardo submitted his Form I-360, Petition for Special Immigrant Juvenile Status to USCIS. Maltese Decl. Ex. G at 2. On August 23, 2018, USCIS issued a Notice of Intent to Deny (NOID) on Leobardo's SIJS petition, noting that "the evidence you submitted does not establish that the state court had jurisdiction under state law to make a

legal conclusion about returning you to your parent(s)' custody." *Id.* Ex. E at 1-2. On October
31, 2018, USCIS issued a second NOID on the same basis. *Id.* Ex. F at 1-2. Leobardo submitted
timely responses to these notices. Moreno Galvez Decl. ¶ 13. On December 20, 2018, USCIS
denied his I-360 petition, again stating that "the evidence you submitted does not establish that
the state court had jurisdiction under state law to make a legal conclusion about returning you to
your parent(s)' custody." Maltese Decl. Ex. G at 2. This denial notice erroneously stated that "a
court has placed you in a guardianship." *Id.* Additionally, the denial notice stated that Leobardo
"[is] not lawfully present in the United States" and that if he "do[es] not depart within 33 days of
this letter, USCIS may issue [him] a Notice to Appear and commence removal proceedings
against [him]." *Id.* at 3.

    2.  <u>Plaintiff Vicente Ramos</u>

        Plaintiff Jose Luis Vicente Ramos is a 20-year-old citizen of Guatemala. Vicente Ramos
Decl. ¶ 1. While growing up in Guatemala, Jose suffered severe parental abuse. His mother
threw rocks at him, punched him in the head with closed fists, and beat him with sticks and the
television antennae. *Id.* ¶ 2. His father was an abusive alcoholic who punched, slapped, and beat
him using belts and cords from electric appliances. *Id.* ¶ 3. On one occasion, his father kicked
him to the ground and began beating him with the butt of a rifle. *Id.* Jose fled from his home
when he was 17 years old and entered the United States as an unaccompanied child on July 3,
2016. *Id.* ¶¶ 6, 8.

        Jose was initially placed in a shelter for unaccompanied minors but later released to live
with his cousin in Vancouver, Washington. *Id.* ¶ 9. In February 2018, U.S. Immigration and
Customs Enforcement (ICE) detained Jose and placed him in custody at the Northwest Detention
Center. *Id.* ¶ 11. On June 1, 2018, the Pierce County Superior Court appointed his cousin as his
guardian in VYG proceedings and entered SIJS findings. Maltese Decl. Ex. H at 1-2.

MOT. FOR PRELIM. INJ. - 7
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

On June 11, 2018, Jose submitted his Form I-360, Petition for Special Immigrant Juvenile Status to USCIS. Vicente Ramos Decl. ¶ 10. On November 2, 2018, USCIS issued a NOID on the basis that "the evidence you submitted does not establish that the state court had jurisdiction under state law to make a legal conclusion about returning you to your parent(s)' custody." Maltese Decl. Ex. I at 2. On February 5, 2019, USCIS denied Jose's SIJS petition on the same basis. *Id.* Ex. J at 1-2. As noted by the denial notice, Jose is "currently in removal proceedings with the Immigration Court." *Id.* at 3. He remains detained at the Northwest Detention Center in Tacoma, Washington. Vicente Ramos Decl. ¶ 11.

3.   Plaintiff Muñoz Olivera

Plaintiff Angel de Jesus Muñoz Olivera is a 19-year-old citizen of Mexico. Muñoz Olivera Decl. ¶¶ 1-2. When Angel was around 10 years old, his father abandoned him. Before Angel's father left the home, he used drugs and violently abused Angel's mother, often in front of Angel. *Id.* ¶ 2. Angel's mother, in turn, would hit Angel with a belt, clothes hangers, and her cell phone. *Id.* ¶ 3. In August 2017, Angel's mother disappeared and was later discovered dead. *Id.* ¶ 4. Shortly after their mother's death, Angel and his younger brother fled to the United States, fearing for their lives. They intended to seek help from a relative living in Kennewick, Washington. *Id.* ¶ 5.

