District Judge Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEOBARDO MORENO GALVEZ, *et al.*,

                Petitioner-Plaintiffs,

v.

LEE FRANCIS CISSNA, *et al.*,

                Respondent-Defendants.

Case No. 2:19-cv-321-RSL

RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

Noted for consideration on April 5, 2019.

## INTRODUCTION

Plaintiffs seek a preliminary injunction enjoining the Department of Homeland Security (DHS) and the United States Citizenship and Immigration Services (USCIS) from: (1) denying certain petitions for Special Immigrant Juvenile (SIJ) classification; (2) initiating removal proceedings against class members whose SIJ petitions have or will be denied; and (3) delaying adjudication of SIJ petitions beyond 180 days (the Motion). The Motion should be denied in its entirety because Plaintiffs cannot establish any of the elements necessary for the issuance of a preliminary injunction.

First, Plaintiffs are unable to succeed on the merits of their claims that USCIS acted arbitrarily and capriciously under the Administrative Procedure Act (APA), because the agency's

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

decisions denying Plaintiffs Galvez's and Ramos' SIJ petitions were not based on a "new policy" or contrary to law, but instead rested on the plain terms of the SIJ statute and the agency's implementing regulations, which require denying SIJ petitions that rely on boilerplate orders from state courts that lack competent jurisdiction to make the statutorily required SIJ findings. Further, this Court lacks jurisdiction to enjoin DHS from initiating removal proceedings or removing individuals whose SIJ petitions have been denied.  Moreover, Plaintiffs have failed to establish that USCIS's delay in adjudicating SIJ petitions is unreasonable given the agency's caseload and available resources.

Second, Plaintiffs cannot show that they will likely suffer irreparable harm absent the issuance of a preliminary injunction by the Court.  Plaintiff Ramos is presently detained and in removal proceedings, and the approval of his SIJ petition would have no impact on his eligibility for bond, or provide a means to avoid removal.  Similarly, Plaintiff Olivera, who is not detained, would not be afforded a defense to removal simply because his still pending SIJ petition was approved.  Finally, Plaintiff Galvez is neither detained nor in removal proceedings.

Finally, it is contrary to the public interest and inequitable to require Defendants to act in a manner that exceeds their statutory authority.  In fact, the public interest and equities in this case are best served by implementing the express will of Congress as enacted in the SIJ statute at 8 U.S.C. § 1101(a)(27)(J).  Nor would it be in the public's interest for this Court to mandate the rate at which SIJ petitions must be adjudicated by USCIS because that would require the agency to allocate resources from other tasks, causing delays in other types of adjudications and would constitute a pernicious insertion of the courts in the management of USCIS.

As will be shown below, the Court should deny Plaintiffs' request for a preliminary injunction.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 2

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

## PROCEDURAL BACKGROUND

On March 5, 2019, Plaintiffs filed a class action complaint for injunctive and declaratory relief on behalf of themselves, and all others similarly situated to them. Dkt. 1. That same day they filed a motion for class certification and this Motion. Dkts. 2-3. Defendants now submit this response in opposition.

## LEGAL STANDARD FOR GRANTING PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a party must ordinarily demonstrate: (1) a likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in favor of preliminary relief, and (4) that an injunction is in the public interest. *Id.* at 20. Although the Ninth Circuit still employs a "sliding scale" approach to the four preliminary injunction factors, *see Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011), the moving party must show a likelihood of irreparable harm to warrant injunctive relief. *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011).

## LEGAL BACKGROUND

Congress added Special Immigrant Juveniles into the definition of special immigrants at 8 U.S.C. § 1101(a)(27)(J), to provide a path to lawful immigration status for juvenile immigrants physically present in the United States who became dependent on state courts and were then deemed eligible for long-term foster care. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (Nov. 29, 1990). Under the implementing regulations, a state court must have authority to render custody decisions and make determinations regarding the viability of the parent-child relationship through reunification in order to issue the rulings necessary to support

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 3

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

SIJ classification.  8 C.F.R. § 204.11(d)(2).  To ensure that the SIJ provisions are utilized for their intended purpose, USCIS must review the legal basis for the juvenile court's dependency ruling.

Under Washington law, however, no court has jurisdiction to determine the custodial rights of parents over their sons or daughters who have attained the age of 18.  RCW § 26.28.010.  Instead, the power of Washington State courts over 18 to 20 year olds is limited to very specific circumstances unrelated to issues of custody and parental reunification.

### a.  Child Welfare Law

The statutory and regulatory scheme for SIJ classification intersects with, and incorporates, terms of art from child welfare law relating to the viability of family relationships and the best interests of children.  *See* 8 U.S.C. § 1101(a)(27)(J)(i)–(ii); 8 C.F.R. §§ 204.11(c)(6), (d)(iii).  What follows is a summary of those relevant legal principles for the Court's reference.

The Constitution recognizes that parents have a fundamental right to raise their children.  *See Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *Prince v. Commonwealth of Mass*., 321 U.S. 158, 166 (1944) (noting that "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder").  Under the principle of *parens patriae*, however, the government can intervene in the parent-child relationship when parents fail to provide proper care.  *Troxel v. Granville,* 530 U.S. 57, 88 (2000); *Stanley v. Ill.*, 405 U.S. 645, 651 (1972).

In 1912, the federal government established the Children's Bureau in the U.S. Department of Health and Human Services to guide federal programs to support state child welfare programs.  42 U.S.C. § 191.  *See also* John E.B. Myers, *Golden Anniversary Issue: A Short History of Child Protection in America*, 42 Fam. L.Q. 449, 451 (2008).  To obtain federal

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

funding for their child welfare programs, each state must comply with federal requirements found in the Social Security Act.  *See* Department of Health and Human Services, *Major Federal Legislation Concerned With Child Protection, Child Welfare, and Adoption* (March 2015), *available at* https://www.childwelfare.gov/pubpdfs/majorfedlegis.pdf.

Overall, Congress has encouraged a national policy to strengthen families to prevent child abuse and neglect, and to promote reunification of families where appropriate.  *See also* RCW § 13.34.020 ("The legislature declares that the family unit is a fundamental resource of American life which should be nurtured.").  Families have a "well-elaborated constitutional right to live together without governmental interference."  *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000); *accord Kirkpatrick v. City of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016) (en banc); *Burke v. Cty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009);  *Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007);  *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1107 (9th Cir. 2001).

For example, when a state does intervene into the family sphere, the state agency must make "reasonable efforts . . . to preserve and reunify families." 42 U.S.C. § 671(a)(15)(B). Parents cannot be permanently deprived of their Constitutional right to the care and custody of their children, "simply because they have not been model parents or have lost temporary custody of their child to the State."  *Santosky v. Krame*r, 455 U.S. 745, 753 (1982).

Many of these concepts and terms of art used in child welfare law were incorporated by Congress in the drafting of, and amendments to, the SIJ statute.  These terms include:

"Dependent" which means when a juvenile court determines that it can intervene into the parent-child relationship and make decisions regarding the custody and control of the child.  In Washington state, if the court declares the child is dependent under RCW § 13.34.030(6) by a

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

preponderance of the evidence, the court must then determine placement of the child and the services to be provided.  RCW § 13.34.130.  The primary purpose of dependency is to allow courts to order remedial measures to preserve and reunify families.  *In Re Dependency of Schermer,* 161 Wash.2d 927, 943, 169 P.3d 452 (2007).

"Reunification" means the process of returning children from out-of-home care to their families of origin.  Reunification is both the primary goal for children in out-of-home care as well as the most common outcome.  *See* U.S. Department of Health and Human Services. *Child Information Gateway Glossary*, *available at* https://www.childwelfare.gov/glossary/glossaryf/#family_reunification.  *See also* 45 C.F.R. § 1355.25(a) and RCW § 13.34.136.

### b.  The SIJ Statute

At the time Congress enacted the SIJ statute, undocumented alien minors in foster care who were declared dependent on the state juvenile courts were considered an especially vulnerable group within the child welfare system.  Not only did this population lack parental guidance, they lacked the ability to transition from state care to independence.  *See generally* Special Immigrant Status, 58 Fed. Reg. 42843-01 (Aug. 12, 1993), 1993 WL 304167. Accordingly, Congress created the SIJ classification to provide children in state child welfare systems a pathway to obtain lawful permanent residence.  As originally enacted in 1990, federal law required that a qualified SIJ petitioner be an individual:

(i)     who has been declared dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care, and

(ii)    for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

residence; except that no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act.

Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (Nov. 29, 1990).

Congress has always had concerns about the potential misuse of the SIJ program as demonstrated by the prohibition of granting future immigration benefits for the juvenile's parent(s) based upon that relationship despite not requiring that the relationship be fully terminated.  *See* Special Immigrant Juvenile Petitions, 76 Fed. Reg. 54978-01, 54983 (Sept. 6, 2011), 2011 WL 3882775.  Congress acted again in 1991 to minimize potential abuse of the SIJ benefit by restricting the admission of aliens arriving in the United States for the purpose of taking advantage of this means of gaining lawful permanent resident status.  *See* Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 302(d)(2), 105 Stat. 1733 (Dec. 12, 1991)*;* and 58 Fed. Reg. at 42844-45, 1993 WL 304167.

The 1991 Congressional amendment provides that neither section 1101(a)(27)(J) nor section 245(h) of the INA shall be construed as authorizing an alien to apply for admission or be admitted to the United States in order to obtain SIJ classification.  In 1994, Congress expanded SIJ eligibility to include not only those explicitly declared dependent on a juvenile court, but any child whom a juvenile court had legally committed to, or placed under the custody of, a state agency or department.  *See* Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305 (Oct. 25, 1994).

In 1997, Congress again amended the statute's definitions to ensure that SIJ classification was not "sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect."

*See* Appropriations Act, Pub. L. No. 105-119, § 113, 111 Stat. 2440, 2469 (Nov. 26, 1997) (Appropriations Act); *see also* U.S. Congress, House Comm. on Appropriations, *Making Appropriations for The Depts. of Commerce, Justice, and State, the Judiciary, and Related Agencies for the Fiscal Year Ending September 30, 1998, and for Other Purposes*, Conference Report to Accompany H.R. 2267, 143 Cong. Rec. H. 10809-01 (daily ed. Nov. 13, 1997), 1997 WL 705004, at *111.  Section 113 of the Appropriations Act limited the definition of an SIJ to juveniles declared dependent on the court because of abuse, neglect, or abandonment.  Pub. L. No. 105-119, at § 113.   The Appropriations Act also  provided that juveniles are eligible for classification as an SIJ only if the Attorney General (later changed to the Secretary of the Department of Homeland Security) expressly consents to the juvenile court order serving as a precondition to the grant of SIJ status.  H.R. Rep. No. 105-405 at 130, *reprinted in* 1997 U.S.C.C.A.N. 2941, 2981 (1997).

The 2008 changes to SIJ eligibility mirror federal and state law trends towards eliminating long-term foster care as a permanent placement in favor of other "permanent living arrangement" for children that could not be reunited with their parents.  *See, e.g.*, Adoption and Safe Families Act, Pub. L. No. 105-89, 111 Stat. 2115 (Nov. 19, 1997) (removing long-term foster care as permanent living- arrangement goal); 143 Cong. Rec. H10776-05, H10787 (daily ed. Nov. 13, 1997) (statement of Rep. Kennelly) (describing legislation as "putting children on a fast track from foster care to safe and loving and permanent homes").

In December 2008, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Pub. L. No. 110-457, § 235, 122 Stat. 5044 (Dec. 23, 2008), which replaced the foster care language and allowed for SIJ eligibility where the

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

juvenile court placed the immigrant under the custody of an individual or an entity.  Since 2008, immigrants eligible for SIJ classification have been defined as:

> [A]n immigrant who is present in the United States—
>
> (i)     who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii)    for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii)   in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . .

8 U.S.C. § 1101(a)(27)(J).

The TVPRA also provided that USCIS could not deny or revoke SIJ classification because the petitioner turned 21, so long as the petitioner was under 21 when he or she submitted the petition.  Pub. L. No. 110-457, at § 235(d)(6).[1]  Prior to the passage of the TVPRA, USCIS required that all petitioners continue to be under the jurisdiction of the juvenile court from the time of filing the petition to adjudication. *See* 8 C.F.R. § 204.11(c)(5) and 8 C.F.R. § 103.2(b). Juveniles who aged-out of state court jurisdiction were not eligible to pursue SIJ classification. Additionally, if petitioners attained 21 years of age prior to the adjudication of their petition, the case was denied. 8 C.F.R. § 204.11(c)(1). Furthermore, petitions were automatically revoked if

---

[1] The TVPRA also required the Secretary of Homeland Security to "consent" to the grant of SIJ classification, instead of "expressly consenting" to the juvenile court order.  Pub. L. No. 110-457, at § 235(d)(1)(B); *see also* 8 U.S.C. § 1101(a)(27)(J)(iii).

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 9

the SIJ had not adjusted status before the petitioner reached twenty-one years of age. 8 C.F.R. § 205.1(a)(iv)(A).

This addition of an age-out provision was the result of the rulemaking process. In 1991, the government published an interim rule requiring that petitioners seeking SIJ classification be juveniles under state law. Special Immigrant Status, 56 Fed. Reg. 23207-09 (May 21, 1991), 1991 WL 306441. Several commenters were concerned about potential confusion because of differences between state laws, but the government responded that because juvenile courts are under the control of an individual state's statute, inequities caused by variations in state law were unavoidable. Special Immigrant Status, 58 Fed. Reg. 42843-01, 42846, 1993 WL 304167. In an attempt "minimize" the confusion, the final rule changed the requirement that the beneficiary be a juvenile under state law, and replaced it with a requirement that the beneficiary be under twenty-one years of age, thus establishing a consistent age at which an alien would cease to be eligible for special immigrant juvenile status. *Id.*

### c. The SIJ Regulations

USCIS has sole statutory authority under federal law to implement the SIJ classification provisions. Homeland Security Act of 2002, Pub. L. No. 107–296, §§ 471(a), 451(b), 462(c), 116 Stat. 2135 (Nov. 25, 2002). The regulations implementing SIJ were promulgated by the Immigration and Naturalization Service (INS) in 1993. *See* Special Immigrant Status, 58 Fed. Reg. 42843-01 (Aug. 12, 1993), 1993 WL 304167. The regulations provide that an alien is eligible for SIJ status under 8 U.S.C. § 1101(a)(27)(J), if the alien:

> (1) Is under twenty-one years of age;
> (2) Is unmarried;
> (3) Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 10

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

> dependency, while the alien was in the United States and under the jurisdiction of the court;
>
> (4) Has been deemed eligible by the juvenile court for long-term foster care;
>
> (5) Continues to be dependent upon the juvenile court and eligible for long term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended; and
>
> (6) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents . . .

8 C.F.R. § 204.11(c). A "juvenile court" is defined in the SIJ regulations as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." *Id*. at § 204.11(a). Section 204.11(d) of the regulations further require an SIJ petitioner to submit one or more documents which include:

> (i) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary to be dependent upon that court;
>
> (ii) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary eligible for long-term foster care; and
>
> (iii) Evidence of a determination made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions, that it would not be in the beneficiary's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or of his or her parent or parents.

*Id*. at § 204.11(d)(2). The term "eligible for long-term foster care," as it appears in § 204.11(d)(2)(ii), reflects the meaning in child welfare law and "means that a determination has been made by the juvenile court that family reunification is no longer a viable option." *Id*. § 204.11(a).

USCIS does not view the deletion of the term long-term foster care in the 2008 TVPRA amendments as meaning that SIJ eligibility is no longer contingent on a determination that the petitioner show a lack of viable relationship with a parent. Indeed, at the time of passing the

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 11

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

TVPRA, Senator Feinstein remarked:

> [T]his legislation also requires, whenever possible, family reunification or other appropriate placement in the best interest of the unaccompanied alien children... I would also like to be clear about what this bill would not do… It does not interfere with the custodial rights of a parent or guardian in situations where a parent or guardian seeks to establish custody.

