UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEOBARDO MORENO GALVEZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH T. CUCCINELLI,[1] *et al.*, <br><br> Defendants. | Case No. C19-0321RSL <br><br> ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

This matter comes before the Court on "Plaintiffs' Motion for Preliminary Injunction." Dkt. # 3. Plaintiffs are young immigrants who have been determined by the courts of the State of Washington to have been abused, neglected, or abandoned by one or both of their parents. They seek classification as Special Immigrant Juveniles ("SIJ") as a pathway to lawful permanent residency in the United States. They contend that defendants - the United States Department of Homeland Security ("DHS"), the United States Citizenship and Immigration Services ("USCIS"), the individuals in charge of DHS and USCIS, and the director of the National Benefits Center - adopted a new policy in 2018 that unlawfully denies them SIJ status. Plaintiffs seek a preliminary injunction enjoining application of that policy.

---

[1] Kenneth T. Cuccinelli became the acting director of the United States Citizenship and Immigration Services on June 10, 2019, replacing Lee Francis Cissna, the originally-named defendant.

ORDER GRANTING PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION - 1

# I. BACKGROUND

## A. Federal Law

Congress created the SIJ status in 1990 as a means of alleviating "hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with possibility of becoming citizens of the United States in the future." 58 Fed. Reg. 42843, 42844 (Aug. 12, 1993). SIJ status is available if:

> (i) [the juvenile immigrant] has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) [it] has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) … the Secretary of Homeland Security consents to the grant of special immigrant juvenile status ....

8 U.S.C. §1101(a)(27)(J). If granted, SIJ status provides a pathway to lawful permanent residency and, ultimately, citizenship. See 8 U.S.C. §§1255, 1427. When an immigrant applies for SIJ status, USCIS must grant or deny the application within 180 days. 8 U.S.C. §1232(d)(2).

When SIJ status was first recognized as a form of immigration relief, the applicant had to be "eligible for long-term foster care," which the agency interpreted as requiring a determination "by the juvenile court that family reunification is no longer a viable option." 8 C.F.R. §204.11(a). Agency regulations clarified that eligible juveniles were aliens "under twenty-one years of age." 8 C.F.R. §204.11(c)(1).

In 2008, Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), amending the SIJ statute in three significant ways. Pub. L. No. 110-457 §235(d), 122 Stat. 5044 (2008). First, the TVPRA expanded the universe of immigrants would could obtain SIJ status. It removed the requirement that applicants be eligible for long-term foster care, broadening the statute to apply instead to juveniles for whom "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law." Id. §235(d)(1)(B) (amending 8 U.S.C. §1101(a)(27)(J)). It also made SIJ status available to juveniles who had been "legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court" in addition to those who had been "declared dependent on a juvenile court." Second, the TVPRA clarified that an applicant's eligibility for SIJ status is dependent on the juvenile's age at the time he or she applied for SIJ status rather than at the time the application was processed. Id. §235(d)(6). Finally, the amendments removed the requirement that the agency "expressly consent" to the state court's dependency order, instead requiring "consent[] to the grant of special immigration juvenile status." Id. §235(d)(1)(B). USCIS exercises its "consent" authority by verifying whether the SIJ petition is bona fide, "meaning that the juvenile court order was not sought primarily to obtain the status of an alien lawfully admitted for permanent residence" but "rather to obtain relief from abuse or neglect." Dkt. #25 at 15.

Following enactment of the TVPRA, a petitioner for SIJ status must be (a) under twenty-one years of age, (b) unmarried, (c) declared dependent on a juvenile court or placed in the custody of a state agency or individual appointed by the court, and (d) the subject of state court findings that (i) reunification with one or both parents is not viable because of abuse,

ORDER GRANTING PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION - 3

abandonment, neglect, or similar basis under state law and (ii) it is not in the juvenile's best interests to be returned to his or her country of origin. Despite the amendments, the implementing regulations continue to reference pre-TVPRA statutory text conditioning SIJ status on eligibility for long-term foster care. See 8 C.F.R. §204.11(a), (c)(4)–(5) (2009) ("SIJ regulation"). Defendants rely heavily on these regulations in support of their rather convoluted argument that a state court is competent to make the factual findings required by the SIJ statute only if it has the power to reunify the juvenile with his or her biological parents.

