1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

LEOBARDO MORENO GALVEZ, *et al.*,

Case No. C19-0321RSL

Plaintiffs,

11

ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND PERMANENT INJUNCTION

v.

12

13

KENNETH T. CUCCINELLI,[1] *et al.*,

14

Defendants.

15

16

17

18

        This matter comes before the Court on the parties' cross-motions for summary

judgment. Dkt. #64 and #66. The named plaintiffs represent a class of young immigrants who

were determined by the courts of the State of Washington to have been abused, neglected, or

abandoned by one or both of their parents. They sought classification as Special Immigrant

Juveniles ("SIJ") as a pathway to lawful permanent residency in the United States. On July 17,

2019, the Court issued a preliminary injunction enjoining defendants - the United States

Department of Homeland Security ("DHS"), the United States Citizenship and Immigration

Services ("USCIS"), the individuals in charge of DHS and USCIS, and the director of the

National Benefits Center – from enforcing a 2018 change in policy that, plaintiffs argued,

19

20

21

22

23

24

25

26

27

---

[1] Kenneth T. Cuccinelli became the acting director of the United States Citizenship and Immigration Services on June 10, 2019, replacing Lee Francis Cissna, the originally-named defendant.

28

unlawfully denied them SIJ status. The Court also required USCIS to promptly adjudicate or readjudicate all class members' SIJ petitions. Plaintiffs now seek summary judgment on their various challenges to USCIS' actions and the entry of an injunction permanently enjoining the agency from unreasonably delaying the adjudication of SIJ petitions in the State of Washington. Defendants seek judgment in their favor, arguing that the matter is moot and/or that the 2018 policy was lawful and lawfully implemented. Defendants also argue that they are not obligated to comply with the statutory deadline for adjudicating SIJ petitions and that plaintiffs have failed to show that a permanent injunction is warranted.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

## I. BACKGROUND

Congress created the SIJ status in 1990 as a means of alleviating "hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with possibility of becoming citizens of the United States in the future." 58 Fed. Reg. 42843, 42844 (Aug. 12, 1993). SIJ status is available if:

(i) [the juvenile immigrant] has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) [it] has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) … the Secretary of Homeland Security consents to the grant of special immigrant juvenile status ....

---

[2] This matter can be determined on the papers submitted. Plaintiffs' request for oral argument is DENIED.

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND
PERMANENT INJUNCTION - 2

8 U.S.C. §1101(a)(27)(J). If granted, SIJ status provides a pathway to lawful permanent residency and, ultimately, citizenship. *See* 8 U.S.C. §§1255, 1427. When an immigrant applies for SIJ status, USCIS must grant or deny the application within 180 days. 8 U.S.C. §1232(d)(2).

When SIJ status was first recognized as a form of immigration relief, the applicant had to be "eligible for long-term foster care," which the agency interpreted as requiring a determination "by the juvenile court that family reunification is no longer a viable option." 8 C.F.R. §204.11(a). Agency regulations clarified that eligible juveniles were aliens "under twenty-one years of age." 8 C.F.R. §204.11(c)(1).

In 2008, Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), amending the SIJ statute in three significant ways. Pub. L. No. 110-457 §235(d), 122 Stat. 5044 (2008). First, the TVPRA expanded the universe of immigrants would could obtain SIJ status. It removed the requirement that applicants be eligible for long-term foster care, broadening the statute to apply instead to juveniles for whom "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law." *Id.* §235(d)(1)(B) (amending 8 U.S.C. §1101(a)(27)(J)). It also made SIJ status available to juveniles who had been "legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court" in addition to those who had been "declared dependent on a juvenile court." Second, the TVPRA clarified that an applicant's eligibility for SIJ status is dependent on the juvenile's age at the time he or she applied for SIJ status rather than at the time the application was processed. *Id.* §235(d)(6). Finally, the amendments removed the requirement that the agency "expressly consent" to the state court's

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

dependency order, instead requiring "consent[] to the grant of special immigration juvenile status." *Id.* §235(d)(1)(B). USCIS exercises its "consent" authority by verifying whether the SIJ petition is bona fide, "meaning that the juvenile court order was not sought primarily to obtain the status of an alien lawfully admitted for permanent residence" but "rather to obtain relief from abuse or neglect." Dkt. #25 at 15.