Upon presenting themselves at the border on August 30, 2017, Angel was separated from his brother and detained for over three months. *Id.* ¶ 6. On November 3, 2017, the Pierce County Juvenile Court appointed Angel's relative as his guardian in VYG proceedings and entered SIJS findings. Maltese Decl. Ex. K at 1-2. Angel then submitted his Form I-360, Petition for Special Immigrant Juvenile Status to USCIS on November 15, 2017. Muñoz Olivera Decl. ¶ 10. To date, USCIS has not adjudicated his application.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**D.  USCIS Policy on SIJS Orders Issued to 18- to 20-Year-Old Youth**

In the summer of 2017, USCIS radically changed its adjudication practices for SIJ petitions submitted by youth who obtained predicate SIJS orders after turning 18 but before turning 21. Instead of adjudicating SIJS petitions within 180 days as the law requires, *see* 8 U.S.C. § 1232(d)(2), USCIS began holding, delaying the adjudication of, and ultimately denying, the SIJS petitions filed by youth 18 and older. Casey Decl. ¶ 11. In February 2018, Defendant DHS issued new guidance to USCIS stating that "in order for a court order to be valid for the purpose of establishing SIJ eligibility, the court must have competent jurisdiction to determine both whether a parent could regain custody and to order reunification, if warranted." Maltese Decl. Ex. B at 1. USCIS spokesperson Jonathan Withington publicly confirmed this position in April 2018 and asserted that most state courts do not have power to enter SIJS findings for youth age 18 and older:

> Since most courts cannot place a child back in the custody of their parent once the child reaches the age of majority (as determined by state and in most instances that is age 18), those state courts do not have power and authority to make the reunification finding for purposes of SIJ eligibility.

Maltese Decl. Ex. A at 9. USICS has since incorporated the policy into its Consolidated Handbook of Adjudications Procedures (CHAP), which is distributed to USCIS employees. *Id.* Ex. C at 2-3. However, the agency has not altered the publicly available USCIS Policy Manual. *See* USCIS Policy Manual, vol. 6, pt. J, ch. 2.

Pursuant to its new policy, USCIS now categorically denies SIJS petitions filed by youth who obtained SIJS findings in Washington State after turning 18 but before turning 21. *See, e.g.*, Maltese Decl. Ex. G at 2 (stating that "[b]ecause [*Plaintiff Moreno Galvez*] *reached the age of majority*," the court issuing his SIJS order did not have "authority to determine whether [his] parent should regain or lose custody" (emphasis added)); *id.* Ex. J at 2 same); Stone Decl. ¶ 11;

Casey Decl. ¶¶ 9-10. Before its sudden imposition of this new requirement for SIJS petitions, USCIS and the Administrative Appeals Office (AAO) routinely accepted the jurisdiction of state courts to make SIJS findings for applicants who are 18- to 20-years-old. *See* USCIS Policy Manual, vol. 6, pt. J, ch. 3(A)(1) ("Examples of state courts that may meet this definition include . . . guardianship, probate, and delinquency courts."); *see also* Amy Taxin & Deepti Hajela, *Young Immigrants Seeking Refuge From Abuse Face Denials*, U.S. News (Jan. 2, 2019), https://bit.ly/2T8NAdJ (discussing policy shift from approving the "overwhelming majority" of SIJS petitions to sending "a flurry of denial notices" to petitioners age 18 and older).

## III. ARGUMENT

To obtain a preliminary injunction, Plaintiffs must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). Even if Plaintiffs raise only "serious questions going to the merits," the Court can nevertheless grant relief if the balance of hardships tips "sharply" in Plaintiffs' favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Here, the facts and the law clearly favor Plaintiffs, and this Court should accordingly grant their request for a preliminary injunction.

### A.  Plaintiffs Are Likely to Succeed on the Merits.

The Administrative Procedure Act (APA) "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788 (1992). A court "shall" set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), if that action is "in excess of statutory . . . authority," *id.* § 706(2)(C), or was reached

MOT. FOR PRELIM. INJ. - 10
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

"without observance of procedure required by law," *id.* § 706(2)(D). Here, Defendants' new requirement for SIJS applicants must be "set aside" for each of these reasons, because the new policy (1) violates the INA, (2) was imposed without explanation, and (3) was issued without the required notice and comment rulemaking and without publication in the Federal Register. *Id.* § 706(2)(A). As with formal rulemaking, final agency action achieved through an informal process is subject to review under section 706 of the APA. *See, e.g.*, *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015) (noting that "arbitrary and capricious" review is available for agency interpretive rules that do not proceed through notice and comment rulemaking).

1. <u>USCIS's new requirement contravenes the INA and APA.</u>

First, USCIS's new requirement is unlawful because it imposes an eligibility requirement for SIJS that does not exist anywhere in the law, and which is inconsistent with the INA. As a result, the new requirement is "not in accordance with law," 5 U.S.C. § 706(2)(A) and is "in excess of [the agency's] statutory . . . authority," *id.* § 706(2)(C); *see also Nw. Enviro. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1014 (9th Cir. 2008).