154 Cong. Rec. S10886-01 (Dec. 10, 2008) (statement of Sen. Feinstein), 2008 WL 5169970.

Section 235 of TVPRA also made efforts to ensure the primacy of family reunification by limiting eligibility for SIJ if the state court or guardian were acting temporarily in place of a parent.  *See* Pub. L. No. 110-457, § 235(d)(5), 122 Stat. 5044 (2008) ("A department or agency of a State, or an individual or entity appointed by a State court or juvenile court located in the United States, acting in loco parentis, shall not be considered a legal guardian for purposes of *this section* or section 462 of the Homeland Security Act of 2002 (6 U.S.C. § 279); *see also* 6 U.S. Citizenship & Immigration Services Policy Manual (Policy Manual or Pol. Man.) (October 2016) part J, ch. 2(D)(1), *available at* https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6.html.

Although individuals no longer have to be declared dependent on a juvenile court or placed under the care of a state agency, the crux of SIJ eligibility still remains a juvenile court decision that the immigrant will not be returned to the care of at least one parent due to that parent's unfitness.[2]  The state court must also determine that a placement in the home country

---

[2] The American Bar Association took a similar view, and stated the following in its guidance on federal child welfare and immigration law:

> The law governing SIJS was changed significantly in 2008. Prior to 2008, it required an applicant to have been deemed "eligible for long-term foster care" by the court, which in turn was interpreted to mean that family reunification was no longer viable. Under the current law, the child need not be in actual state foster care to be SIJS-eligible, and could, in fact, be residing with one parent. **Because the current statute requires only that reunification not be viable with *one or both* parents, the juvenile court can make the SIJS findings as soon as the court deems reunification not viable with *one* of the parents, even if the other parent is still receiving reunification services.** This

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 12

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

would not be in the child's best interest. *See* U.S. Department of Health and Human Services,

*Determining the Best Interests of the Child* (Mar. 2016), *available at*

https://www.childwelfare.gov/pubPDFs/best_interest.pdf. The state court's finding that a

particular custodial placement is the best alternative available to the petitioner in the United

States does not necessarily establish that a placement in the petitioner's country of nationality

would not be in the child's best interest." *See* 6 Pol. Man. part J, ch. 2(D)(3); *see also* 58 Fed.

Reg. 42843-01, 42848 (Aug. 12, 1993), 1993 WL 304167 (stating that evidence of availability of

foster care as the best option in the United States does not mean that a foster care placement in

another country would not be in the child's best interest).

It is generally in a child's best interest to be placed with relatives or within their

communities or origin with access to parental visitation as appropriate.  For example, federal

child welfare law requires the state to exercise due diligence to identify and provide notice to all

adult grandparents, all parents of a sibling of the child, and other adult relatives of the child;

there are no exceptions in the statute for relatives living outside the United States. 42 U.S.C. §

671(a)(29).  Washington State also recognizes the importance of community ties and parental

visitation.  Under its statutory scheme, children should remain in their communities and own

neighborhoods even if that means a placement outside of Washington.  RCW §

13.34.136(2)(b)(iv)-(vi).  The vulnerability that ensues from such profound decisions affecting

---

change in law means that many more children in the child welfare system are potentially eligible
for SIJS.

*See* American Bar Association Center on Children and the Law: Quick Guide to Federal Child Welfare &
Immigration Law, at 2, *available at*
https://www.americanbar.org/content/dam/aba/administrative/child_law/QuickGuideChildWelfareImmigration1.aut
hcheckdam.pdf (emphasis added).

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 13

the parent-child relationship is why the individual may be eligible for SIJ classification and potentially lawful permanent residence in the United States.

In order to ensure fairness and integrity, the implementation of the SIJ program requires the SIJ definition to have a consistent meaning across different courts in all States.  To that end, USCIS has concluded that the definition of SIJ continues to use terms of art from child welfare law and although different language may be used amongst states and types of proceedings, the rulings of qualifying SIJ orders must be legally equivalent to those found in child welfare law. *See* Policy Alert PA-2016-06, Oct. 26, 2016, *available at* https://www.uscis.gov/policymanual/Updates/20161026-SIJ-EB4Adjustment.pdf. (reaffirms that the juvenile court order required findings on dependency or custody, non-viability of parental reunification and best interests of the child, findings must be made under state child welfare law).  The USCIS Policy Manual further explains that the "language of the order may vary based on individual state child welfare law."  *See* 6 Pol. Man. part J, ch. 3(A)(2); and  "the order (or orders) should not just mirror or cite to immigration law and regulations.  The juvenile court order may use different legal terms than those found in the INA as long as the findings have the same meaning as the requirements for SIJ classification."  *Id.*

### d.  The SIJ Adjudications Process

An alien seeking SIJ classification must file a "Petition for Amerasian, Widow(er), or Special Immigrant" (Form I-360), a birth certificate or other evidence of age, copies of the juvenile court order establishing the alien's eligibility, and evidence of the factual basis for the juvenile court's findings.  8 C.F.R. § 204.11(d).  The petitioner bears the burden of proof to establish his or her eligibility for SIJ classification.  8 U.S.C. § 1361.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 14

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

USCIS reviews the petition, the juvenile court order(s), and any supporting evidence.  8 C.F.R. § 204.11(d).  The adjudications officer may issue a Request for Evidence (RFE) or a Notice of Intent to Deny (NOID) if the officer believes the evidence is insufficient to approve the petition.  8 C.F.R. § 103.2(b)(8)(iv).  If a petition is granted, the alien may seek to adjust his or her status to that of a lawful permanent resident through the adjudication of a Form I-485, Application to Register Permanent Residence or Adjust Status.  8 U.S.C. § 1255(h).  USCIS may also revoke an approved petition if, before USCIS issued its decision on the petitioner's adjustment application, the petitioner reunified with one or both parents in accordance with a juvenile court order that previously deemed reunification not viable.  8 C.F.R. § 205.1.  If an SIJ petition is approved, the individual is eligible to apply for adjustment of status to lawful permanent resident. 8 U.S.C. § 1255(a).

e. **USCIS's Consent to the Grant of SIJ Classification**

The TVPRA requires the Secretary of Homeland Security to "consent" to the grant of SIJ classification, instead of "expressly consenting" to the juvenile court order.  Pub. L. No. 110-457, at § 235(d)(1)(B).  USCIS exercises its "consent" authority by verifying whether SIJ petitions are bona fide, meaning that the juvenile court order was not sought primarily to obtain the status of an alien lawfully admitted for permanent residence, rather than to obtain relief from abuse or neglect.  6 Pol. Man. part J, ch. 2(D)(5) (citing 8 U.S.C. § 1101(a)(27)(J)(iii)); H.R. Rep. No. 105-405, at 130 (1997)).

Thus, USCIS must review each state court order to determine if all of the required legal conclusions have been reached and are supported by a reasonable factual basis and, in its discretion, determine if the case is bona fide and warrants consent.  *See* 6 Pol. Man. part J, ch. 2(D)(5); *see also* Memorandum #3 -- Field Guidance on Special Immigrant Juvenile Status

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 15

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Petitions, (May 27, 2004), 2004 WL 1638268 (stating that "The District Director, in his or her discretion, shall expressly consent to dependency orders…").

As the Policy Manual states, "[t]here is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law," and "[j]uvenile courts should follow their state laws on issues such as when to exercise their authority, evidentiary standards, and due process." 6 Pol. Man. parts J, ch. (2)(D)(4) and  J, 3(A)(2).  The Policy Manual goes on to instruct that the language of the order may vary based on individual state child welfare law and reiterates that "[t]emplate orders that simply recite the immigration statute or regulatory language are generally not sufficient" for purposes of establishing SIJ eligibility. 6 Pol. Man. part J, ch. 3(A)(3).

### f.  Washington Child Welfare Law

Pursuant to Washington law, "all persons shall be deemed and taken to be of full age for all purposes at the age of eighteen years."  RCW § 26.28.010; *See also id.* at § 13.04.011(2) ("'juvenile,' 'youth,' and 'child' mean any individual who is under the chronological age of eighteen years").  Under Washington law, a person who is 18 years old may marry, execute a will, vote, enter into a contract, sue and be sued, and "make decisions in regard to their own body . . ."  RCW § 26.28.015.