**B. Washington Law**

Washington juvenile courts have jurisdiction to determine the care and custody of youth up to the age of twenty-one in certain circumstances. Pursuant to RCW 13.34.267, juvenile courts may, with the consent of the youth, maintain jurisdiction over dependency proceedings after the juvenile turns eighteen "to promote permanency and positive outcomes" and counteract the increased risks facing dependent juveniles when they leave the child welfare system. RCW 13.34.267 (Findings - 2013 Wash. Legis. Serv. Ch. 332 (S.S.S.B. 5405) (West)).[2] In the context of this extended foster care program, Washington courts have jurisdiction to make the findings necessary for an immigrant youth to pursue SIJ status. Juvenile courts in Washington may also extend their jurisdiction over youth if, prior to his or her eighteenth birthday, criminal proceedings are pending or an extension is necessary for disposition or sentence to be imposed or enforced. RCW 13.40.300(3). In this context, the state court has authority to commit a juvenile to Washington's Department of Social and Health Services ("DSHS") for placement in a juvenile facility or release to a "responsible adult" at least up until

---

[2] These risks include "limited human capital upon which to build economic security and inability to fully take advantage of secondary and postsecondary educational opportunities, untreated mental or behavioral health problems, involvement in the criminal justice and corrections systems, and early parenthood combined with second-generation child welfare involvement." Id.

the age of twenty-one (and in some cases until the age of twenty-five). RCW 13.40.040(5); RCW 13.40.300. When committing juveniles to DSHS, courts have the power to make the findings necessary for an immigrant youth to pursue SIJ status.

In 2017, the Washington legislature established the Vulnerable Youth Guardianship ("VYG") program specifically for juveniles aged eighteen to twenty-one years old. RCW 13.90.900. The VYG program allows the juvenile to consent to the appointment of a guardian even if he or she was not previously in the child welfare system. The legislature found that "[o]pening court doors for the provision of a vulnerable youth guardianship serves the state's interests in eliminating human trafficking, preventing further victimization of youth, decreasing reliance on public resources, reducing youth homelessness, and offering protection for youth who may otherwise be targets of traffickers." Id. In creating the VYG program, the legislature intended to fix a disconnect between state and federal law. RCW 13.90.901(1)(d). Under federal immigration law, SIJ status is available to youth until the age of twenty-one. 8 U.S.C. §1101(b)(1). In Washington, however, youth who were not already under the jurisdiction of the juvenile courts had limited opportunities to request that the state court make the findings necessary to apply for SIJ status. As of 2017, Washington extended juvenile court jurisdiction to cover "judicial determinations regarding the custody and care of youth" between the ages of eighteen and twenty-one and to make findings necessary for a juvenile in that age group to seek SIJ status. RCW 13.90.901(1)(a).

**C. Plaintiffs**

Plaintiff Leobardo Moreno Galvez came to the United States on his own when he turned 14 and has lived with relatives and friends during the past six years. In 2016, Moreno Galvez was arrested for Minor in Possession at seventeen years of age. The Skagit County Superior

ORDER GRANTING PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION - 5

Court adjudicating the offense extended its jurisdiction past Moreno Galvez' eighteenth birthday. When he was eighteen years old, the Superior Court placed him in state custody and found that (a) it had jurisdiction under state law to make a judicial determination about his care and custody, (b) Moreno Galvez should be legally committed to or placed in the custody of a state agency as of October 20, 2016, (c) reunification with one or both parents was not viable because they had sent him away years ago and "failed to provide for his basic needs including food, shelter, clothing and education," and (d) it would not be in Moreno Galvez' best interests to return to Mexico. Dkt. #4-4 at 2-3. Six weeks later, Moreno Galvez submitted a Form I-360 Petition for Special Immigrant Juvenile Status to USCIS. On December 20, 2018, USCIS denied the petition, stating that "the evidence you submitted does not establish that the state court had jurisdiction under state law to make a legal conclusion about returning you to your parent(s)' custody." Dkt. #4-7 at 3. The denial notified Moreno Galvez that he was not lawfully present in the United States and that, if he did not depart within thirty-three days of the letter, USCIS may commence removal proceedings against him.