Following enactment of the TVPRA, a petitioner for SIJ status must be (a) under twenty-one years of age, (b) unmarried, (c) declared dependent on a juvenile court or placed in the custody of a state agency or individual appointed by the court, and (d) the subject of state court findings that (i) reunification with one or both parents is not viable because of abuse, abandonment, neglect, or similar basis under state law and (ii) it is not in the juvenile's best interests to be returned to his or her country of origin. USCIS' review of SIJ petitions was generally guided by the statutory elements.

In the summer of 2017, however, USCIS began holding SIJ applications for individuals between the ages of 18 and 21. USCIS had centralized adjudication of SIJ applications in November 2016 and was awaiting legal guidance from the USCIS Office of Chief Counsel ("OCC") regarding a new policy that would affect SIJ adjudications for that age group. The new guidance was issued in February 2018 and specifies that, in order for a state court to be one of "competent jurisdiction" to make the necessary SIJ findings, the court must have the power not only to determine whether reunification with a parent is appropriate or viable, but also "to order reunification, if warranted." Dkt. #4-2 at 2. A USCIS spokesperson acknowledged the practical effect of this new policy in April 2018:

> Since most courts cannot place a child back in the custody of their parent once the child reaches the age of majority (as determined by state [sic] and in most instances that is age 18), those state courts do not have power and authority to make the reunification finding for purposes of SIJ eligibility.

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND
PERMANENT INJUNCTION - 4

Dkt. #4-4 at 10.

In a subsection entitled "Expeditious adjudication," Congress mandated that "[a]ll applications for special immigrant status under section 101(a)(27)(J) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(27)(J)) shall be adjudicated by the Secretary of Homeland Security not later than 180 days after the date on which the application is filed." 8 U.S.C. §1232(d)(2). As of September 24, 2018, the National Benefits Center, which handles all SIJ petitions, had a backlog of 32,518 SIJ petitions, with 23,589 of them pending for more than 180 days. Plaintiff Moreno Galvez had to wait more than two years for his petition to be adjudicated. USCIS took almost eight months to adjudicate plaintiff Vicente Ramos' petition. Plaintiff Muñoz Olivera's petition took over a year and a half after to be adjudicated.

After reviewing Washington law and the factual circumstances surrounding the SIJ petitions of the three named plaintiffs, the Court found (i) that the imposition of the "reunification" requirement was inconsistent with the SIJ statute's plain language, exceeded the agency's authority, and was unreasonable, (ii) that plaintiffs had shown a likelihood of success on the merits regarding their claims that USCIS's new policy was arbitrary and capricious because the agency failed to provide a reasoned explanation, (iii) that the agency's new policy created a binding norm and compelled agency adjudicators to withhold consent to SIJ status in certain circumstances and was therefore subject to the notice and comment rulemaking process required by the Administrative Procedure Act ("APA"), and (iv) that USCIS had failed to adjudicate plaintiffs' SIJ petitions within the 180-day statutory deadline imposed by Congress and plaintiffs were likely to succeed on their unreasonable delay claim. The Court further found that plaintiffs would suffer irreparable harm absent an injunction preventing USCIS from enforcing the "reunification" requirement and delaying adjudication of SIJ petitions. The harms

identified included emotional and psychological harms, the loss of eligibility for SIJ status, and/or the delay in obtaining the benefits that go along with that status (such as exemption from a variety of grounds for removal, release from USCIS custody, access to federally-funded education and preferential status for employment-based green cards, the ability to submit an application to adjust his or her immigration status to lawful). Because plaintiffs were likely to succeed on the merits of their claims that the government's new policy was inconsistent with federal law, arbitrary and capricious, and procedurally defective, the Court also concluded that the balance of hardships and public interest factors weighed in favor of a preliminary injunction.

## II.  EVENTS SINCE ISSUANCE OF PRELIMINARY INJUNCTION

Following entry of the preliminary injunction order in this case, USCIS adjudicated or readjudicated the SIJ petitions of the three named plaintiffs and made efforts to identify absent class members. Although the agency believed it had adjudicated all class members' petitions as of March 31, 2020, it overlooked a petitioner who had appealed the denial of his petition and been deported while his appeal was pending. That petition was approved the day before USCIS filed the reply memorandum that is currently before the Court. At this point, plaintiffs have not identified, and USCIS is not aware of, any other outstanding class member petitions.