USCIS's denials are inconsistent with the express language of the INA, which defines "children"—and thus those eligible for SIJS—as unmarried individuals who have not yet reached their 21st birthday. *See* 8 U.S.C. § 1101(b)(1). Indeed, Congress reaffirmed that youth ages 18 to 20 are eligible to receive SIJS by including age-out protections in the TVPRA of 2008 so that DHS may not deny SIJS classification on the basis of age if the child is under 21 years old on the date she files a SIJS petition. *See* TVPRA § 235(d)(6), 122 Stat. at 5080. However, as noted above, USCIS's spokesperson expressly conceded that the new requirement would prevent most children over 18 from receiving SIJS. *See* Maltese Decl. Ex. A at 9.

Neither the SIJS statute, the USCIS Policy Manual, nor any regulation indicates a state court must have authority to order the reunification of a child and her parent to be recognized as

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

a court with authority to make SIJS findings. Such a requirement is contrary to the original

implementing regulations, when the statute was confined to include only children eligible for

long term foster care. The implementing regulations confined SIJS eligibility to long term foster

care by requiring a finding that family reunification was no longer a viable option. *See* 8 C.F.R. §

204.11(a). However, Congress has since dramatically *expanded* the SIJS statute, and now

requires only that a state juvenile court (1) declare the dependency or determine the custody of a

juvenile, and (2) find that "reunification with 1 or both of the immigrant's parents is not viable

due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. §

1101(a)(27)(J)(i). Nowhere does the statute require the state court to have jurisdiction to return a

child to parental custody. Indeed, requiring such jurisdiction would be contrary to Congress's

express mandate that DHS provide protection for those children who a state court concludes

*cannot* be reunited with family members. 8 U.S.C. § 1101(a)(27)(J)(i). Similarly, the regulatory

definition of "juvenile court" makes no reference whatsoever to reunifying a petitioner with his

or her parents, providing only that a juvenile court is one with "jurisdiction under State law to

make judicial determinations about the care and custody of juveniles." 8 C.F.R. § 204.11(a). In a

recent order granting preliminary injunctive relief to youth in California who were denied SIJS

on the basis of the same USCIS policy, the district court affirmed that the agency's new

"requirement is not found in either the SIJ statute or regulation." *J.L. v. Cissna,* 341 F. Supp. 3d

1048, 1059 (N.D. Cal. 2018); *see also id.* ("[T]he Court cannot reasonably discern why it is

necessary for the state court to have the ability to compel reunification to determine that

reunification is not viable." (alteration and internal quotation marks omitted)).

   All relevant authority confirms Washington's state courts satisfy the requirements of the

SIJS statute, as those courts indisputably have jurisdiction over the custody and care of 18- to 20-

year-old youth in judicial proceedings governed by RCW § 13.40.300 (juvenile offender), RCW

§ 13.90.010 *et seq.* (Vulnerable Youth Guardianship) and RCW § 13.34.267 (Extended Foster

Care). First, in juvenile offender proceedings, Washington law empowers the juvenile division of

the superior court to extend its jurisdiction by written order over youth until the age of 21 (and in

some cases, the age of 25) if the adjudication of a juvenile offense was pending before the

youth's 18th birthday. RCW § 13.40.300(1)-(3)(a). USCIS's own appellate body has looked to

state law to find that juvenile courts have authority to make SIJS findings for a child over 18 in

the youthful offender context. *See, e.g.*, *Matter of E-G-C-V,* 2016 WL 8316261 (AAO Dec. 20,

2016) (finding that Colorado law permitted extension of jurisdiction where juvenile offender

proceedings had commenced prior to age 18). Second, in VYG proceedings, state superior courts

have authority to "make judicial determinations regarding the custody and care of youth within

the meaning of the federal immigration and nationality act." RCW § 13.90.901. A juvenile court

can thus determine placement with a suitable and responsible guardian for youth over the age of

18, and can also appoint a new guardian when necessary.[1] *Id.* §§ 13.90.020, 13.90.050. Finally,

through the EFC program, state courts maintain jurisdiction over dependency proceedings for

any youth over the age of 18 who is declared dependent on the court at the time of their 18th

birthday and meets other requirements. *Id.* §§ 13.34.267, 74.13.031(11)(b).