In Washington, the state may exercise its' *parens patriae* authority over a child to protect the child from harm within the family through a dependency action. This happens when a petition alleging abuse and/or neglect is filed with a juvenile court.  RCW § 13.34.050. Washington juvenile courts have exclusive original jurisdiction over a variety of proceedings related to the custody and care of abused and neglected children, such as those relating to children alleged or found to be dependent as provided in chapter 26.44 RCW and in RCW §§

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 16

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

13.34.030 through 13.34.161; the termination of a parent and child relationship as provided in RCW §§ 13.34.180 through 13.34.210; the approval or disapproval out-of-home placement as provided in RCW § 13.32A.170.

In order to determine whether the allegations in the dependency petition can be sustained, a fact-finding hearing will be held in front of a judge to determine whether the state can prove the allegations in the dependency petition.  RCW § 13.34.110.  The juvenile court then enters a dispositional order, deciding whether the child will be returned home or remain in the state's custody as a dependent child.  *Id.*  If the child is declared dependent, the court determines who will have physical custody of the child.  For example the child may be placed with a relative or in foster care. RCW § 13.34.130. The court also determines which services the parents are to complete in order to attempt to correct the issues that led to the child's removal. RCW § 13.34.136.  Under Washington law, there are limited possible outcomes to dependency proceedings:

1. Reunification– In most cases all the issues regarding the abuse or neglect are addressed and the child is returned to the parent, and the case is dismissed.
2. Adoption – the parent's rights to the child are completely severed so that the child can be adopted.
3. Guardianship (also called Minor Guardianship or Title 13 RCW Guardianship) –The child is appointed a guardian that has the legal responsibility to take care of the child but the parent's rights are not completely severed.
4. Permanent Legal Custody Order – A family member or another person who is not the parent obtains permanent custody.
5. Long-Term Foster Care or Relative Care –The dependency is not dismissed and the remains in foster care or placed with a relative.
6. Independent Living or Responsible Skills – if appropriate for children over 16 years of age.

RCW § 13.34.136(2)(a).  USCIS has interpreted the changes made by the TVPRA as no longer specifically requiring a child to have been subject to dependency proceedings. 6 Pol. Man. part J,

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 17

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

ch. 2(D)(1).   However, the SIJ statute continues to require that reunification with a parent no

longer be viable due to maltreatment such as abuse, neglect, abandonment or a similar legal

basis. 8 U.S.C 1101(a)(27)(J)(i); *see also* 6 Pol. Man. part J, ch. 2(D)(2).  As discussed above,

this requires a legal conclusion by a court of competent jurisdiction that the child's parent(s) will

not be able to regain custody. States are expected to follow their laws relating to such decisions.[3]

Vulnerable Youth Guardianships (VYG)

In 2017, the Washington State Legislature created a new "vulnerable youth

guardianship." RCW § 13.90.901.  In enacting this guardianship, the legislature noted that

> Federal law allows a person under twenty-one years old, who otherwise meets the
> requirements for eligibility under 8 U.S.C. Sec. 1101(a)(27)(J), to file for relief.  In
> Washington, however, vulnerable youth who are between eighteen and twenty-one
> years old have largely been unable to obtain the findings from the superior court
> necessary to seek classification under 8 U.S.C. Sec. 1101(a)(27)(J) and the relief
> that it was intended to afford them, solely because superior courts cannot take
> jurisdiction of these vulnerable youth under current law. This is true despite the fact
> that many vulnerable youth between eighteen and twenty-one years old face
> circumstances identical to those faced by their younger counterparts.

RCW § 13.90.901(d).  The legislature further found that "[v]ulnerable youth guardianships of the

person may be necessary and appropriate for these individuals, even between eighteen and

twenty-one years old, although a vulnerable youth for whom a guardian has been appointed

retains the rights of an adult under Washington law.  RCW § 13.90.901(g).  In contrast to a

standard guardianship, the order appointing a vulnerable youth guardianship need only

"[p]rovide that the guardian shall ensure that the legal rights of the vulnerable youth are not

---

[3] A qualifying finding on reunification requires the state court to declare "under the state child welfare law, that the
petitioner cannot reunify with one or both of the petitioner's parents prior to aging out of the juvenile court's
jurisdiction due to abuse, neglect, abandonment, or a similar basis under state law." 6 Pol. Man. part J, ch. 2(D).

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 18

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

violated, and may specify the guardian's other rights and responsibilities concerning the care, custody, and nurturing of the vulnerable youth."  RCW § 13.90.040(b).

Washington Juvenile Offender Adjudications

In Washington, a "Juvenile Offense" is any act designated a violation or a crime if committed by an adult.  RCW §13.40.020(21).  A "juvenile offender" is defined as any juvenile "found by the juvenile court to have committed an offense, including a person eighteen years of age or older over whom jurisdiction has been extended."  RCW § 13.40.020(16).

A court may extend its jurisdiction over a juvenile offender beyond his 18th birthday only if prior to the juvenile's eighteenth birthday "proceedings are pending seeking the adjudication of a juvenile offense and the court by written order setting forth its reasons extends jurisdiction of juvenile court over the juvenile beyond his or her eighteenth birthday."  RCW § 13.40.300(3)(a). The court may extend jurisdiction if the court has found the juvenile guilty or after a guilty plea and extension is necessary to allow for the imposition of disposition or disposition has been held and an extension is necessary to allow for the execution and enforcement of the court's order of disposition.  RCW § 13.40.300(3)(b), (c).  The court's jurisdiction cannot, however, extend beyond the juvenile's 21st birthday.

## FACTUAL BACKGROUND

### a.  Plaintiffs' SIJ Applications

Plaintiff Leobardo Moreno Galvez is a 20-year-old citizen of Mexico who purportedly entered the United States without inspection in January 2012, when he was 14 years old.  Dkt. 3 at p. 11.  He reports that following an arrest in 2016, he fell under the jurisdiction of the Skagit County Juvenile Court.  *Id.*  The juvenile court entered an Order Extending Jurisdiction past Galvez's 18th birthday.  *Id.*  On October 20, 2016, the Juvenile Court entered a "SIJS Order"

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 19

finding that he had been "legally committed to or placed in the custody of a state agency or department;" that reunification with both of his parents was not viable due to abuse, neglect, or abandonment; and that it was not in his best interest to return to Mexico.  Declaration of Peter L. Rosenstock (Rosenstock Dec.), Ex. A, State Juvenile Court Order.  On December 2, 2016, Galvez submitted his I-360, Petition for SIJS to USCIS.  *Id.*, Ex. B.  On December 20, 2018, USCIS issued a denial on the grounds that Galvez failed to show that the state court had jurisdiction under state law to make a legal conclusion regarding him returning to his parents' custody.  *Id.*, Ex. C, Decision of USCIS.

Plaintiff Jose Luis Vicente Ramos is a 20-year-old citizen of Guatemala who entered the United States without inspection on July 3, 2016. *Id.*, Ex. D, Form I-213, Record of Deportable/Inadmissible Alien dated July 3, 2016.  He was issued a Notice to Appear for removal proceedings before an immigration judge.  *Id.*, Ex. D & Ex. E., Notice to Appear.  He was released from custody on September 20, 2016.  *Id.*, Ex. F, Notice to EOIR: Alien Address.  Ramos failed to appear for his scheduled court appearance.  *Id.*, Ex. G, Form I-213, Record of Deportable/Inadmissible Alien dated February 8, 2018.  On February 8, 2018, he was arrested during a drug search warrant service.  *Id.*, Ex. G.  On February 23, 2018, an immigration judge determined that he was a flight risk and denied Ramos bond.  *Id.*, Ex. H, Custody Order.

On June 1, 2018, the Pierce County Superior Court appointed his cousin as Ramos' Vulnerable Youth Guardian, and entered a "SIJS order" finding that Ramos' reunification with his parents was not viable on account of abuse and it was not in his best interest to return to his home country.  *Id.*, Ex. I, State Juvenile Court order.  On June 11, 2018, Ramos filed his Form I-360, Petition for Special Immigrant Juvenile Status.  *Id.*, Ex. J, I-360 petition.  On February 5, 2019, USCIS issued a denial stating that "[w]hile you have presented evidence that a court has . . .

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 20

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

. placed you in a guardianship with your consent, the evidence you submitted does not establish that the state court had jurisdiction under state law to make a legal conclusion about returning you to your parent(s)' custody." *Id.*, Ex. K, Decision of USCIS.