Plaintiff Jose Luis Vicente Ramos entered the United States as an unaccompanied minor in 2016, when he was seventeen years old. He eventually went to live with a cousin in Vancouver, Washington. In February 2018, Vicente Ramos was detained by USCIS. Utilizing the VYG program, Vicente Ramos consented to the appointment of his cousin as his guardian and requested that the Pierce County Superior Court make the necessary SIJ findings. It did so and, ten days later, Vicente Ramos submitted a Form I-360 Petition for Special Immigrant Juvenile Status to USCIS. The petition was denied on February 5, 2019, on the ground that Vicente Ramos had failed to show that the state court had jurisdiction "to make a legal conclusion about returning you to your parent(s)' custody." Dkt. #4-10 at 3. Vicente Ramos

was ordered removed in May 2019. He remains detained in Northwest Detention Center while an administrative appeal is pending.

Plaintiff Angel de Jesus Muñoz Olivera and his younger brother presented themselves at the border on August 30, 2017, intending to seek help from a relative living in Kennewick, Washington. The brothers were separated, however, and Muñoz Olivera was detained by USCIS for over three months. Utilizing the VYG program, Muñoz Olivera consented to the appointment of the Kennewick relative as his guardian and obtained the factual findings necessary to support an SIJ petition from the Pierce County Juvenile Court. On November 15, 2017, Muñoz Olivera submitted his Form I-360 Petition for Special Immigrant Juvenile Status to USCIS. The agency has not yet adjudicated the application.

**D. USCIS Change in Policy Regarding Petitions for SIJ Status**

In the summer of 2017, USCIS began holding SIJ applications for individuals between the ages of 18 and 21. USCIS had centralized adjudication of SIJ applications in November 2016 and was awaiting legal guidance from the USCIS Office of Chief Counsel ("OCC") regarding a new policy that would affect SIJ adjudications for that age group. The new guidance was issued in February 2018 and specifies that, in order for a state court to be one of "competent jurisdiction" to make the necessary SIJ findings, the court must have the power not only to determine whether reunification with a parent is appropriate or viable, but also "to order reunification, if warranted." Dkt. #4-2 at 2. A USCIS spokesperson acknowledged the practical effect of this new policy in April 2018:

> Since most courts cannot place a child back in the custody of their parent once the child reaches the age of majority (as determined by state [sic] and in most instances that is age 18), those state courts do not have power and authority to make the reunification finding for purposes of SIJ eligibility.

Dkt. #4-4 at 10.

Defendant National Benefits Center now handles all SIJ petitions. In fiscal year 2018, it received approximately 18,000 SIJ petitions, making up less than .1% of its entire caseload. The number of SIJ petitions tripled between 2014 and 2018. As of September 24, 2018, the National Benefits Center had a backlog of 32,518 SIJ petitions, with 23,589 of them pending for more than 180 days.

## II. DISCUSSION

### A. Preliminary Injunction Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). If the "'balance of hardships tips sharply in plaintiff's favor,' and the other two Winter factors are satisfied, a plaintiff only needs to show "serious questions going to the merits" in the Ninth Circuit. Alliance for the Wild Rockies v. Pena, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013)).

### B. Likelihood of Success on the Merits

The Administrative Procedure Act ("APA") mandates that district courts set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). Plaintiffs argue that USCIS's February 2018 change in policy violates the APA because it is inconsistent with the governing statute, was imposed without explanation, and was issued without the required notice and comment period. They also argue that USCIS' delayed consideration of SIJ petitions past 180 days is unlawful. USCIS argues that its interpretation of the governing statute is reasonable given the purposes

for which the SIJ program was created and that adequate notice of the policy change was provided because its Policy Manual is available to the public and the new guidance merely interprets existing law and is therefore not subject to the requirements for notice, public comment, or input before implementation. In addition, USCIS argues that any delays in processing SIJ petitions should be excused and that the Court lacks jurisdiction to interfere with its initiation or conduct of removal proceedings.

**1. In Accordance with Federal Law**

The primary issue in this case is whether the new policy requiring that a state court have the power to order reunification with a parent before it will be deemed competent to make factual findings regarding the viability of reunification and/or the best interests of the juvenile violates the SIJ statute or is a reasonable interpretation thereof. The Court finds that plaintiffs are likely to succeed on the merits of their claim that the new policy is "not in accordance with law." 5 U.S.C. §706(2)(A). There is no textual authority for the new requirement in the statute. The statute does not require that reunification be possible[3] or otherwise define state court competency by whether the juvenile has reached the "age of majority." Congress expressly made SIJ status available to juveniles up to the age of twenty-one and, as a USCIS spokesperson acknowledged shortly after the new policy went into effect, the change in policy generally excludes from protection any juvenile over the age of eighteen. Dkt. #4-4 at 10. The statute requires only that the youth be declared dependent on a juvenile court or placed in the