A few months after the preliminary injunction orders in this and three other cases pending around the country were entered, USCIS issued and adopted an Administrative Appeals Office ("AAO") decision clarifying that "USCIS does not require that the juvenile court had jurisdiction to place the juvenile in the custody of the unfit parent(s) in order to make a qualifying determination regarding the viability of parental reunification." *Matter of D-Y-S-C*, Adopted Decision 2019-02 at 6, n.4 (AAO Oct. 11, 2019), Dkt. #68-3 at 8. USCIS subsequently

issued a press release announcing that it "was no longer requiring evidence that a state court had the authority to place a petitioner in the custody of an unfit parent." Dkt. #68-4 at 2. It also re-opened the public comment period for a proposed rule that was initially published in September 2011. 84 Fed. Reg. 55250, 55251 (Oct. 16, 2019); 76 Fed. Reg. 54978 (Sept. 6, 2011). The proposed rule does not address the reunification requirement (which was not imposed until years after the proposed rule was initially published), but it does set forth the agency's interpretation of and intent regarding the expeditious adjudication provision included in the TVPRA when it was enacted in 2008:

> USCIS intends to adhere to the 180-day benchmark, taking into account general USCIS regulations pertaining to receipting of petitions, evidence and processing, and assuming the completeness of the petition and supporting evidence. Proposed 8 CFR 204.11(h); 8 CFR 103.2. The 180-day timeframe begins when the SIJ petition is receipted, as reflected in the receipt notice sent to the SIJ petitioner. 8 CFR 103.2(a)(7). If USCIS sends a request for initial evidence, the 180-day timeframe will start over from the date of receipt of the required initial evidence. 8 CFR 103.2(b)(10)(i). If USCIS sends a request for additional evidence, the 180-day timeframe will stop as of the date USCIS sends the request, and will resume once USCIS receives a response from the SIJ petitioner. 8 CFR 103.2(b)(10)(i). USCIS will not count delay attributable to the petitioner or his or her representative within the 180-day timeframe.

76 Fed. Reg. at 54983.

## DISCUSSION

### A. Mootness

USCIS argues that plaintiffs' claims regarding the reunification requirement are moot[3] because the October 2019 AAO decision and related revisions to the agency's Policy Manual so altered agency action that the challenged conduct cannot reasonably be expected to start up again. Dkt. #66 at 12. Federal courts lack jurisdiction to consider moot claims. *Church of*

---

[3] USCIS does not argue that plaintiffs' claims regarding unlawful delay are moot.

*Scientology v. U.S.*, 506 U.S. 9, 12 313 (1992). "A case becomes moot -- and therefore no longer a 'Case' or 'Controversy' for purposes of Article III -- 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, __ U.S. __, 133 S. Ct. 721, 726 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "In general, when an administrative agency has performed the action sought by a plaintiff in litigation, a federal court 'lacks the ability to grant effective relief,' and the claim is moot." *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Pub. Util. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996)).

Courts have long recognized, however, a "voluntary cessation" exception to mootness. "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000*, __ U.S. __, 132 S. Ct. 2277, 2287 (2012). Thus, the mere cessation of illegal activity in response to pending litigation will not moot a case unless the party alleging mootness can show that the "allegedly wrongful behavior could not reasonably be expected to recur." *Rosemere Neighborhood Ass'n*, 581 F.3d at 1173 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The party asserting mootness bears a "heavy burden" in seeking dismissal and must show that it is "absolutely clear" that the allegedly wrongful behavior will not recur if the lawsuit is dismissed. *Laidlaw*, 528 U.S. at 189.