Moreover, Defendants' new requirement is also inconsistent with the INA because it

defies Congress' expansion of SIJS eligibility beyond youth in foster care. The new requirement

thus effectively nullifies the plain language of the INA as amended in 1994 and 2008. As the

denials issued to Plaintiffs Moreno Galvez and Vicente Ramos demonstrate, USCIS relies on an

---

[1] Potential guardians for purposes of VYG include but are not limited "parents, licensed foster parents, relatives, and suitable persons." RCW § 13.90.020(2). Therefore, even if USCIS's ultra vires new requirement were lawful, the state court *does* have the authority to determine whether a parent should regain or lose custody of the vulnerable youth as a guardian.

MOT. FOR PRELIM. INJ. - 13
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

outdated regulation to support the position that a state court can make SIJS findings only if it has the authority to "reunify [the youth] with one or both parents." *See, e.g.*, Maltese Decl. Ex. G at 2 (citing 8 C.F.R. § 204.11(a)'s "definitions of juvenile court and eligible for long-term foster care"); *id.* Ex. J at 2 (same); *J.L.*, 341 F. Supp. at 1059-60. To justify this requirement, USCIS cites 8 C.F.R. § 204.11(a)'s definition of "[e]ligible for long-term foster care," which requires a "determination . . . that family reunification is no longer a viable option." However, the regulation's reference to foster care is no longer relevant to SIJS eligibility because the TVPRA of 2008 eliminated the requirement that a child be found eligible for long-term foster care to be eligible for SIJS.[2] *See supra* p. 3; *J.L.*, 341 F. Supp. 3d at 1059 ("The TVPRA expressly removed all references to long-term foster care from the SIJ statute.").

USCIS nevertheless insists that the court "must also have the power to compel reunification if warranted," *J.L.*, 341 F. Supp. 3d at 1059, relying on this obsolete language defining "[e]ligible for long-term foster care," 8 C.F.R. § 204.11(a). But "USCIS's reliance on language that has been explicitly removed by Congress casts significant doubt on the validity of its interpretation." *J.L.*, 341 F. Supp. 3d at 1060. Indeed, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). Here, Congress decided not to make foster care the touchstone of SIJS eligibility, but instead decided that a SIJS petitioner would be eligible for relief where the state court determines that "reunification with 1 or both of the immigrant's parents is not viable." 8 U.S.C. § 1101(a)(27)(J)(i). Nothing about the statute mandates that the court have the power to "reunify [the youth] with one or both parents." Maltese Decl. Ex. G at 2. In short, USCIS's new

---

[2] USCIS has acknowledged the SIJS regulations are outdated and inconsistent with the SIJS statute. *See* USCIS Ombudsman, Ensuring Process Efficiency and Legal Sufficiency in Special Immigrant Juvenile Adjudications (Dec. 11, 2015), https://bit.ly/2Tq2Kud (recommending USCIS "[i]ssue final SIJ regulations that fully incorporate all statutory amendments.").

MOT. FOR PRELIM. INJ. - 14
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  "requirement is not found in either the SIJ statute or regulation." *J.L.*, 341 F. Supp. 3d at 1059.

2  Despite this fact, the agency has ignored Congress's effort to expand SIJS beyond foster care

3  youth and to allow SIJS findings to be made in a wider range of custodial and dependency

4  proceedings. These expansions include programs like Washington State's juvenile offender,

5  VYG, and EFC proceedings.

6    In imposing a new requirement, USCIS also unlawfully fails to defer to the state court's

7  findings. Congress vested state courts with exclusive authority to make SIJS findings, including

8  findings that a child cannot reunify with one or both parents due to abuse, abandonment, or

9  neglect. *See* 8 U.S.C. § 1101(a)(27)(J); USCIS Policy Manual vol. 6, pt. J, ch. 2(D); *Perez-Olano*

10  *v. Gonzalez*, 248 F.R.D. 248, 265 (C.D. Cal. 2008) (explaining that in the SIJS statute, "Congress

11  appropriately reserved for state courts the power to make child welfare decisions, an area of

12  traditional state concern and expertise"); *cf. Ankenbrandt v. Richards*, 504 U.S. 689, 702 (1992).

13  Thus, by denying Plaintiffs' applications, USCIS has violated the SIJS statute by refusing to

14  (1) accept the state court's finding that it has the authority to determine the care and custody of

15  the youth, and (2) defer to the state court's determination that a child cannot reunify with at least

16  one of the child's parents. *See, e.g.*, Maltese Decl. Ex. D at 1-2 (making SIJS findings in juvenile

17  offender proceedings); *id.* Ex. H at 1-2 (making SIJ findings in VYG proceedings).