Plaintiff Angel de Jesus Muñoz Olivera is a 19-year-old citizen of Mexico who arrived at the San Yisdro, California Port of Entry on August 30, 2017, and requested asylum. *Id.*, Ex. L, Form I-213, Record of Deportable/Inadmissible Alien dated August 31, 2017.   Because he was not in possession of valid travel documentation, he was detained and referred for a credible fear interview with an asylum officer. *Id.* On September 22, 2017, an asylum officer found the Olivera has a credible fear and issued him a notice to appear for removal proceedings. *Id.*, Ex. M, Form 870, Record of Determination/credible fear worksheet; Ex. N, Notice to Appear.   As an arriving alien, he was detained without bond. *Id.*, Ex. O, Custody Order.   Sixty-five days later, on November 3, 2017, while Olivero was still detained in immigration custody, the Pierce County Superior Court appointed Olivero's cousin as his Vulnerable Youth Guardian and entered a "SIJS order." *Id.*, Ex. P, State Juvenile Court order.   On November 15, 2017, Olivera submitted his Form I-360 to USCIS. *Id.*, Ex. Q, I-360 petition, at p. 3.   On December 6, 2018, Olivera was paroled from custody. *Id.*, Ex. R, Form I-94.

### b.  The Backlog of SIJ Petitions

Besides SIJ petitions and SIJ-based I-485 Adjustment of Status applications, the National Benefits Center (NBC) processes various certain other applications and petitions.   Declaration of Michael Valverde (Valverde Dec.) ¶ 6.   In Fiscal Year 2018, the NBC received approximately two million applications and petitions. *Id.* ¶ 10.   Of those, 1,416,740 were processed by NBC for further adjudication by other agency components, and 679,592 were adjudicated by NBC. *Id.*

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 21

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Approximately 18,000 or .09% of the entire caseload were I-360 petitions for Special Immigrant Juvenile (SIJ) classification.  *Id*.

Over the past several years, there has been a dramatic increase in SIJ applications from 5,776 in 2014 to 19,475 in 2016.  *Id*. ¶ 13.  As of September 24, 2018, the number of SIJ petitions awaiting adjudication at the NBC was 32,518 of which 23,589 were pending more than 180 days.  *Id*. ¶ 14.  To address this backlog, CIS recently increased its staff of SIJs adjudicators from 22 to 59.  *Id*.  To complete all its tasks, the NBC employs approximately 527 Immigration Services Officers.  *Id*. ¶ 11.

## ARGUMENT

Considering the legal framework as set forth above, Plaintiffs are not entitled to a preliminary injunction because they are unable to establish that decisions made by USCIS related to their SIJ petitions were arbitrary and capricious under the APA.  Further, Plaintiffs will be unable to demonstrate that they are facing irreparable harm absent the Court's intervention in this matter because they are not entitled to relief from pending or future removal proceedings based on decisions related to their SIJ petitions.  Finally, the interests of the public and balance of equities tip in favor of denying Plaintiffs' request for a preliminary injunction because USCIS is properly performing its role in administering the SIJ program based on the SIJ statute, agency regulations, its caseload and available resources.

Accordingly, the Court should deny the Motion.

## I.       Plaintiffs Cannot Establish a Likelihood of Success on the Merits

The Court should deny the Motion because Plaintiffs are unable to establish that USCIS acted unreasonably in applying the SIJ statute and the implementing regulations in denying Plaintiffs' SIJ petitions.  Further, Plaintiffs are unable to explain how USCIS's actions

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 22

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1   interpreting the already-existing SIJ statute required notice-and-comment rulemaking.  Next, the

2   Court lacks jurisdiction to intervene in Plaintiffs' removal proceedings.  Finally, Plaintiffs have

3   failed to show how USCIS's timeline for processing and adjudicating pending SIJ petitions is

4   unreasonable based on the agency's caseload and resources.

5         a.      **USCIS's Denials of Plaintiffs' SIJ Petitions was Reasonable.**

6         Under the APA, this Court may only hold unlawful and set aside an agency decision that

7   is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law" or

8   "unsupported by substantial evidence."  *See* 5 U.S.C. § 706(2); *Allen v. Milas*, 896 F.3d 1094,

9   1098 (9th Cir. 2018).  This standard of review is narrow and does not give the Court the

10  authority to substitute its judgment for that of the agency. *See Motor Vehicles Mfrs. Ass'n of the*

11  *U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "We will defer to an

12  agency's interpretation of a statute that it is charged with implementing if the statute is

13  ambiguous and the agency's interpretation is reasonable."  *Putnam Family Partnership v. City of*

14  *Yucaipa, Ca.*, 673 F.3d 920, 928 (9th Cir. 2012) (citing *Chevron. U.S.A. Inc. v. Nat. Res. Def.*

15  *Council, Inc.,* 467 U.S. 837, 842-43 (1984)).  In deferring to an agency's interpretation of a

16  statute it is tasked with implementing, a reviewing court "need not conclude that the agency

17  construction was the only one it permissibly could have adopted . . . or even the reading the court

18  would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467

19  U.S. at 843 n.11.  A reviewing court should also defer to an "agency's interpretation of its own

20  ambiguous regulations, which controls unless plainly erroneous or inconsistent with the

21  regulation . . ." *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725,

22  733 (9th Cir. 2017) (quotation marks omitted).

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 23

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

As set forth below, USCIS's denials of the Plaintiffs' SIJ petitions were not arbitrary, capricious or contrary to law.

In the administration of most humanitarian immigration programs, Congress has delegated to USCIS the responsibility for making necessary fact-findings to determine whether applicants have met their burden of establishing eligibility.  For example, in the asylum context, asylum officers conduct interviews and review supporting evidence to determine whether applicants have established that they had suffered past persecution or have a well-founded fear of future persecution.  *See* 8 U.S.C. § 1158(a)(1)(A).  USCIS routinely makes factual determinations regarding whether children have been subjected to battery or extreme cruelty by a parent.  *See e.g.* 8 U.S.C. §§ 1154(a)(1)(A)(iv) and (a)(1)(B)(iii).  Such children submit evidence of the abuse suffered such as police reports, court records, medical records, photographs or affidavits to USCIS for consideration.  8 C.F.R. § 204.2(e)(2)(iv).  Thus, if all that SIJ adjudication required was a simple factual determination that a parent has mistreated a child and therefore reunification was not factually feasible, Congress has recognized that USCIS is entirely capable of performing that function.

In this instance, Congress specifically created the SIJ program for juveniles who required the protection of a state juvenile court as the result of certain child welfare related proceedings because of the expertise deployed by state family and juvenile courts in child welfare law to make such determinations. As noted above, state courts make these legal determination that are so momentous in the life of family by engaging in a vigorous and fulsome legal process. Consequently, USCIS has properly and reasonably determined that the state court making the necessary findings for SIJ petitions must be those courts that have competent jurisdiction to determine the viability of family reunification.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 24

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Despite this clear paradigm, Plaintiffs' motion repeatedly refers to state court "SIJS orders." *See* Dkt. 3 at p. 9 ("Every SIJ petition submitted to USCIS must include a predicate state court order containing these (SIJS order)").  Congress, however, did not intend that the state courts would make determinations as to SIJ eligibility.  *See* Appropriations Act, Pub. L. No. 105-119, § 113, 111 Stat. 2440 (1997);  *see also H.S.P. v. J.K.*, 223 N.J. 196, 200 (2016) (holding that the state court is limited to findings regarding abuse, abandonment and neglect "regardless of its views as to the position likely to be taken by the federal agency or whether the minor has met the requirements for SIJ status");  *Guardianship of Penate,* 477 Mass. 268, 273 (2017);  *Budhathoki v. Dep't of Homeland Sec.*, 220 F. Supp. 3d 778, 786 (W.D. Tex. 2016).

Instead, Congress mandated that if an immigrant is the subject of a juvenile court,  *i.e.* a court of *competent jurisdiction,* where such a court reaches certain legal conclusions regarding abuse, abandonment, and neglect, and the viability of reunification of the child with his/her parents, the immigrant may then petition USCIS for SIJ classification. The ultimate decision of whether the petitioner has met their burden of showing eligibility for the benefit falls solely to USCIS.  8 U.S.C. § 1101(a)(27)(J).