---

[3] The state courts are tasked with determining, among other things, whether "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J)(i). USCIS does not explain, and the Court cannot reasonably discern, why the state court would have to have the capacity to compel reunification in order to determine whether reunification is a viable option. The SIJ statute is not concerned with actual custody orders. If the state court were to find that reunification is viable, SIJ status is simply unavailable: the statute does not require the juvenile court to actually make a particular placement.

custody of a state agency or an individual appointed by the juvenile court. 8 U.S.C. §1101(a)(27)(J). The implementing regulations define "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. §204.11(a). As discussed above, Washington law grants the courts of the state jurisdiction to make judicial determinations regarding the custody and care of youth between the ages of eighteen and twenty-one in certain circumstances. See RCW 13.34.267; RCW 13.40.040(5); RCW 13.40.300; RCW 13.90.901(1)(a). The Washington courts that placed Moreno Galvez in state custody and appointed guardians for Vicente Ramos and Muñoz Olivera had jurisdiction under state law to determine their care and custody[4] and, pursuant to the plain language of the governing statute and regulations, had jurisdiction to make the required SIJ findings.

USCIS argues, however, that in order to give effect to Congress' intent when creating the SIJ program, it must be permitted to impose additional requirements or limitations so that the program is not used for the purpose of obtaining immigration benefits, as opposed to protecting a child from abuse or neglect. Using Muñoz Olivera's case as an example, USCIS argues that the "capacity to reunify" criteria is reasonable and necessary because it allows the agency to reject petitions, such as Muñoz Olivera's, that are based on a formulaic state court order issued while Muñoz Olivera was detained at the border and without any sort of proceeding or hearing common in child welfare law. Dkt. #25 at 28. USCIS also suggests, without citation to authority, that Congress intended that state courts act only within the scope of the child welfare laws that existed at some unspecified point in the past when making SIJ

---

[4] This fact distinguishes this case from Budhathoki v. Nielsen, 898 F.3d 504 (5th Cir. 2018), where the state court had jurisdiction to make a monetary award, not to determine the juvenile's care and custody.

determinations, and that the new wave of state laws that allow eighteen to twenty-one year olds to request the appointment of a guardian do not create courts of "competent jurisdiction" for purposes of the SIJ statute because they are not steeped in and based on traditional child welfare law. Dkt. #25 at 25. Both arguments appear to be based on a concern that new laws and/or lax procedures will encourage abuses of the SIJ benefit by recent immigrants seeking lawful permanent residence status as opposed to child protective services.

The Court assumes, for purposes of this motion, that the agency has a legitimate concern regarding potential abuses of the SIJ program. Nevertheless, its choice of remedy – to impose an additional requirement not contemplated by the statute and which excludes from the program an age group that Congress intended to benefit – is not only unreasonable, but unnecessary. The statute and existing USCIS policies address the agency's stated concern in two ways. First, pursuant to the statute, the state court must make an explicit finding that the juvenile should not be returned to one or both parents because of abuse, abandonment, neglect, or a similar ground that is disqualifying under state law. If the state court has reason to believe that an immigrant is attempting to game the system by making false claims of endangerment, the predicate finding should not be made. The fact of endangerment and the best interests of the child are issues within the traditional expertise of the state courts, and the SIJ statute, not surprisingly, assigns this fact-finding task to the state court. 8 U.S.C. §1101(a)(27)(J)(i)-(ii). Second, the statute gives USCIS oversight power, requiring it to "consent" to the grant of SIJ status. 8 U.S.C. §1101(a)(27)(J)(iii). Pursuant to agency policies, the purpose of this consent is to verify whether the SIJ petition is bona fide, meaning that the juvenile court order was not sought primarily to obtain the status of an alien lawfully admitted for permanent residence, but rather to obtain relief from abuse or neglect. 6 Pol. Man. part J, ch. 2(D)(5). If USCIS

concludes that a petition was improperly motivated, it has discretion to withhold consent and deny SIJ status.