While we presume that a government entity is acting in good faith when it changes its policy, the presumption is rebuttable, and the government must still bear the burden of showing that the challenged conduct cannot reasonably be expected to start up again. *See Bell v. City of Boise*, 709 F.3d 890, 898–99 & n. 13 (9th Cir. 2013); *Am. Cargo Transp., Inc. v. U.S.*, 625 F.3d

1176, 1180 (9th Cir. 2010); *White v. Lee*, 227 F.3d 1214, 1243–44 (9th Cir. 2000). If the

government remains "unconstrained should it later desire to reenact the [offending] provision,"

agency action "does not necessarily deprive a federal court of its power to determine the

legality of the practice." *Coral Constr. Co. v. King County*, 941 F.2d 910, 928 (9th Cir. 1991);

*Bell*, 709 F.3d at 899 (internal quotation marks omitted). A policy change that is not reflected

in statutory changes or even in changes in ordinances or regulations will not necessarily render

a case moot. *See Bell*, 709 F.3d at 899-901. When determining whether a voluntary cessation of

this type has rendered a case moot, courts are more likely to side with the defendant where:

> (1) the policy change is evidenced by language that is broad in scope and
> unequivocal in tone; (2) the policy change fully addresses all of the
> objectionable measures that the Government officials took against the plaintiffs
> in the case; (3) the case in question was the catalyst for the agency's adoption of
> the new policy; (4) the policy has been in place for a long time when we
> consider mootness; and (5) since the policy's implementation the agency's
> officials have not engaged in conduct similar to that challenged by the plaintiff.
> On the other hand, we are less inclined to find mootness where the new policy
> could be easily abandoned or altered in the future.

*Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014) (internal citations, quotation marks,

and alterations omitted).

USCIS has not met the "heavy burden" of showing that "the challenged conduct cannot

reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189; *White*, 227 F.3d at 1244. The AAO

decision on which USCIS primarily relies for its mootness argument disavowed the

reunification requirement in a footnote and was "adopted" by the agency. Adopted decisions of

the AAO "provide policy guidance to USCIS employees in making determinations on

applications and petitions for immigration benefits." https://www.uscis.gov/administrative-

appeals/aao-practice-manual/chapter-3-appeals. USCIS had the option to designate the AAO

decision as precedential, which would have required Department of Homeland Security

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND
PERMANENT INJUNCTION - 9

employees to follow the policy set forth in *Matter of D-Y-S-C* and would have provided

guidance to the public regarding the agency's view of the proper interpretation and

administration of immigration law and policy. *Id.* It did not utilize this option, however. To the

contrary, in announcing the guidance as set forth in *Matter of D-Y-S-C*, USCIS expressly

disclaimed that it intended to create any "right or benefit, substantive or procedural,

enforceable at law or by any individual or other party in removal proceedings, in litigation with

the United States, or in any other form or manner." Dkt. # 68-3 at 2. Although USCIS

incorporated the policy revision into its Policy Manual, it explained that "the instruction to not

require evidence that a state court had jurisdiction to place the juvenile in the custody of the

unfit parent(s) in order to make a qualifying determination regarding the viability of parental

reunification was a policy change in response to the resource strain of ongoing litigation." Dkt.

# 68-6 at 12. Thus, while the footnote in *Matter of D-Y-S-C* is clear, unequivocal, and addresses

plaintiffs' objections to the reunification requirement (the first and second factors of the

*Rosebrock* analysis), the way in which the agency rolled out and cabined the new policy raises

concerns. Not only did the government fail to acknowledge the unlawfulness of its prior policy,

instead indicating that the policy change was simply an effort to avoid litigation costs, it

continues to argue that the prior policy was a reasonable and lawful interpretation of the

governing statute. There is no indication that the government has committed to the new policy

as set forth in the AAO footnote.

       The third factor set forth in *Rosebrock* does not support the government's mootness

argument either. This is not a case in which the government received notice of plaintiffs'

complaint, conducted an investigation/evaluation, recognized its error, and took steps to correct

the offending policy. In the circumstances, presented here, it was not the *case* that served as a

catalyst for the agency's adoption of the new policy, but rather the issuance of four court orders from around the country that enjoined the agency from applying the prior policy. The "cessation" in this case was compelled, and there is no reason to believe that the agency would not readopt its prior policy if it were able to avoid an affirmative declaration and judgment regarding the unlawfulness of the reunification requirement. The fourth and fifth considerations are more neutral. The new policy has been in place for almost a year and neither party has identified any instances in which the reunification requirement was applied to an SIJ petitioner since its implementation. But, again, the circumstances surrounding the policy change do not suggest that USCIS is committed to the policy in any meaningful way.