18    2. <u>USCIS's new requirement is arbitrary and capricious and thus violates the APA.</u>

19    Second, USCIS's new policy is arbitrary and capricious, as the agency failed to give

20  "adequate reasons for its decision[]" to depart from past practice and impose a new SIJS

21  eligibility requirement. *Encino Motorcars, LLC v. Navarro, LLC*, 136 S. Ct. 2117, 2125 (2016).

22  Agency action should be set aside as arbitrary and capricious if the agency fails to explain the

23  basis of its decision, fails to consider all relevant factors and articulate a "rational connection

24  between the facts found and the choice made," or fails to offer a "reasoned basis" for departures

MOT. FOR PRELIM. INJ. - 15
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

from preexisting policies. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted); *see also Encino,* 136 S. Ct. at 2125-26. In addition, USCIS has an obligation to render consistent opinions and to follow, distinguish, or overrule its own precedent, adequately explaining departures from prior norms and their legal basis. *Encino*, 136 S. Ct. at 2125-26; *see also I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996); *Sec'y of Agric. v. United States*, 347 U.S. 645, 652-53 (1954). Accordingly, agency action must be set aside unless its basis is "set forth with such clarity as to be understandable." *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947). This is particularly true where a prior policy "has engendered serious reliance interests that must be taken into account." *Mortg. Bankers Ass'n*, 135 S. Ct. at 1209 (citation omitted). Thus, reversing an existing policy requires a "more detailed justification than what would suffice for a new policy created on a blank slate." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Here no such reasoned agency explanation exists for the agency's reversal of its prior policy. At best, Defendants can argue that USCIS's explanation for its new policy is the two-sentence statement its spokesperson shared with a single media outlet on April 24, 2018, months after the agency began to employ its new policy. Maltese Decl. Ex. A at 9. This statement to the press does not remotely meet the APA's requirement that an agency must provide a reasoned basis for its actions. Indeed, "conclusory statements will not do; an agency's statement must be one of *reasoning*." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (internal quotation marks omitted). Even "conclusory" would be a generous way to describe the agency's statement here, which offers no rationale to justify the new requirement.

Nor does the statement "consider reasonably obvious alternatives" and provide reasons for rejecting that alternative. *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 80 (2d Cir. 2006)

(citation omitted). Instead, USCIS wholly fails to address why, decades after SIJS was created—and over a decade after the latest TVPRA amendments—the statute's meaning has changed and now requires a new element for eligibility. Moreover, the agency fails to explain its departure from prior practice, ignoring important reliance interests. *See Mortg. Bankers Ass'n*, 135 S. Ct. at 1209. The USCIS spokesperson's April 24, 2018, statement contains no indication that USCIS considered the devastating impact of its new requirement on Plaintiffs or their caretakers and communities. This categorical failure to offer any explanation for the agency's new approach leaves little doubt the agency's action is "arbitrary and capricious." 5 U.S.C. § 706(2)(A).

3.  <u>USCIS adopted the new requirement without notice and comment rulemaking, and without adequate notice.</u>

Finally, a court must also invalidate agency action if the agency does not follow the procedures required by law. 5 U.S.C. § 706(2)(D). Here, USCIS failed to follow two key procedural requirements in enacting its new policy. First, USCIS was required to follow notice and comment rulemaking. Where an agency issues a rule that has the "force of law," the agency must use the notice and comment rulemaking process provided at 5 U.S.C. § 553 to enact the new rule. *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003). Such "[l]egislative rules . . . create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Id.* By contrast, an "interpretive rule" that does not require notice and comment rulemaking "merely explain[s], but do[es] not add to, the substantive law that already exists." *Id.* Here, the agency's new rule is a legislative one with the force of law, and the APA therefore required USCIS to use the procedures in § 553. Indeed, USCIS's new requirement effected a change in existing agency law and imposed a brand new requirement for SIJS eligibility that has or will result in the denials of the petitions filed by Plaintiffs and proposed class members. *See id.*; *see also supra* pp. 6-10 (describing denials of Plaintiffs'

MOT. FOR PRELIM. INJ. - 17
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

applications and USCIS policy change). As a result, the agency was required to follow notice and comment rulemaking.