That Congress intended that the state courts act within the scope of existing statutory schemes pursuant to their expertise in child welfare law is demonstrated by Congress' use of specific terms of art in defining who meets the qualifications for SIJ classification.  The SIJ statute specifically employs the terms "juvenile courts" and "reunification" and, at an earlier time, referred to "long-term foster care."  *See* 8 U.S.C. § 1101(a)(27)(J)(i).  As noted above, these are terms of art with very specific meaning in child welfare law.  When Congress incorporates terms of art into a statute, "'it presumably knows and adopts the cluster of ideas that were attached to [the] borrowed word in the body of learning from which it was taken and the

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 25

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

meaning its use will convey to the judicial mind unless otherwise instructed.'" *Jesner v. Arab Bank, PLC,* ___ U.S. ___, 138 S. Ct. 1386 (2018) (quoting *Morissette v. United States,* 342 U.S. 246, 263 (1952)).

Similarly, the implementing regulations provide that an SIJ petitioner must submit: (i) "[a] juvenile court order, *issued by a court of competent jurisdiction* . . . showing that the court has found the beneficiary to be dependent upon that court"; (ii) "[a] juvenile court order, *issued by a court of competent jurisdiction* . . . showing that the court has found the beneficiary eligible for long-term foster care"; and (iii) "[e]vidence of a determination made in judicial or administrative proceedings by a . . . juvenile court and authorized by law to make such decisions, that it would not be in the beneficiary's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or of his or her parent or parents." 8 C.F.R. § 204.11(d)(2)(i)-(iii) (emphases added). Under the same regulations, "[e]ligible for long-term foster care means that a *determination has been made by the juvenile court that family reunification is no longer a viable option*." *Id*. § 204.11(a) (emphasis added).

As noted above, the TVPRA eliminated the reference to "long-term foster care" because the trend in child welfare law was to move away from children remaining in long-term foster care to more permanent placements. *See* Adoption and Safe Families Act, Pub. L. No. 105-89, 111 Stat. 2115 (1997) (removing long-term foster care as permanent living- arrangement goal). When Congress removed the term "long-term foster care" in 2008 it did not sever the relationship between the SIJ statute and child welfare law generally. Notably, the TVPRA amendments did not remove immigrants declared dependent, or placed under the custody of an agency or department of a state, from the SIJ definition. Thus, USCIS has properly determined that the elimination of the term "long-term foster care" by Congress did not otherwise affect the

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 26

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

fundamental requirement that the state court have competent jurisdiction to make determinations regarding family reunification.

Accordingly, USCIS correctly denied of Plaintiffs Galvez's and Ramos' SIJ petitions based on their failure to meet their burden of proving that a court of competent jurisdiction made legal findings regarding the viability of their reunification with their parents.  USCIS's interpretation of the SIJ statute and regulations, and its application of the law was not arbitrary, capricious, or contrary to law.

Plaintiffs also erroneously allege that "USCIS new requirement is unlawful because it imposes an eligibility requirement for SIJS that does not exist anywhere in the law."  Dkt. 3 at p. 16.  Specifically, Plaintiffs assert that "neither the SIJS statute, USCIS Policy Manual, nor any regulation indicates a state court must have authority to order reunification of a child and her parents to be recognized as a court with authority to make SIJS findings."  *Id*. at pp. 16-17.

Plaintiffs' position misses the point of SIJ classification.  Children who have required the intervention and protection of a state court due to parental maltreatment may be eligible for SIJ classification when such a court determines that due to their unfitness, a parent will be permanently deprived of their custodial rights, and that it is in the best interests of the child to remain in a placement in the U.S.  *See* Appropriations Act, Pub. L. No. 105-119, at § 113;  6 Pol. Man. part J, ch. 2(A); *see also Prince*, 321 U.S. at 166 ("The custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.").

Yet, according to Plaintiffs, all that is required for SIJ classification is for *any* state court *somehow* involved in the life of a person under the age of 21 to issue documents that merely recite a factual incantation devoid of any legal basis, let alone child welfare law.  Plaintiffs'

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 27

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

cavalier position that state courts can make such critical determinations regarding parents' rights based on facts alone — without applying established law — is antithetical to this country's prevailing policies favoring reunification.  *See* Congressional Findings on 42 U.S.C. § 5101, Note, *available at*

http://uscode.house.gov/view.xhtml?path=/prelim@title42/chapter67&edition=prelim (explaining that the "national policy should strengthen families to prevent child abuse and neglect, provide support for needed services to prevent the unnecessary removal of children from families, and promote the reunification of families where appropriate").

The irrationality of this position is illustrated by Plaintiff Olivera's case.  At age 19, Olivera arrived at the US border without any documentation and was detained pending proceedings on his asylum application.  Sixty-five days later, while Olivera was in immigration detention, and without any sort of proceedings common to child welfare law, a Washington state court issued a boilerplate "SIJS order."  It is hard to fathom how this formulaic order was not issued for the purposes of obtaining a particular type of immigration status, as opposed to a genuine need to protect Olivera from parental maltreatment or abandonment.

Accordingly, USCIS reasonably requires that in order to be considered a valid juvenile court order for the purposes of establishing SIJ eligibility, the state court must have competent jurisdiction under state law to make the required determinations about the care and custody of juveniles and must be "authorized by law to make such decisions" that "reunification is no longer a viable option" as to the individual petitioner appearing before that court.  *See* 8 C.F.R. §§ 204.11(a), (d)(2)(i)–(ii).  In order for a juvenile court to have authority to determine the non-viability of family reunification, the court must have competent jurisdiction to determine both whether a parent could regain custody and to order reunification,  if warranted.  *See id.*

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Though Washington's juvenile courts have the authority to determine the custody of a juvenile offender over the age of 18 in certain instances, the juvenile court still does not have the authority to make a determination that reunification of an adult—as defined under state law—with one or both parents is no longer viable. *Id.*; *see also* RCW § 13.40.300.

That Washington now provides a state court jurisdiction to issue ersatz "SIJ orders" does not override the Federal regulations governing SIJ classification, or require USCIS to defer to these state court orders that endeavor to satisfy federal immigration requirements — especially when the state law is in direct conflict with the stated objective of the federal regulatory scheme. *See Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 886 (2000) (action permitted under state tort law was preempted because it conflicted with Department of Transportation standard); *CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.*, 880 F.3d 1048, 1061 (9th Cir. 2018) (quoting *Wyeth v. Levine*, 555 U.S. 555, 576–77 (2009)) ("'While agencies have no special authority to pronounce on pre-emption absent delegation by Congress, they do have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."'").

Here, state courts are not authorized to make decisions regarding SIJ eligibility, or to administer any portion of the INA. *See* 8 U.S.C. § 1103 (setting forth the powers and duties of the Secretary of Homeland Security). Any Washington state law that purports to confer jurisdiction to issue "SIJ orders" does not render that court's jurisdiction, or any orders issued from it, legally binding on USCIS unless that court had competent jurisdiction to make the required determination the SIJ regulations provide. Under Plaintiffs' theory, if any state court could simply issue an order for the purposes of an SIJ petition, the regulatory text that prescribes

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 29

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

that the order must be "issued by a court of competent jurisdiction" would be superfluous.  *See*

*Conners v. Nat'l Transp. Safety Bd.*, 844 F.3d 1143, 1146 (9th Cir. 2017) ("We avoid

constructions that render a statutory provision superfluous.").

The Fifth Circuit has flatly rejected similar arguments that USCIS must simply defer to

any boilerplate state court determination that it was issuing an order for SIJ purposes.  *See*

*Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018).  In *Budhathoki*, three alien plaintiffs over

the age of 18 filed a "Suit Affecting Parent-Child Relationship" (SAPCR) under the Texas

Family Code.  *Id*. at 506.  Texas law generally defines "child" or "minor" as "a person under 18

years of age who is not and has not been married," but in the child-support context, "child" also

includes persons over 18.  *Id*.  In the SAPCR suits, the state courts awarded plaintiffs child

support and made findings that the applicants were under 21, unmarried, had been abandoned by

their parents, and that returning to their home countries were not in their best interest.  *Id*. at 507.