USCIS did not exercise its discretion under the "consent" provision as to any of the named plaintiffs, however. Instead, it ignored state law – which clearly granted to the state courts jurisdiction to make custody and care determinations for named plaintiffs - and the state courts' factual determinations, declaring those courts incompetent solely because they lacked the authority to issue a certain type of custody order, namely reunification with a parent. The requirement is inconsistent with the governing statute and unnecessary to safeguard the program. The Court finds, as have the three other courts that have analyzed the issue, that the imposition of the "reunification" requirement is inconsistent with the SIJ statute's plain language, exceeded the agency's authority, and is unreasonable. W.A.O. v. Cuccinelli, No. C19-11696-MCA-MAH (D.N.J. July 3, 2019); R.F.M. v. Nielsen, 365 F. Supp.3d 350, 377-78 (S.D.N.Y. 2019); J.L. v. Cissna, 341 F. Supp.3d 1048, 1059 (N.D. Cal. 2018). Plaintiffs' have established that they are likely to succeed on their claim that the February 2018 policy is not in accordance with federal law.

**2. Reasoned Explanation**

Plaintiffs argue that USCIS's new policy is arbitrary and capricious because the agency failed to provide an adequate basis or reasoned explanation for its new requirement. Dkt. #3 at 20-22. USCIS has not responded to this argument, and the record reveals no evidence that the agency "examine[d] the relevant data" or "articulate[d] a satisfactory explanation for its action." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The Court finds that plaintiffs have shown a likelihood of success on the merits with regards to their claim that USCIS's new policy is arbitrary and capricious because the agency failed to

provide a reasoned explanation.

### 3. Notice and Comment

Plaintiffs contend that USCIS failed to follow the APA's procedural requirements, regardless of whether the imposition of a "capability to reunify" requirement is considered a new rule or simply an interpretation of an existing rule. USCIS acknowledges that an agency's policy statements must be published if they advise "the public prospectively of the manner in which the agency proposes to exercise a discretionary power." Dkt. #25 at 32 (quoting Mada-Luna v. Fitzpatrick, 813 F.2d 1006, 1013 (9th Cir. 1987)). Because the new policy creates a binding norm and compels agency adjudicators to withhold consent to SIJ status whenever the state court lacked the power to order reunification, it has substantive effect and is subject to the notice and comment rulemaking process under 5 U.S.C. §553. See Colwell v. Dep't of Health and Human Servs., 558 F.3d 1112, 1124 (9th Cir. 2009). Plaintiffs have shown a likelihood of success on the merits of their procedural claim.

### 4. Unreasonable Delay

USCIS has failed to adjudicate plaintiffs' SIJ petitions within the 180-day statutory deadline imposed by Congress. The APA provides an avenue through which to compel timely agency action: it grants courts the power to compel "agency action unlawfully withheld or unreasonably delayed." Gonzalez Rosario v. USCIS, 365 F. Supp.3d 1156, 1160 (W.D .Wash. 2018) (quoting 5 U.S.C. §706(1)). When determining whether an agency has acted within "a reasonable time" for purposes of 5 U.S.C. §555(b), the timeline established by Congress serves as the frame of reference. In re Pesticide Action Network N. Am., Nat. Res. Def. Council, Inc., 798 F.3d 809, 813 (9th Cir. 2015) (applying the six-factor test articulated in Telecomm. Research and Action Ctr. v. F.C.C., 750 F.2d 70 (D.C.Cir.1984), the second of which

recognizes that congressionally established deadlines supply content for the reasonableness determination).

Contrary to defendants' argument, the fact that the SIJ statute does not include a specific remedy for delayed adjudication of the SIJ petitions does not eviscerate the statutory deadline or the availability of relief under the APA.

Congress prioritized the adjudication of SIJ petitions, requiring that requests for special immigrant status filed by vulnerable youth be adjudicated within 180 days. Moreno Galvez had to wait more than two years for his petition to be adjudicated. USCIS took almost eight months to adjudicate Vicente Ramos' petition. Muñoz Olivera's petition remains pending over a year and a half after it was filed. At least two of the three named plaintiffs are therefore likely to succeed on the merits of their unreasonable delay claim, and, in the absence of evidence that Vicente Ramos' petition raised novel or complex issues which caused the delay in its adjudication, he has raised serious questions going to the merits of his delay claim.