Because USCIS is "free to return to [its] old ways" (*Porter v. Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007) (quoting *U.S. v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968))) and seemingly made the policy change only because it was forced to do so under various court orders and the resource strain of litigation, plaintiffs' claims regarding the reunification requirement are not moot. As USCIS implicitly recognizes, plaintiffs' claims regarding the delay in adjudicating SIJ petitions is also not moot.

**B. Summary Judgment**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails

to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the evidence submitted by the parties in the light most favorable to the government and having reconsidered the arguments made at the preliminary injunctive relief stage in light of the parties' submissions, the Court finds that plaintiffs are entitled to summary judgment in their favor. The APA mandates that district courts set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). USCIS's February 2018 change in policy violated the APA for all of the reasons stated in the preliminary injunction order, in particular because the new policy was inconsistent with the SIJ statute's plain language, exceeded the agency's authority, was unreasonable, was imposed without explanation, and was issued without the required notice and comment period. The Court reiterates its prior findings that the imposition of the

reunification requirement (a) was not in accordance with federal law and (b) was subject to the notice and comment rulemaking process under 5 U.S.C. §553. The Court expressly finds that the reunification requirement was arbitrary and capricious because USCIS failed to show that it "examine[d] the relevant data" or "articulate[d] a satisfactory explanation for its action" in light of the unambiguous statutory provisions. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The Court also finds that USCIS's delayed consideration of SIJ petitions for periods well past the 180 days specified in the governing statute is also unlawful. Congress mandated that "[a]ll applications for special immigrant status under section 101(a)(27)(J) of the Immigration and Nationality Act (8 U.S.C. [§]1101(a)(27)(J)) shall be adjudicated by the Secretary of Homeland Security not later than 180 days after the date on which the application is filed." 8 U.S.C. §1232(d)(2). When determining whether an agency has acted within "a reasonable time" for purposes of 5 U.S.C. §555(b), the timeline established by Congress serves as the frame of reference. *In re Pesticide Action Network N. Am., Nat. Res. Def. Council, Inc.*, 798 F.3d 809, 813 (9th Cir. 2015) (applying the six-factor test articulated in *Telecomm. Research and Action Ctr. v. F.C.C.*, 750 F.2d 70 (D.C.Cir.1984), the second of which recognizes that congressionally established deadlines supply content for the reasonableness determination). Nevertheless, defendants argue that USCIS is authorized to extend the deadline at any point by asking the petitioner for additional information. The theory seems to be that an SIJ petition is not actually "filed" for purposes of 8 U.S.C. §1232(d)(2) if necessary information is missing: "by tying the running of the 180-day period to the date an SIJ application is filed, Congress has provided USCIS with discretion to toll that 180-day deadline in situations where the agency seeks new or additional evidence or information from the SIJ

petitioner." Dkt. #66 at 24. Defendants argue that this interpretation of the statute is reasonable and therefore lawful.

The Court disagrees. Congress prioritized the adjudication of SIJ petitions, requiring that requests for special immigrant status filed by vulnerable youth be adjudicated within 180 days. Congress unambiguously intended the adjudication to be expeditious, providing a clear and mandatory deadline. Under governing case law, that deadline is not absolute, but it provides the frame of reference for determining what is reasonable. Each of the named plaintiffs in this case waited far more than 180 days for a determination of their petitions with no indication that their cases raised novel or complex issues. Two of the named plaintiffs waited three or four times the number of days Congress allowed before receiving an agency determination. The adjudications were not expeditious and the delays were not reasonable in light of the time frame chosen by Congress.