Second, even if USCIS's new requirement is simply a "general statement of policy" or an "interpretative rule" that does not require notice and comment rulemaking, 5 U.S.C. § 553(b)(3)(A), the APA provides that an agency must publish such a statement or rule of "general applicability" in the Federal Register to provide notice to affected parties, *id.* § 552(a)(1)(D). Violation of this notice requirement is a basis for setting aside agency action where the affected individuals lacked adequate and timely notice and suffered prejudice. *See, e.g.*, *Morton v. Ruiz*, 415 U.S. 199, 235-36 (1974) (overturning the Bureau of Indian Affairs' denial of benefits for failure to provide notice that benefits were no longer available to those who lived off reservations); *Anderson v. Butz*, 550 F.2d 459, 463 (9th Cir. 1977) (affirming summary judgment against the Secretary of Agriculture's decision to include rent subsidies as "income" for food stamp purposes when he failed to provide notice).

Here, USCIS provided no public notice of its policy change when it first began to deny SIJS classification for children ages 18-20. *See supra* pp. 8-10. After more than a decade of recognizing (1) the state courts' ability to make SIJS findings for children aged 18 to 20, and (2) juvenile court jurisdiction over such children, it was incumbent upon USCIS to notify the public about its wholesale departure from its prior practice and legal conclusions. *See Morton*, 415 U.S. at 232, 236 (explaining that "determination of eligibility [for benefits] cannot be made on an ad hoc basis," particularly where applicants had a "legitimate expectation" of relief).

Moreover, even when the agency did acknowledge its new policy, it did so through a statement to a single media outlet. This form of announcement defies the APA's unambiguous mandate that "statements of general policy or interpretations of general applicability" be

1 published in the Federal Register. 5 U.S.C. § 552(a)(1). Instead, it is precisely the sort of

2 "unpublished ad hoc determination" that "affect[s] individual rights and obligations" that the

3 Supreme Court and the APA require agencies to publish if the agency intends to apply the

4 requirement in adjudications. *Morton*, 415 U.S. at 232. Accordingly, this Court should set aside

5 the agency's policy for failing to abide by the procedure that the APA requires. 5 U.S.C. §

6 706(2)(D).

7 **B. Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

8     Parties seeking preliminary injunctive relief must also show they are "likely to suffer

9 irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Irreparable harm is

10 harm for which there is "no adequate legal remedy, such as an award of damages." *Ariz. Dream*

11 *Act. Coal. v. Brewer (Ariz. I)*, 757 F.3d 1053, 1068 (9th Cir. 2014). Here, USCIS's unlawful

12 requirement and delays in adjudicating SIJS petitions have caused and will continue to cause

13 irreparable harm that cannot be remedied if this Court waits until the end of trial to grant relief.

14     First, Plaintiffs and proposed class members suffer irreparable harm by losing the

15 opportunity to adjust to LPR status. They are all statutorily eligible for SIJS and would be able to

16 adjust to LPR status but for USCIS's new policy. 8 U.S.C. § 1255(a), (h); Casey Decl. ¶ 15.

17 Furthermore, they would become eligible for naturalization five years after being granted LPR

18 status. 8 U.S.C. § 1427(a). At least two federal courts have found that an unlawful SIJS denial

19 constitutes irreparable harm. *See J.L.*, 341 F. Supp. 3d at 1068 (finding irreparable harm in loss

20 of "eligibility for SIJ status and all attendant benefits"); *Perez-Olano*, 248 F.R.D. at 267 (finding

21 irreparable harm sufficient for a *permanent* injunction because that denial results in an inability

22 to obtain LPR status). Moreover, delaying the ability to apply for citizenship constitutes

23 irreparable harm. S*ee, e.g.*, *Kirwa v. U.S. Dept. of Def.*, 285 F. Supp. 3d 21, 42 (D.D.C. 2017)

24 (citing cases).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Second, Plaintiff Vicente Ramos and numerous other proposed class members suffer irreparable harm through their ongoing civil detention. They will continue to face such detention pending the outcome of this motion and, if the Court orders the requested relief, the additional time it takes USCIS to re-adjudicate their SIJS petitions. Such continued detention constitutes "[a]rbitrary civil detention" that the Constitution prohibits. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). The class members' detention implicates a fundamental constitutional right: the right to be free from unlawful deprivation of liberty. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects."). And "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Here, USCIS's unlawful policy and long delays in adjudicating SIJS petitions like those of Plaintiff Jose Luis Vicente Ramos have unlawfully prolonged—and will continue to prolong—the detention of some class members. Casey Decl. ¶ 13. Had USCIS lawfully adjudicated Jose's SIJS petition, DHS would have released him several months ago. Instead, the agency has turned a blind eye to Jose, a 20-year-old survivor of parental abuse and a brutal kidnapping, who has languished in detention for over a year. Vicente Ramos Decl. ¶¶ 11-14. He has spent months waiting for his SIJS petition to be adjudicated, only to find USCIS issued a denial pursuant to a newly-invented requirement that violates the INA and the APA. As a result, he and other detained proposed class members—who are abused, abandoned, and neglected youth—face irreparable harm because of USCIS' new, unlawful SIJS eligibility requirement.