Plaintiffs filed SIJ petitions with USCIS and submitted their SAPCR orders as support,

but USCIS denied the petitions.  *Id*.  USCIS's denials were based on the ground that, while

Texas courts had the legal authority to order child support for juveniles over 18, plaintiffs'

SAPCR orders did not show that they were issued by a court "having jurisdiction under state law

to make judicial determinations about the care and custody of juveniles."  *Id*. at 509 (*citing* 8

C.F.R. § 204.11(a)'s definition of juvenile court).  In short, USCIS determined that an order

requiring child support was not a "care and custody" determination, and under Texas law

individuals 18 years and older were not juveniles even if they were eligible for child support.  *Id*.

at 509–10.

Plaintiffs brought an APA challenge arguing that a SAPCR order is "a valid custody or

dependency order for SIJ purposes."  *Id*. at 510.  The Fifth Circuit affirmed the district court's

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 30

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

denial of plaintiffs' APA challenge, finding that USCIS had not acted arbitrarily and capriciously. *Id.* at 516. Characterizing the dispute as one "about the discretion, indeed the obligation in USCIS's view, of the federal agency to decide the sufficiency for federal purposes of Texas state court child support orders," the Fifth Circuit held that "[w]hether a state court order submitted to a federal agency for the purpose of gaining a federal benefit made the necessary rulings *very much is a question of federal law*, not state law, *and the agency had authority to examine the orders for that purpose*." *Id.* at 511 (emphasis added); *See also Perez v Cissna*, 914 F.3d 846 (4th Cir. 2019).[4]

Likewise, here, USCIS properly exercised its authority to examine Galvez's and Ramos' state court orders submitted in support of their SIJ petitions to determine whether those courts had competent jurisdiction to make the required rulings over "care and custody." USCIS reasonably concluded that they did not.  Those decisions should not be disturbed by the Court.

### b.   USCIS's Interpretation of Existing Law is not a New Policy that Requires Notice-and-Comment Rulemaking.

This Court should also dismiss Plaintiffs' claim that the purported "policy" violated the APA because it was not "publish[ed]" pursuant to 5 U.S.C. § 552(a)(1)(D).  *See* Dkt. 3 at pp. 22-24.  Section 3 of the APA, as amended by the Freedom of Information Act 5 U.S.C. § 552, requires that "[e]ach agency shall separately state and currently publish in the Federal Register for the guidance of the public—(D) substantive rules of general applicability adopted as

---

[4] Defendants are aware that district courts in California and New York have recently held that the USCIS requirements that state courts must have jurisdiction regarding care and custody and authority to order reunification with parents are contrary to the statute. *See J.L. et al. v. Cissna*, 2019 WL 1230441 (N.D. Cal. Mar. 15, 2019); *RFM, et. al. v. Nielsen,* 2019 WL 1219425 (S.D.N.Y. Mar. 15, 2019).  Defendants respectfully submit, however, that the decisions in those cases were wrongly decided as they failed to take into account the relationship between child welfare law and the definition of SIJ statute. Furthermore, these cases were specific to the facts and presented under the unique state statutory provisions involved.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 31

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

authorized by law, and statements of general policy or interpretations of general applicability

formulated and adopted by the agency . . . ."  5 U.S.C. § 552(a)(1)(D).

Here, Plaintiffs have failed to allege what information should have been published — and

there is no dispute that the Policy Manual is available to the public.  An agency is only required

to "make available for public inspection in an electronic format … statements of policy and

interpretations which have been adopted by the agency and are not published in the Federal

Register" and "administrative staff manuals and instructions to staff that affect a member of the

public," 5 U.S.C. § 552(a)(2)(B) and (C).

Here, USCIS has complied with this requirement since the Policy Manual is accessible to

the public.  In addition, § 552(a)(2)(B) and (C) have no requirement for notice, public comment,

or input before the statements of general policy or interpretations can be implemented.  The only

"general statements of policy" subject to the publication requirement are those that advise "the

public prospectively of the manner in which the agency proposes to exercise a discretionary

power."  *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987).  An agency's

interpretation of existing law and policy, like USCIS's in this case, do not fall within this

category.

     **c.**    **This Court Lacks Jurisdiction to Enjoin the Initiation of Removal Proceedings.**

The REAL ID Act of 2005 is intended to strip federal district courts of jurisdiction to

review foreign nationals' challenges to their removal orders.  Emergency Supplemental

Appropriations Act, Pub. L. No. 109-13, 119 Stat. 231 (2005).  Pursuant to 8 U.S.C. § 1252(g),

no court has jurisdiction over "any cause or claim" that arises from the Attorney General's

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 32

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

decision or action "to commence proceedings, adjudicate cases, or execute removal orders" against foreign nationals.

The Ninth Circuit adheres to this jurisdictional bar. *See de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1138–39 (9th Cir. 2008) (holding that the court was "jurisdictionally barred from hearing" the petitioner's challenge to her removal-order reinstatement); *Kit Yee Kitty Li v. Sessions,* 685 F. App'x 593, 594 (9th Cir. 2017) ("The decision about whether to seek an immigrant's removal or initiate proceedings is not subject to judicial review.") (citing 8 U.S.C. § 1252(g)).

Further, Congress has prohibited courts from granting class-wide injunctive relief barring DHS from initiating and conducting removal proceedings. 8 U.S.C. § 1252(f) ("[r]egardless of the nature of the action or claim or the identity of the party…no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions [in Part IV]." In fact, the Ninth Circuit recently affirmed that § 1252(f) bars jurisdiction over individuals against whom proceedings have *not* been initiated. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (holding that the court had jurisdiction to grant injunctive relief because the petitioners were "individuals against whom proceedings" had been initiated).

Here, the Court must reject Plaintiffs' request that it enjoin Defendants from "initiating removal proceedings against or removing" Plaintiffs Galvez and Ramos, whose SIJ petitions have been denied. *See Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("§ 1252(f) forecloses jurisdiction to grant class-wide injunctive relief to restrain operation of §§ 1221–31 by any court other than the Supreme Court."); *Pimentel v. Holder,* No. 10-6067 (SRC) 2011 WL 1496756, at *2 (D.N.J. Apr. 18, 2011) (explaining § 1252(f)(1) bars courts from exercising jurisdiction over class claims for injunctive relief).

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 33

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

### d.      Any Delays in Adjudicating SIJ Petitions Should be Excused.

To the extent Plaintiffs seek an injunction requiring that USCIS process and adjudicate all SIJ petitions within 180 days, this request should be denied as Plaintiffs are essentially seeking a mass mandamus writ based on an APA claim that the adjudication of their petitions are "unreasonably delayed."  *See* 5 U.S.C. §§ 555(b), 706(1).

Plaintiffs have not shown that the statutory timeframe for adjudication of SIJ petitions is a mandatory, plainly defined duty.  A statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period, and specifies a consequence for failure to comply with the provision.  *Ezell v. United States*, 778 F.3d 762, 765 (9th Cir. 2015).

Here, while section 235(d)(2) of the TVPRA speaks of a 180-day period to adjudicate SIJ petitions, Congress notably refused to include in the statute a consequence for the government's failure to comply with the provision.  Had Congress intended to *mandate* the scheduling of interviews within the 180-day time period, it could have done so by including a consequence for failing to meet the deadline.  *See id.*

Further, in considering whether a delay is unreasonable, courts have consistently held that processing times, even lengthy ones, by themselves, cannot support a finding of unreasonable delay.  *See Hossain v. Gonzalez*, No. 1:07-CV-0255, 2007 WL 3480226 (N.D. Ga., Nov. 14, 2007); *Belegradek v. Gonzalez*, 523 F. Supp. 2d 1364 (N.D. Ga. 2007); *Hoo Loo v. Ridge*, No. Civ. 04-5553, 2007 WL 813000, at *4 (E.D.N.Y. Mar. 14, 2007) (citing *INS v. Miranda*, 459 U.S. 14, 19, (1982)) ("[T]he Supreme Court has held that evidence of the passage of time cannot, standing alone, support a claim of unreasonable delay."); *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 115 (D.D.C. 2005) ("[M]easuring the delay by years alone cannot establish

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 34

unreasonable delay."). Rather, courts must consider (1) the source of the delay, (2) the complexity of the investigation, (3) whether any party participated in delaying the proceeding, (4) the nature and extent of the interests prejudiced by the delay, and (5) whether expediting action on agency activities will have an adverse effect on higher or competing priorities. *Belegradek*, 523 F. Supp. 2d at 1368.