**B. Irreparable Harm**

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." Ariz. Dream Act Coalition v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014). Here, plaintiffs have demonstrated that they will suffer irreparable harm absent a preliminary injunction. If USCIS is permitted to continue to rely on its interpretation of the SIJ statute and, in Muñoz Olivera's case, to delay adjudication indefinitely, plaintiffs will suffer irreparable harm by losing eligibility for SIJ status and the benefits that go along with that status. For example, SIJ designees are exempt from a variety of grounds for removal, such as "being found to be a 'public charge,' lacking a 'valid entry document,' or having 'misrepresented a material fact'—while seeking admission into the United States." Osorio-

Martinez v. Attorney General U.S.A., 893 F.3d 153, 171 (3d Cir. 2018) (citing 8 U.S.C. §1182(a) and §1255(h)(2)(A)). SIJ designees are also granted access to federally-funded education and preferential status for employment-based green cards. Id. (citing 8 U.S.C. §1232(d)(4)(A) and §1153(b)). In addition, SIJ status allows the juvenile to submit an application to adjust his or her immigration status to lawful, which was the reason Congress created the SIJ classification in the first place. These benefits provide relief from or make less likely removal from the United States and the loss of the relationships and support systems these vulnerable youth have cobbled together in this country: the loss of these benefits constitutes irreparable harm.

Vicente Ramos' continuing civil detention while his administrative appeal of USCIS denial of his SIJ petition also constitutes irreparable harm.

Finally, plaintiffs describe feelings of stress, devastation, fear, and depression arising from the allegedly unlawful denial -- or anticipated denial -- of their SIJ petitions and the increased possibility that they will be placed in removal proceedings and/or deported. Such emotional and psychological harms will not be remedied by an award of damages and are, therefore, irreparable. Chalk v. U.S. Dist. Ct., 840 F.2d 701, 709 (9th Cir. 1988) (finding that "emotional stress, depression, and reduced sense of well-being" support a finding of irreparable harm).

**C. Balance of Hardships and the Public Interest**

Because plaintiffs are likely to succeed on the merits of their claims that the government's new policy is inconsistent with federal law, arbitrary and capricious, and procedurally defective, the balance of hardships and public interest factors weigh in favor of a preliminary injunction. Ariz. Dream Act Coalition, 757 F.3d at 1069. See also Valle del Sol,

Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("it is clear that it would not be equitable or in the public's interest to allow the state ... to violate the requirements of federal law, especially when there are no adequate remedies available.").

**D. Scope of Relief**

All four Winter factors favor the issuance of a preliminary injunction in this case. Defendants argue, however, that because the Court lacks jurisdiction over any cause of action or claim arising from USCIS' decision or action "to commence proceedings, adjudicate cases, or execute removal orders," the scope of relief afforded in this case cannot include an injunction against the initiation of removal proceedings against plaintiffs. Dkt. #25 at 32-33. Plaintiffs' claims arise from the improper denial of the SIJ petitions, a consequence of which is the initiation or threatened initiation of removal proceedings. In order to retain jurisdiction over the parties and ensure that relief can be afforded if plaintiffs are able to establish that the denials were unlawful, the Court has the power to temporarily enjoin removals that would occur only because of the government's unlawful action and that would effectively bar plaintiffs' ability to pursue SIJ status.

### III. CONCLUSION

Plaintiffs' motion for preliminary injunction is GRANTED. In light of the Court's order certifying a class, it is hereby ORDERED that defendants and their officers, agents, employees, representatives, and all persons acting in concert or participating with them are ENJOINED AND RESTRAINED

● from denying Special Immigrant Juvenile Status pursuant to 8 U.S.C. §1101(a)(27)(J) on the ground that a Washington state court does not have jurisdiction or authority to "reunify" an immigrant with his or her parents; and

- from initiating removal proceedings against or removing any Special Immigrant Juvenile Status petitioner whose Special Immigrant Juvenile Status petition has been denied on the ground that the Washington state court did not have jurisdiction or authority to "reunify" an immigrant with his or her parents.

USCIS shall, within thirty days of the date of this Order, reopen and readjudicate any Special Immigrant Juvenile Status petition that was denied on the grounds that the Washington state court did not have jurisdiction or authority to "reunify" an immigrant with his or her parents. USCIS is also ORDERED to adjudicate all outstanding Special Immigrant Juvenile Status petitions based on a Washington state court order within thirty days of the date of this Order if more than 150 days have already passed since the petition was filed. All other Special Immigrant Juvenile Status petitions based on Washington state court orders shall be adjudicated within the 180-day period set forth in the statute in the absence of an affirmative showing that the petition raises novel or complex issues which cannot be resolved within the allotted time.

USCIS did not request a bond, and the Court finds that there is no likelihood of harm justifying a bond in the circumstances of this case.

Dated this 17th day of July, 2019.

*[signature]*
ROBERT S. LASNIK
UNITED STATES DISTRICT JUDGE