The agency interprets the statute in such a way that the 180-day period is nothing more than a target adjudication date that can be delayed, repeatedly and for extended periods of time, at the whim of the agency. In its memoranda, the agency argues that the word "filed" in 8 U.S.C. §1232(d)(2) means something other than when the petition is submitted by the petitioner or received by the agency. USCIS suggests that a petition is "filed" only when the supporting documentation is sufficient for agency review and adjudication. The date on which that occurs appears to depend entirely on when USCIS chooses to review the petition and make a determination regarding its initial sufficiency. If the agency decides the petition is complete, it is deemed filed – and the 180-day clock began to run – on the date it was received by the agency. If, however, the agency decides the petition is incomplete for some reason, the petition has not yet been "filed" and the 180-day clock will not begin to count down until the petitioner

responds to the agency's request for additional information. Such an interpretation redefines "filed" in a way that is inconsistent with its normal meaning and effectively nullifies the statutory deadline. Even after USCIS recognizes that a petition has been "filed," it claims the authority to stop the clock whenever it feels additional information would be helpful. These periods of tolling are unlimited in both number and duration. The Court finds that the agency's redefinition of "filed" to authorize delays Congress proscribed is not reasonable in light of the statutory text and its legislative purpose.

USCIS' proposed rule does not redefine "filed" in the stilted fashion advanced in this litigation. Rather, it shows that the agency intends to apply its general regulation addressing the effect of an agency request for initial or additional evidence to the SIJ context, despite the specific and mandatory adjudication deadline Congress imposed in 8 U.S.C. §1232(d)(2). 76 Fed. Reg. at 54983 (citing 8 C.F.R. 103.2(b)(10)(i)). A statutory interpretation that takes no notice of the language of the statute and fails to acknowledge the way in which that language differs from other statutory provisions is not reasonable. In the parlance of the APA, the agency has "unlawfully withheld or unreasonably delayed" adjudication of SIJ petitions, including the petitions of the three named plaintiffs in this matter. Gonzalez Rosario v. USCIS, 365 F. Supp.3d 1156, 1160 (W.D. Wash. 2018) (quoting 5 U.S.C. §706(1)).

Plaintiffs are entitled to summary judgment in their favor regarding the unlawfulness of the reunification requirement and the unreasonable delays in adjudicating SIJ petitions.

**C. Permanent Injunction**

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MereExchange, LLC*, 547 U.S. 388, 391 (2006). "An injunction is a matter of equitable

discretion:" simply succeeding on the merits of a claim is not enough. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 32-33 (2008) (citation omitted). Plaintiffs must also demonstrate: "(1) [that they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* When the government is the defendant, the third and fourth factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs seek permanent injunctive relief requiring USCIS to comply with the statutory deadline for the adjudication of SIJ petitions. There is no dispute that the agency regularly delays adjudication of SIJ petitions well beyond the 180-day period. Nor is there any dispute that the agency intends to continue delaying adjudication of SIJ petitions: it does not believe it is obliged to make a determination within 180 days of the date on which the petitioner files his or her petition. The proposed rule that is currently under consideration would codify these delays, 76 Fed. Reg. at 54983 (citing 8 C.F.R. 103.2(b)(10)(i)), treating the clear and mandatory deadline Congress set for the "expeditious adjudication" of these petitions as a mere "benchmark" that is subject to unlimited extensions at the whim of the agency. 76 Fed. Reg. at 54983. The Court has already found that this conduct is unlawful, and plaintiffs have established a likelihood that the wrongful conduct will impact future SIJ petitioners in the State of Washington.

Defendants assert that plaintiffs cannot establish irreparable injury now that the reunification requirement is no longer being enforced and all petitions that had been denied or delayed because of that requirement have been adjudicated. But the plaintiff class opposed two

separate policies, the first related to the unlawful reunification requirement and the second related to the unlawful delays in adjudication. If the only reason there were delays was because USCIS was holding petitions while it hammered out the details of the reunification requirement, defendants' argument might have merit. But the delays are a function of USCIS policy that is entirely separate from, and not contingent upon, the reunification requirement. A declaration that the reunification requirement is unlawful in no way ensures the timely adjudication of future SIJ petitions: in fact, the agency feels it has the right to toll the statutory deadline at will and is currently considering a rule that expressly authorizes delays in the resolution of SIJ petitions.