Third, Plaintiffs and proposed class members suffer the loss of opportunities and benefits

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

that accompany SIJS. For example, Plaintiffs and proposed class members are unable to access

federally-funded education without SIJ classification. 8 U.S.C. § 1232(d)(4)(A); *see also, e.g.*,

Wennerstorm Decl. ¶ 13b (describing SIJS petitioner who, without SIJS, has lost a college

acceptance offer due to inability to pay tuition). USCIS' delayed adjudication and denial of class

members' SIJS petitions also eliminates a route to lawful employment authorization. *See, e.g.*,

Wennerstrom Decl. ¶ 13d (describing 18-year-old SIJS petitioner unable to pursue vocational

training because he is unauthorized to work and thus unable to afford school); Stone Decl. ¶ 15

(describing "lost career opportunities and other economic benefits" for a client who was denied

SIJS pursuant to USCIS's new policy). The Ninth Circuit has held the "loss of opportunity to

pursue one's chosen profession constitutes irreparable harm." *Ariz. Dream Act Coal. v. Brewer*

*(Ariz. II)*, 855 F.3d 957, 978 (9th Cir. 2017). Such harm is exacerbated for young individuals

such as Plaintiffs. *Ariz. I*, 757 F.3d at 1068 (finding that irreparable harm was "heightened by

Plaintiffs' young age and fragile socioeconomic status"); *see also Medina v. DHS*, 313 F. Supp.

3d 1237, 1251 (W.D. Wash. 2018) (DACA recipient's potential loss of opportunity to pursue his

profession constituted irreparable harm).

Additionally, Plaintiffs and the proposed class will be denied other benefits available

through SIJS and LPR status, such as healthcare. *See*, *e.g.*, 42 U.S.C. § 18001(d)(1) (specifying

only lawfully present individuals are eligible for coverage under the Affordable Care Act). Class

members over age 19 are also ineligible for health care coverage in Washington State, except in

cases of emergency conditions. *See* Wash. Admin. Code § 182-503-0535(2)(e)(i)-(ii);

Wennerstrom Decl. ¶ 12. The denial of critical services, such as healthcare, constitutes

irreparable harm. *See, e.g.*, *Beltran v. Meyers*, 677 F.2d 1317, 1322 (9th Cir. 1982) (finding

irreparable injury when enforcement of rule "may deny [class members] needed medical care").

MOT. FOR PRELIM. INJ. - 21
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Fourth, the imminent removal from the United States that many class members face constitutes irreparable harm. For proposed class members like Plaintiff Moreno Galvez who are not yet in removal proceedings, the denial of SIJS petitions will likely result in the initiation of removal proceedings and subsequent deportation. *See* USCIS Policy Mem. PM-602-0050.1, at 7 (June 28, 2018), https://bit.ly/2u8zXfS; Maltese Decl. Ex. G at 3. For Plaintiffs Vicente Ramos, Muñoz Olivera, and other proposed class members already in removal proceedings, SIJS denials make it far more likely they will be removed from the United States. *See, e.g.*, Stone Decl. ¶ 14 (explaining that client was deported after USCIS denied his SIJS petition in October 2018). The harm resulting from removal is especially pronounced for Plaintiffs and proposed class members, who have all obtained findings by a state court that it would not be in their best interest to be returned to their country of birth. 8 U.S.C. § 1101(a)(27)(J)(ii); *see also, e.g.*, Maltese Decl. Ex. D at 2; *id.* Ex. H at 2; *id.* Ex. K at 2. Indeed, if removed from the United States, Plaintiffs and proposed class members face separation from their loving guardians, foster parents, and other support networks that have provided them with the care and stability needed to recover from childhood abuse, neglect, or abandonment. Muñoz Olivera Decl. ¶ 12 (describing positive relationship with court appointed guardian and other family members, as well as participation in school and church); Stone Decl. ¶ 14 (explaining that deported client "has been separated from his support system . . . and his court appointed guardian"); Wennerstrom Decl. ¶ 13c (describing 18-year-old SIJS petitioner who fears being separated from her supportive uncle and aunt and forced into an arranged marriage); Casey Decl. ¶ 12 (class members "lack structure and responsible adults to support them should they be forced to return to their home countries"). Removal from the United States and consequent separation from caregivers also constitute irreparable harm. *See, e.g.*, *Leiva-Perez v. Holder*, 640 F.3d 962, 969-70 (9th Cir. 2011) (finding