Here, Plaintiffs do not allege any circumstances, aside from the passage of time, as a basis for the alleged unreasonable delay in adjudicating SIJ petitions. Dkt. 3 at p. 25. *See Wang Yi Chao v. Gonzales*, No. C07-1562 PVT, 2007 WL 3022548, at *6 (N.D. Cal. Oct. 15, 2007) (noting that the passage of time alone, is "rarely enough to justify a court's intervention in the administrative process, especially since administrative efficiency is not a subject particularly suited to judicial evaluation") (citation omitted); *See also L.M. v. Johnson*, 150 F. Supp. 3d 202, 214 (E.D.N.Y. 2015) ("While two years of delay is not insubstantial, the court cannot find, as a matter of law, that Plaintiffs have alleged facts that would entitle them to the relief requested under the APA."); *accord Pesantez v. Johnson*, No. 15 Civ. 1155 (BMC), 2015 WL 5475655 (E.D.N.Y. Sept. 17, 2015), at *4 (citing a case in which a five year delay was found not unreasonable); *Hoo Loo*, 2007 WL 813000, at *4 (four year delay not unreasonable where neither party put forward reasons for the delay). Here, there is no basis for an order compelling SIJ petition adjudications based simply on Plaintiffs' claims of unreasonable delay.

Moreover, the Court should consider the reason for the delay. The NBC's responsibilities relating to the processing and adjudication of immigration applications are enormous and wide-sweeping. Valverde Dec. ¶ 10. Besides SIJ petitions, the NBC is responsible both for processing adjustment of status and naturalization applications as well as adjudication of certain other applications. *Id*. ¶ 6. In recent years, the number of SIJ petitions

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 35

increased dramatically. *Id.* ¶ 13.  When combined with the complexity and time-consuming nature of the SIJ adjudication process, the time in which CIS adjudicates these petitions is reasonable. *See Patel v. Rodriguez, et al.,* No. 15-cv-486, 2015 WL 6083199, at *6 (N.D. Ill. Oct 13, 2015) (dismissing plaintiff's unreasonable-delay claim in part because "Plaintiffs have remained on the waiting list because there is a long line of applicants ahead of them"); *L.M.*, 150 F. Supp. 3d at 214 (dismissing an unreasonable delay claim involving an asylum application, finding "[i]t is not unreasonable for delays to occur and a backlog to develop where an agency with limited resources is attempting to adjudicate an ever increasing number of applications … While two years of delay is not insubstantial, the court cannot find, as a matter of law, that Plaintiffs have alleged facts that would entitle them to the relief requested under the APA").

Rather than sit idly by as their caseload grew, Defendants have more than doubled the number of officers assigned to adjudicate SIJ applications from 22 to 48.  *See* Valverde Dec. ¶ 14.; *Saleh v. Ridge*, 367 F. Supp. 2d at 513 (noting with approval that CIS had established framework for processing of cases).

Moreover, judicial intervention in this case "would necessarily involve an intrusion into the defendants' allocation of adjudicatory resources on the whole, and that is something [the] Court is institutionally ill-equipped to do." *Pesantez*, 2015 WL 5475655, at *6;  *see also Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 280 (4th Cir. 2004) (recognizing that CIS "operates in an environment of limited resources, and how it allocates those resources to address the burden of increasing claims is a calculation that courts should be loathe to second guess").

Further, in other immigration mandamus cases, courts have refused to move plaintiffs "to the front of the line," as doing so would only contribute to, rather than mitigate, the backlog of pending applications filed ahead of them. *Ghali v. Radel,* No. 18-cv-0508-AJB-RBB (Or.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 36

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Granting Defs.' Mot. to Dismiss, Mar. 29, 2019) (holding that it would be an improper exercise of judicial power to compel agency action which would simply "produce no net gain" by moving certain individuals to the front of the queue while shifting others back); *Pesantez*, 2015 WL 5475655, at *6 (noting that to judicially expedite plaintiff's case would provide "relief that would further incentivize defendants to prioritize those asylum applicants who have the wherewithal to retain private counsel"); *Kobaivanova v. Hansen*, No. 1:11CV943, 2011 WL 4401687, at *6 n.5 (N.D. Ohio, Sept. 16, 2011) (refusing "to compel the USCIS to adjudicate Plaintiff's application immediately, with the result that Plaintiff's application would be resolved ahead of other applications that may have been pending for longer"); *Mashpee*, 336 F.3d at 1100 (moving plaintiff to "the head of the queue would simply move all others back one space and produce no net gain.").

Here, moving an entire class of SIJ petitions to the front of the line for adjudication would simply cause NBC's remaining workload to fall that much further behind. Accordingly, the Court should decline Plaintiffs' invitation to intervene in the administration of USCIS's immigration tasks.

## II. Plaintiffs Cannot Show that they will Likely Suffer Irreparable Harm Absent a Preliminary Injunction

Next, Plaintiffs must demonstrate, with specificity, an irreparable harm that is likely and immediate in the absence of an injunction. *Winter,* 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Caribbean Marine Servs. Co. v.*

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 37

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

*Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (holding the threat of irreparable harm must be immediate).

Here, Plaintiffs believe that the approval of their SIJ petitions would insulate them from removal proceedings.  This is not the case.  The named plaintiffs are all subject to removal as aliens present without having been admitted or parole per 8 U.S.C. § 1182(a)(6)(A).  Pursuant to 8 U.S.C. § 1255(h), a person classified as a special immigrant juvenile is deemed paroled only for purposes of adjustment of status under 8 U.S.C. § 1255(a).  This is not the same as a parole under 8 U.S.C. § 1182(d)(5), which affords a defense to removal under § 1182(a)(6)(A).

Because Plaintiff Galvez is not currently in removal proceedings, he cannot show irreparable harm.  Although Plaintiff Ramos is detained by ICE and scheduled for an individual hearing, approval of his SIJ petition would have no effect on his eligibility for relief from removal.  Plaintiff Olivera is not detained, but is in removal proceedings, so granting his SIJ petition will have no impact on his eligibility for relief from removal.  Accordingly, Plaintiffs have not shown the requisite irreparable harm sufficient to warrant the issuance of a preliminary injunction by this Court.

## III.        The Public Interest and Balance of Equities Tip in Favor of Defendants

Where the Government is the opposing party, the balance of equities and public interest factors merge.  *Nken v. Holder,* 556 U.S. 418, 435 (2009).  Indeed, "the public interest favors applying federal law correctly."  *Small v. Avanti Health Systems, LLC,* 661 F.3d 1180, 1197 (9th Cir. 2011)); *see also N.D. v. Haw. Dep't of Educ*., 600 F.3d 1104, 1113 (9th Cir. 2010) ("[I]t is obvious that compliance with the law is in the public interest.")."  It is contrary to the public interest and the law to require an executive agency to act in a manner that exceeds its statutory

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 38

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

authority.  After all, Congress's authority to set limits on agency action is an important feature of our system of checks and balances.

Here, USCIS is faithfully applying the SIJ statute and the regulations promulgated in support of that statute.  In carrying out that mission, the agency properly analyzed and denied Plaintiffs' SIJ petitions because they did not contain an order from a state court with competent jurisdiction.  USCIS acted within its statutory authority as the agency tasked with reviewing and adjudicating SIJ petitions.  These reasonable and lawful actions should remain undisturbed by the Court.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for preliminary injunction.

Dated:  April 1, 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*s/ Matt Waldrop*
MATT WALDROP, Georgia Bar #349571
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone:  206-553-7970
Fax:  206-553-4067
Email:  james.waldrop@usdoj.gov

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 39

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers;

It is further certified that on the below date I electronically filed Defendants' Response to Motion for Preliminary Injunction with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant(s):

Aaron Korthuis                Aaron@nwirp.org

Leila Kang                    Leila@nwirp.org

Matt Adams                    Matt@nwirp.org

Meghan E Casey                Meghan@nwirp.org

Olivia Fiona Gibbons          Olivia@nwirp.org

Tim Henry Warden-Hertz        Tim@nwirp.org


DATED this 1st day of April, 2019.

s/ Ivette Moshe
IVETTE MOSHE, Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax:     206-553-4067
E-mail: ivette.moshe2@usdoj.gov

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:19-cv-321-RSL] - 40

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970