In the preliminary injunction context, the Court found that the delay in the adjudication of SIJ petitions causes petitioners irreparable harm insofar as they cannot access the benefits that go along with SIJ status. SIJ designees are exempt from a variety of grounds for removal, such as "being found to be a 'public charge,' lacking a 'valid entry document,' or having 'misrepresented a material fact'—while seeking admission into the United States." *Osorio-Martinez v. Attorney General U.S.A.*, 893 F.3d 153, 171 (3d Cir. 2018) (citing 8 U.S.C. §1182(a) and §1255(h)(2)(A)). SIJ designees are also granted access to federally-funded education and preferential status for employment-based green cards. *Id.* (citing 8 U.S.C. §1232(d)(4)(A) and §1153(b)). In addition, SIJ status allows the juvenile to submit an application to adjust his or her immigration status to lawful, which was the reason Congress created the SIJ classification in the first place. These benefits provide relief from or make less likely removal from the United States and the loss of the relationships and support systems these vulnerable youth have cobbled together in this country. The loss of these benefits constitutes irreparable harm. In addition, class members may be detained while their petitions

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND
PERMANENT INJUNCTION - 17

are pending, a loss of liberty that is also irreparable. Finally, plaintiffs provided evidence of their stress, devastation, fear, and depression arising from the increased possibility that they will be placed in removal proceedings and/or deported before obtaining an SIJ designation. Such emotional and psychological harms will not be remedied by an award of damages and are, therefore, irreparable. *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 709 (9th Cir. 1988). Defendants have not acknowledged, much less addressed, the irreparable harms associated with a delay in obtaining the protections afforded by the SIJ designation.

Defendants also argue that, now that the reunification requirement is not being used in the adjudication of SIJ petitions, the balance of hardships tips in their favor. Plaintiffs have shown, however, that USCIS' practice of delaying adjudication of SIJ petitions (and its intent to continue doing so) are unlawful, and it is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue. *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

Finally, defendants argue that, even if a permanent injunction requiring adjudication of SIJ petitions in a timely manner is appropriate, "the agency must be provided with the latitude to address SIJ petitions that may take longer than 180 days to adjudicate" and ask the Court to "adopt the tolling approach set out in the agency's proposed rule" so that the deadline resets or is tolled if the agency requests additional information from the petitioner. As discussed above, the proposed rule is inconsistent with the governing statute (and/or involves an unreasonable interpretation of the word "filed"), and defendants offer no evidence suggesting that SIJ petitions are factually or legally complex or otherwise require more than 180 days to review, investigate, and adjudicate. Plaintiffs have proposed a remedy by which a petitioner could waive his or her right to an expeditious adjudication if it will take an extended period of time to

obtain information responsive to a timely request for evidence or notice of intent to deny: defendants neither acknowledge that proposal nor explain why it would be insufficient to address the agency's concerns.

For all of the foregoing reasons, plaintiffs' motion for summary judgment and request for permanent injunctive relief (Dkt. #. 64) is GRANTED. Defendants' cross-motion for summary judgment (Dkt. #66) is DENIED. The Court hereby declares that the 2018 policy requiring Washington state courts to have jurisdiction or authority to "reunify" 18-20 year old youths with their parents before making the relevant SIJ findings is unlawful. The Court further finds that defendants have engaged in a practice of delaying the adjudication of SIJ petitions and that injunctive relief requiring compliance with the 8 U.S.C. §1232(d)(2) is appropriate. Accordingly, the Court HEREBY ORDERS and enjoins defendants as follows:

Defendants must adjudicate any SIJ petitions based on a Washington state court order within 180 days of the date that the application is filed by the petitioner (*i.e.*, in the parlance of the proposed rule, the date "the SIJ petition is receipted, as reflected in the receipt notice sent to the SIJ petitioner"). This timeline is inclusive of any requests for additional evidence or notices of intent to deny that USCIS may issue to a petitioner, unless the SIJ petitioner requests additional time to respond to the request/notice and thereby tolls the time in which USCIS must adjudicate the petition. USCIS must provide SIJ petitioners with sufficient time prior to the expiration of the 180 days to respond to the request/notice in an effort to complete final adjudication of the SIJ petition in a timely manner. USCIS may not use the issuance of a

//

request for information or notice of intent to deny for the sole purpose of avoiding the statutory

deadline for adjudication of an SIJ petition.


      Dated this 5th day of October, 2020.


                        *Robert S. Lasnik*
                        Robert S. Lasnik
                        United States District Judge