irreparable harm from risk of deportation); *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 179 (3d Cir. 2018)  (finding irreparable harm because of state court finding "that it would not be in the child's best interest to be returned to his or her country of origin"); *Doe v. Trump*, 288 F. Supp. 3d 1045, 1082 (W.D. Wash. 2017) (finding irreparable harm because of forcible family separation).

Finally, the denial or looming denial of their SIJS petitions subjects these already-vulnerable Plaintiffs to further emotional and psychological harm. *See, e.g.*, Moreno Galvez Decl. ¶ 14 (describing feeling of devastation that USCIS denied his SIJS petition and instructed him to uproot his entire life and return to Mexico, where he has "nothing to go back to"); Vicente Ramos Decl. ¶ 16 (reporting recent diagnoses of Posttraumatic Stress Disorder and Major Depressive Disorder); Muñoz Olivera Decl. ¶¶ 13-14 (explaining impending denial of SIJS petition causes him to feel "trapped" and "fearful"); Casey Decl ¶¶ 12, 14-15. Such "emotional stress, depression, and reduced sense of well-being" further support a finding of irreparable harm. *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 709 (9th Cir. 1988); *see also Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *20 (C.D. Cal. Feb. 26, 2018) ("The Court should also consider the emotional pain to which the named Plaintiffs have attested . . . which is a cognizable form of irreparable injury.").

**C.  The Balance of Hardships and Public Interest Also Weigh Heavily in Plaintiffs' Favor.**

The final two factors for a preliminary injunction also demonstrate that such relief is appropriate in this case. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Many of the same facts that demonstrate irreparable harm also weigh in Plaintiffs' favor for the balance of hardships and public interest factors. First, the balance of hardships and public interest favor ensuring that Plaintiffs do not lose the opportunity to obtain legal status and the accompanying benefits that status would provide. *See,*

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

*e.g.*, *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 436 (E.D.N.Y. 2018); *Regents of Univ. of California v. DHS*, 279 F. Supp. 3d 1011, 1047-48 (N.D. Cal. 2018). Second, there is also "a public interest in preventing [noncitizens] from being wrongfully removed," as is threatened here. *Nken*, 556 U.S. at 436. Third, a strong public interest also lies in "avoiding separation of families," which is likely to occur here in the absence of an injunction. *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017). Finally, Plaintiffs and proposed class members who are detained have a strong liberty interest in being free from the continuing, prolonged detention that has resulted from the government's unlawful policy. *Zadvydas*, 533 U.S. at 690.

In addition, Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). Indeed, our democracy is built on the rule of law, and "it would not be equitable or in the public's interest to allow [the government] to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. II*, 855 F.3d at 978 (citation omitted). An injunction is thus appropriate, as without this Court's intervention, Defendants will continue denying Plaintiffs' SIJS petitions in violation of federal law. Accordingly, the balance of hardships and the public interest overwhelmingly favor ensuring that USCIS complies with the law in its treatment of Plaintiffs and the proposed class members.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court (1) enjoin USCIS from denying SIJS petitions based on its new, unlawful policy, (2) order USCIS to reopen and re-adjudicate the SIJS petitions it has denied under this policy; and (3) order USCIS to adjudicate class members' SIJS petitions within 14 days of the Court's order if more than 180 days have already passed since the petition was filed.

MOT. FOR PRELIM. INJ. - 24
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

DATED this 5th day of March, 2019.

s/ Matt Adams
Matt Adams, WSBA No. 28287

s/ Leila Kang
Leila Kang, WSBA No. 48048

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974

s/ Tim Warden-Hertz
Tim H. Warden-Hertz, WSBA No. 53042

s/ Meghan Casey
Meghan Casey, WSBA No. 45275

s/ Olivia Gibbons
Olivia Gibbons, WSBA No. 52760

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone: (206) 957-8611
Email:  matt@nwirp.org
        leila@nwirp.org
        aaron@nwirp.org
        tim@nwirp.org
        meghan@nwirp.org
        olivia@nwirp.org

MOT. FOR PRELIM. INJ. - 25
Case No. 2:19-cv-321

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611